**CIVILLE & TANG, PLLC**
330 HERNAN CORTEZ AVENUE, SUITE 200
HAGÅTÑA, GUAM 96910
TELEPHONE: (671) 472-8868/69
FACSIMILE: (671) 477-2511

*Attorneys for Plaintiff*
*Marianas Hospitality Corporation,*
*dba Hyatt Regency Guam*



FILED
DISTRICT COURT OF GUAM
JUN -5 2007
MARY L.M. MORAN
CLERK OF COURT

## IN THE UNITED STATES DISTRICT COURT OF GUAM

| | |
|---|---|
| MARIANAS HOSPITALITY CORPORATION, dba HYATT REGENCY GUAM,<br><br>        Plaintiff,<br><br>vs<br><br>PREMIER BUSINESS SOLUTIONS, INC., PACIFIC BUSINESS SOLUTIONS, INC., ANNA MARIE TOVES, AND JESSE C. TOVES.<br><br>        Defendants. | CIVIL CASE NO. CV-07-00002<br><br>**OPPOSITION TO MOTION TO QUASH SUBPOENA ISSUED TO CITIZENS SECURITY BANK, BANK OF GUAM, ONWARD GOLF RESORT, AND COMMUNITY FIRST GUAM FEDERAL CREDIT UNION** |

### I. INTRODUCTION

On June 4, 2005, the Defendants Premier Business Solutions, Inc. ("Premier Business Solutions"), Pacific Business Solutions, Inc. ("Pacific Business Solutions"), Jesse C. Toves ("J. Toves"), Anna Marie Toves ("A. Toves"), collectively "Defendants," filed motions to quash the subpoenas issued to non-parties Citizens Security Bank ("CSB") and Bank of Guam ("BOG"), concurrently with *ex parte* motions to shorten time for a hearing on their motions. By stipulation of the Plaintiff Marianas Hospitality Corporation, dba Hyatt Regency Guam

("MHC") and Defendants, the Defendants' motions to quash also encompass the subpoenas issued to non-parties Onward Golf Resort (formerly known as Talofofo Golf Resort) ("Onward") and Community First Guam Federal Credit Union ("Community First"). MHC opposes the motions to quash for the reasons set forth below.

## II. FACTUAL AND PROCEDURAL HISTORY

On March 16, 2007, MHC filed a First Amended Complaint ("FAC") against the Defendants seeking declaratory, injunctive, and equitable relief, compensatory and punitive damages, treble damages, costs and attorney's fees for unfair and deceptive conduct and fraudulent conduct by the Defendants in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*, and the law of Guam. On April 16, 2007, the Defendants filed a Motion to dismiss under FRCP 12(b)(6) for failure to state a claim under RICO. Because the Defendants seek dismissal on the federal claim, of which jurisdiction in this Court is based upon, the Defendants' motion to dismiss has bearing on this Court's subject jurisdiction.

On May 15, 2007, MHC caused to be issued subpoenas to CSB and BOG, requesting the production of documents at MHC's lawyer's office on May 25, 2007. The May 15, 2007 subpoenas requested that the banks produce the following documents related to bank accounts in which the Defendants were account holders from the period of June 2002 to March 2007: (1) signature cards; (2) bank statements; and (3) any and all financial statements, loan agreements, tax returns submitted to the respective banks by any of the Defendants, individually or in combination with any other party, person or entity. Declaration of Joyce C.H. Tang ("Tang Decl."), Exs. A and B. On May 22, 2007, MHC withdrew the subpoenas and also orally communicated the withdrawal to the banks. *See* Tang Decl., ¶ 2. When withdrawing the

subpoenas, the undersigned's legal secretary specifically notified the CSB and BOG representatives that the subpoenas would be re-issued shortly and that the same documents would be requested. *See* Tang Decl. at ¶ 2. On May 31, 2007, MHC caused the subpoenas to be reissued to CSB and BOG, requesting the production of documents at Civille & Tang's office on June 5, 2007. The documents requested in the May 31st subpoenas were the same documents MHC requested in the May 15, 2007 subpoenas. *See* Tang Decl. Exs. C and D.

On June 4, 2007, MHC also caused to be issued subpoenas to Onward and Community First, requesting the production of documents at Civille & Tang's office on June 15, 2007. The subpoenas requested the following documents for the period from June 2002 to March 2007:

> [A]ny and all documents, including but not limited to agreements, letters, and emails, which any of the Parties [to the present lawsuit], individually or in combination with any other party, person or entity, has in his/her/its possession:
>
> 1. Any disputes or claims relating to payroll and tax payment services rendered to your company by the Parties, individually or collectively ("Claims");
>
> 2. The amount of the Claims or settlement, if applicable;
>
> 3. The dates on which the Claims against the Parties arose;
>
> 4. The terms of any settlement relating to the Claims.

*See* Tang Decl. Exs. E and F.

Defendant's counsel, Joseph Razzano was informed of the issuance of these two new subpoenae on June 4, 2007, and the parties agreed that these subpoenae would be included in the motion to quash. On June 4, 2007, the Defendants filed the present motions to quash the subpoenae issued to CSB and BOG, and concurrently requested that the time for hearing on the motions be shortened. By stipulation, the motions have been extended to cover the subpoenas issued to Onward and Community First.

## III. ARGUMENT

The Defendants' seek to quash the subpoenae issued to CSB and BOG (and Onward and Community First by Stipulation) on the same grounds. The Defendants argue that: (1) discovery should be stayed pending disposition of its Motion to Dismiss filed on April 16, 2007; (2) that the subpoenae should be quashed under Rule 45(c)(3)(A) of the Federal Rules of Civil Procedure because the subpoena fails to allow reasonable time for compliance, and require the disclosure of privileged or other protected matter not waived; and (3) generally argue that the documents requested are not relevant and the subpoenas are overbroad with regard to the time frame specified.

The motions to quash should be denied because, as explained more fully below, the stay of discovery is inappropriate where the discovery is relevant to subject matter jurisdiction, Furthermore, Defendants lack standing to raise the argument that the subpoenae fail to allow reasonable time for compliance, the Defendants have failed to articulate prejudice in disclosure of its financial information, the documents are relevant to the RICO claims in the lawsuit, and the subpoenae are not overbroad.

At the outset, "the burden of persuasion in a motion to quash a subpoena issued in the course of civil litigation is borne by the movant." *United States v. International Business Machines Corp.*, 83 F.R.D. 97, 104 (D.C.N.Y. 1979) (citing *Goodman v. United States*, 369 F.2d 166, 169 (9th Cir. 1966)); *see also Travelers Indem. Co. v. Metropolitan Life Ins. Co.*, 228 F.R.D. 111, 113 (D.Conn. 2005) ("Rule 45(c)(3) commands that a court 'shall' quash or modify a subpoena if the subpoena 'subjects a person to undue burden.' Fed.R.Civ.P. 45(c)(3)(A)(iv). The burden of persuasion in a motion to quash a subpoena is borne by the movant."). The

Defendants' citation to *Dart Industries, Inc. v. Liquid Nitrogen Processing Corp.*, 50 F.R.D. 286 (D. Del. 1970), for the proposition that the party seeking production by a subpoena to a *party* must establish good cause, is inapposite because the subpoenas in this case were issued to non-parties. The *Dart* court specifically held that where a subpoena is issued to a non-party, there is no good cause requirement. *See id.* at 290.

### A. The Subpoenae are Not Overbroad and Seek Relevant Information

The Defendants argument that the subpoenas issued to CSB and BOG are overbroad and seek irrelevant documents should be rejected. Under Rule 26(b)(1) of the Federal Rules of Civil Procedure, "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party . . . . " FRCP 26(b)(1). "For discovery purposes "relevancy" is a broad term," *Liew v. Breen*, 640 F.2d 1046, 1049 (9th Cir. 1981), and refers to information "reasonably calculated to lead to admissible evidence." FRCP 26(b)(1). "This broad right of discovery is based on the general principle that litigants have a right to 'every man's evidence,' . . . and that wide access to relevant facts serves the integrity and fairness of the judicial process by promoting the search for the truth." *Shoen v. Shoen*, 5 F.3d 1289, 1292 (9th Cir. 1993) (quoting *United States v. Bryan*, 339 U.S. 323, 331, 70 S.Ct. 724, 730, 94 L.Ed. 884 (1950)).

> Federal Rule 26 sets forth the standard by which a court determines the relevance of the information sought by a subpoena issued under Rule 45. *See During v. City Univ. of N.Y.*, No. 05 Civ. 6992, 2006 U.S. Dist. LEXIS 53684, at *6 (S.D.N.Y. Aug. 1, 2006). Under Rule 26, a party is authorized to obtain information "regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action" and information "reasonably calculated to lead to discovery of admissible evidence." Fed.R.Civ.P. 26(b)(1). For purposes of discovery, relevance as it relates to the subject matter of an action is broadly constructed "to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). The term "reasonably calculated" in Rule 26(b)(1) means "any possibility" that

the information sought may be relevant. *Morse/Diesel, Inc. v. Fidelity and Deposit Co. of Maryland*, 122 F.R.D. 447, 449 (S.D.N.Y.1988) (quoting Fed.R.Civ.P. 26(b)(1)).

*Griffith v. United States*, No. M8-85 (JFK), 2007 WL 1222586, *2 (S.D.N.Y. Apr. 25, 2007).

In MHC's First Amended Complaint, ¶¶ 45-58, the RICO claims are based on the allegations that the Defendants Anna Toves and Jesse Toves ("Toves'") failed to pay MHC employees' FICA and Medicare taxes as promised, and affirmatively misrepresented that the employees' FICA and Medicare taxes had been paid. The Complaint further alleges that the Toves' used the funds provided by MHC for MHC's payroll and payroll taxes for PBSI's and/or the Toves' use, without MHC's knowledge or consent. MHC alleges that through the enterprise, the company owned and controlled by the Toves, Pacific Business Solutions and Premier Business Solutions, and in furtherance of the scheme, the Toves' provided false and misleading statements to the IRS and MHC regarding the payment of payroll withholding, FICA and Medicare taxes, and put other documents in furtherance of the scheme in the US Mail, and provided intentionally false assurances to MHC via email and fax, thereby committing the crimes of Mail Fraud (18 U.S.C. § 1341), and Wire Fraud (18 U.S.C. § 1343). *See* First Amended Complaint, ¶¶ 45-58. The Plaintiff further alleged that the Toves' conspired to participate in the conduct of the affairs and activities of the enterprise, Pacific Systems Inc. and Pacific Solutions, Inc., through a pattern of racketeering activity by each Defendant agreeing to commit, approve of, or aid and abet the commission of at least two of the acts of racketeering activity as alleged in the Amended Complaint. FAC, ¶ 66.

The subpoenae to CSB and BOG request signature cards, bank statements, and any and all financial statements, loan agreements, tax returns submitted to the respective banks by any of the Defendants, individually or in combination with any other party, person or entity, from

June 2002 to March 2007. *See* Tang Decl., Exs. C and D. The documents are clearly relevant because they are reasonably calculated to lead to evidence admissible to prove the racketeering activities by Defendants, including the allegation that the Toves' used funds provided by MHC for MHC's payroll and payroll taxes for their own use or the use of the other Defendants. The documents will also lead to evidence directly relevant and admissible to the claim that the Toves' conspired to participate in the conduct of the affairs and activities of the enterprise, Pacific Systems Inc. and Pacific Solutions, Inc., through a pattern of racketeering activity.

The signature cards show who had access and authority to sign on these bank accounts during the period of 2002 to the present. The bank statements show inflow and outflow of funds, and in particular, the usage of MHC's funds held in trust by the Defendants, during this period. The Defendants claim they did not take any of MHC's motion. Any financial statements, loan agreements signed by Defendants, and tax returns, given by the Defendants to the banks for loan applications are relevant because they will show the financial abilities or growth of the individual and corporate defendants at different time, since banks will require this information to be updated annually.

The subpoenas are not overbroad because they seek documents from June 2002. As alleged in the First Amended Complaint, "Pacific Business Solutions began providing payroll processing services to MHC in June 2002." FAC, ¶ 12. MHC also alleges that "[f]rom July 2002 to February 2007, MHC remitted funds to Pacific Business Solutions' bank account at Citizens Security Bank and Bank of Guam, to pay payroll, payroll taxes, including withholding of income taxes, FICA and Medicare taxes, and employee contributions with respect to the employees of MHC." FAC, ¶ 18. As alleged in paragraph 58 of the FAC,

> J. Toves admitted in a letter dated November 16, 2006, to the IRS, that between
> July 2002 through August 2006, the Defendants "failed to timely deposit MHC's

FICA taxes and to timely file MHC's Forms 941SS even though [they] had control of the funds and sole responsibility for making the deposit at the time the FICA taxes were due. . . . [They] admitted [their] failures only when [they] were confronted by the management of MHC and have agreed to repay MHC for the taxes that they had to double pay as a result of our actions.

FAC, ¶ 58.

The documents are not only relevant from the April 2004 as asserted by the Defendants, but are also relevant during the time period beginning on June 2002. To the extent it is alleged in the FAC that the Defendants' conduct of racketeering are likely to have commenced from the month the Defendants commenced payroll processing services to MHC, in June 2002, the subpoenas, which request documents from that time period from the banks that MHC's funds were deposited into, are not overbroad. The documents will likely lead to admissible evidence pertaining to the issue of the Defendants' course of dealings and the conduct and affairs of the enterprise and the pattern of racketeering activity with regard to the Defendants payroll processing services.

The subpoenas to Onward and Community First seek documents relating to disputes or claims between Onward and Community First and the Defendants' with regard to payroll and tax payment services, including the amounts of such claims, the dates of the claims, and the terms of any settlements relating to the claims. *See* Tang Decl. Exs. E and F. These documents are reasonably calculated to lead to admissible evidence regarding other claims of misconduct on the part of the Defendants in providing payroll services to Onward and Community First. Such information is clearly relevant to the Defendants' course of dealings and the conduct and affairs of the enterprise and the pattern of racketeering activity with regard to the Defendants conduct in providing payroll processing services through the enterprise as alleged in the FAC.

In fact, the controller of the former Talofofo Golf Course, who is now the controller from Onward, informed MHC's counsel yesterday that Talofofo was missing tax money that was paid to PBSI and the money still has not been repaid. Tang Dec., ¶ 4. MHC was also informed that Community First had a claim against Defendants for funds given to Defendants for payment of its taxes, and that a substantial amount was missing, but, the matter had previously been settled between Defendants and Community First. Tang Dec., ¶ 5. MHC believes that the Defendants used MHC's funds to settle Community First's claims.

Therefore, the subpoenas are not overbroad, and the documents requested in the subpoenas are relevant to the claims alleged in the FAC. The documents are therefore discoverable under Rule 26(b)(1).

### B. Discovery Should Not be Stayed Based on the Pending Motion to Dismiss.

The Defendants argue that discovery should be stayed pending disposition of its Motion to Dismiss filed on April 16, 2007. As the Defendants argue that "Plaintiff cannot maintain a case under the RICO statute" in their Motion to Dismiss, and "[i]n the absence of the RICO count, this Court lacks subject matter jurisdiction to hear this case." Memo of Points and Authorities in Support of Motion to Quash ("MPA"), p. 2. The Defendants argue that "[s]ince Defendants contend that the District Court does not have subject matter jurisdiction over this matter the parties should be prohibited from engaging in discovery until the jurisdictional issues are decided." *Id.*

**"Although there was once doubt on the point, it has long been clear that discovery on jurisdictional issues is proper. Indeed, in 1982 the Supreme Court upheld a finding of jurisdiction as a discovery sanction for defendants' failure to comply with an order compelling such discovery."** 8 Fed. Prac. & Proc. Civ.2d R 26, § 2009 (Current through 2007

Update) (footnotes omitted). "It is now clear that federal courts have the power to order, at their discretion, the discovery of facts necessary to ascertain their competency to entertain the merits." *Eaton v. Dorchester Development, Inc.*, 692 F.2d 727, 729 (11th Cir. 1982); *see also Sizova v. Nat. Institute of Standards & Technology*, 282 F.3d 1320, 1326 (10th Cir. 2002) (citation omitted) ("When a defendant moves to dismiss for lack of jurisdiction, either party should be allowed discovery on the factual issues raised by that motion."); *Eaton*, 692 F.2d at 729 n.9 ("[If] the jurisdictional question is genuinely in dispute and the court cannot resolve the issue in the early stages of the litigation ... [then] discovery will certainly be useful and may be essential to the revelation of facts necessary to decide the issue.") (citation omitted).

As indicated above, the Defendants admit that they seek to dismiss the RICO claims and thereby defeat the jurisdiction of this Court over the present case. The subpoena requests documents directly relevant to the sufficiency of MHC's RICO claims, and, particularly, admissible evidence pertaining to the issue of the Defendants' course of dealings and the conduct and affairs of the enterprise and the pattern of racketeering activity with regard to the Defendants payroll processing services. The requested discovery therefore bears on the question of this court's jurisdiction, and discovery of such information should be permitted.

### C. The Subpoena Should Not Be Quashed Based on a Claim of Privacy.

The Defendants argue that the subpoenae should be quashed under FRCP 45(c)(3)(A) on the ground that the subpoenae fails to allow reasonable time for compliance and require the disclosure of privileged or other protected matter not waived. These arguments should be rejected.

"Ordinarily a party lacks standing to seek to quash a subpoena issued to a non-party unless the party claims a right or privilege with regard to the documents sought." *Doe v. United*

*States*, Civil Action 06-95 Erie, 2007 WL 1521550, *4 (W.D.Pa. May 23, 2007); *see also G.K. Las Vegas Ltd. Partnership v. Simon Property Group, Inc.*, No. 2:04-cv-01199-DAE-GWF, 2007 WL 119148, *3 (D. Nev. Jan. 9, 2007) ("As a general proposition, a party lacks standing under Fed.R.Civ.Pro. 45(c)(3) to challenge a subpoena issued to a non-party unless the party claims a personal right or privilege with respect to the documents requested in the subpoena.")

The Defendants lack standing to argue that the subpoena must be quashed because it does not allow reasonable time for compliance. Time for compliance does not implicate a personal right or privilege, and is a claim more properly alleged by the party subject to the subpoena. *See G.K. Las Vegas Ltd. Partnership v. Simon Property Group, Inc.*, No. 2:04-cv-01199-DAE-GWF, 2007 WL 119148, *3 (D. Nev. Jan. 9, 2007) ("A party's objection that the subpoena issued to the non-party seeks irrelevant information or imposes an undue burden on the nonparty are not grounds on which a party has standing to move to quash a subpoena issued to a non-party, especially where the non-party, itself, has not objected.").

CSB has indicated the documents are ready for production on the date and time specified. Tang Decl., ¶ 6. The BOG has not contacted MHC's counsel requesting additional time for production of the documents because it has had notice of the requests since May 15, 2007. Tang Decl., ¶ 7.

The Defendants' arguments that that the short time frame does not allow them enough time to review the documents to determine which are privileged should also be rejected. The financial records sought in the subpoenas to CSB and BOH are not privileged. Possibly with the exception of tax returns (see discussion *supra*), a party does not have a privilege preventing disclosure of bank and financial records. *See Sierra Rutile Ltd. v. Katz*, No. 90 Civ. 4913 (JFK), 1994 WL 185751, *1-2 (S.D.N.Y. May 11, 1994) (reviewing a motion to quash

subpoenas that were issued to "banks and financial institutions and request[ing] essentially all documents in their possession, for the period 1982 through 1990, documenting all securities and other financial transactions, credit files, guaranties, correspondence and internal memoranda, applications and mortgages" of a former executive of the plaintiff, and holding that "no privilege attaches to the information which defendants seek, nor is it 'confidential research, development or commercial information'-explicitly recognized grounds under Rule 45, Fed.R.Civ.P., for modifying or quashing subpoenas"); *Doe v. United States*, 2007 WL 1521550 at *4 (holding that the Plaintiff "has not advanced any legally cognizable basis upon which he could have challenged the subpoena" of his bank records).

While the Defendants may claims a privacy interest in the financial records, in determining whether to quash the subpoenas, the relevance of the information sought must be balanced against the intrusion on the Defendants' privacy interests. *See Sierra Rutile Ltd.*, 1994 WL 185751, at *2; *see also Griffith v. United States*, No. M8-85 (JFK), 2007 WL 1222586, *4 (Apr. 25, 2007 S.D.N.Y. 2007) ("[T]he Court is 'unable to conclude that the personal intrusion is so great that it outweighs defendant['s] right to pursue relevant material through the subpoena[ ] in issue.'") (quoting *Sierra Rutile Ltd.*, 1994 WL 185751, at *2). Furthermore, prejudice should be viewed strictly in the face of conclusory allegations of a privacy interest. *See Griffith*, 2007 WL 1222586, at *4.

Here, the Defendants make conclusory allegations that they have a privacy interest in their bank, financial and tax records. The Defendants have made no allegations regarding any prejudice they will suffer from a disclosure of the requested information. Not only are the documents relevant to the claims in the FAC, they also seek to uncover the extent of the Defendants' scheme to defraud MHC and the extent of the racketeering activities in violation of

federal laws (i.e., Mail Fraud and Wire Fraud), and the conspiracy with regard to furthering their racketeering enterprise. The Defendants' alleged actions were undertaken in a fiduciary capacity of providing payroll services and affected not only MHC and other employers, but also ultimately affected many employees of MHC, and possibly many others depending upon the scope of their racketeering conspiracy. The relevance of the documents to the claims as alleged in the FAC, and the public policies undermined by the Defendants' actions, which the claims in the FAC are aimed at redressing, far outweigh any privacy interest the Defendants may claim and any alleged prejudice to the defendants that may result by disclosure of the requested documents.

Courts have recognized a qualified privilege for tax returns. *See San Francisco Bay Area Rapid Transit Dist. v. Spencer*, No. C 04-04632 SI, 2006 WL 3050860, *1 (N.D.Cal. Oct. 23, 2006). Tax returns may be produced where "relevant, and if there is a compelling interest because the information is not otherwise obtainable." *Id.* The tax returns are relevant for the reasons discussed earlier. It bears repeating again that under the RICO courts, MHC alleges that the Defendants took the funds deposited by MHC for payroll processing purposes, without MHC's permission, and used the funds for their own benefit. The tax returns are clearly relevant to this allegation as they may lead to discoverable evidence on whether the defendants had any income and or expenses related to the funds MHC claims was misappropriated, including for purposes of benefiting themselves by obtaining loans and other funding as a result of the racketeering scheme. Therefore, MHC is properly entitled to discovery of the Defendants' tax returns.

## IV. CONCLUSION

For the reasons set forth above, the Defendants motions to quash, including its argument that discovery should be stayed pending disposition of the pending motion to dismiss, should be denied.

Respectfully submitted, this 5th day of June, 2007.

**CIVILLE & TANG, PLLC**

By: _____
JOYCE C.H. TANG
*Attorneys for Plaintiff*
*Marianas Hospitality Corporation,*
*dba Hyatt Regency Guam*