**CIVILLE & TANG, PLLC**
330 HERNAN CORTEZ AVENUE, SUITE 200
HAGÅTÑA, GUAM 96910
TELEPHONE: (671) 472-8868/69
FACSIMILE: (671) 477-2511

*Attorneys for Plaintiff*
*Marianas Hospitality Corporation,*
*dba Hyatt Regency Guam*



**FILED**
DISTRICT COURT OF GUAM

JUN 28 2007 nbo

MARY L.M. MORAN
CLERK OF COURT

## IN THE UNITED STATES DISTRICT COURT OF GUAM

| | |
|---|---|
| MARIANAS HOSPITALITY CORPORATION, )<br>dba HYATT REGENCY GUAM, )<br>    )<br>        Plaintiff, )<br>    )<br>vs. )<br>    )<br>PREMIER BUSINESS SOLUTIONS, INC., )<br>PACIFIC BUSINESS SOLUTIONS, INC., )<br>ANNA MARIE TOVES, AND JESSE C. )<br>TOVES, )<br>    )<br>        Defendants. )<br>_____) | CIVIL CASE NO.CV07-00002<br><br>**PLAINTIFF'S OPPOSITION TO**<br>**MOTION TO DISMISS** |

# TABLE OF CONTENTS

I.      INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.     FACTUAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

III.    ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

        A.    GOVERNING STANDARDS FOR MOTION TO DISMISS . . . . . . . . . . . . . . . . . 9

        B.    SUPPLEMENTAL JURISDICTION OVER CORPORATE
              DEFENDANTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

        C.    PLEADING CIVIL RICO . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

              1.    Pattern Of Racketeering Activity . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

              2.    Predicate Acts: Wire Fraud And Mail Fraud; Causal
                    Connection To Injury . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

              3.    Associated-In-Fact Enterprise . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

        D.    RICO CONSPIRACY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

        E.    BREACH OF CONTRACT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

        F.    CONVERSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

        G.    FRAUD CLAIMS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

        H.    AMENDMENT OF COMPLAINT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

IV.     CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Allwaste, Inc. v. Hecht*,
65 F.3d 1523, 1529 (9th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 11-13, 19

*Conley v. Gibson*,
355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Executive Software of N. America Inc. v. United States Dist. Court for Cent. Dist. of Cal.*,
24 F.3d 1545, 1551 (9th Cir.1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*H.J. Inc.*,
492 U.S. at 242 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Haywood v. Bedatsky*,
No. CV-05-2179-PHX-DGC, 2007 WL 552213, *1 -2
(D.Ariz., February 20, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Living Designs, Inc. v. E.I. Dupont de Nemours and Co.*,
431 F.3d 353, 361 (9th Cir.2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Loeffler v. The Ritz-Carlton Hotel Co.*,
No. 2:06-CV-0333-ECR-LRL, 2006 WL 1796008, *4
(D. Nev. June 28, 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*McKell v. Washingtron Mut., Inc.*,
49 Cal.Rptr.3d 227, 255-56 (Cal. Ct. App. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Mendoza v. Zirkle Fruit Co.*,
301 F.3d 1163, 1172-75 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Navarro v. Block*,
250 F.3d 729, 732 (9th Cir.2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Newman v. Checkrite California, Inc.*.
912 F.Supp. 1354,1373 (E.D.Cal.1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*PCO, Inc. v. Christensen, Miller, Fink, Jacobs, Glaser, Weil & Shapiro, LLP*,
58 Cal.Rptr.3d 516,524 - 526 (Cal. Ct. App. 2 Dist.,2007) . . . . . . . . . . . . . . . . . . . . . . . 18

ii

*Salinas v. United States,*
522 U.S. 52 (1997) .................................................... 16-17

*Schmuck v. United States,*
489 U.S. 705, 715, 109 S.Ct. 1443, 103 L.Ed.2d 734 (1989) ..................... 14

*Sebastan International, Inc. v. Russolillo,*
186 F.Supp.2d 1055, 1067 ((C.D.Cal. 2000) ............................... 13, 19

*In re Sumitomo Copper Litigation,*
104 F.Supp.2d 314, 321 (S.D.N.Y. 2000) ................................ 14-15

*Sun Savings and Loan Ass'n v. Dierdorff,*
825 F. 2d 187, 194 (9th Cir. 1987) ................................. 11, 13, 15

*Thompson v. Davis,*
295 F.3d 890, 895 (9th Cir.2002) ........................................ 9

*United States v. Byars,*
No. CRIM.A.06-91-KSF, 2006 WL 2366633
(E.D. Ky. Aug. 14, 2006) .............................................. 13

*Whisnant v. United States,*
400 F.3d 1177 (9th Cir. 2005) ........................................... 1

## **Statutes**

18 U.S.C. § 1961 *et seq*............................................................. 1

18 U.S.C. § 1962 ............................................................. 1, 16

28 U.S.C. § 1337(a) ............................................................. 10

28 U.S.C. § 1367(c) ............................................................ 10-11

## **Rules**

Rule 12(b)(6) ................................................................. 9

*Federal Practice and Procedure,* (3rd ed.) 5 Charles A. Wright & Arthur P. Miller
§ 1235 at 269-71 .......................................................... 17

# I. INTRODUCTION

This is an action arising out of the diversion of payroll monies remitted to the defendants and held in trust by them for the payment of wages and taxes. The Plaintiff, Marianas Hospitality Corporation, d/b/a/ Hyatt Regency Guam ("MHC" or "Hyatt") alleges causes of action under the Racketeer Influenced and Corrupt Organization Act ("RICO") and Guam law. See First Amended Complaint ("FAC"). The Defendants have filed a motion to dismiss the FAC. This memorandum is submitted in opposition to the Defendants' motion.[1]

# II. FACTUAL BACKGROUND

This being a motion to dismiss, the Court must look to the allegations in the First Amended Complaint, which it must take as true, *see Whisnant v. United States*, 400 F.3d 1177 (9th Cir. 2005), to determine whether the First Amended Complaint states a claim upon which relief can be granted.[2]

Plaintiff, Marianas Hospitality Corporation, *dba* Hyatt Regency Guam ("MHC"), brings this action under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*, and seeks damages and relief for violations of 18 U.S.C. § 1962. First Amended Complaint ("FAC") ¶ 2. MHC also alleges claims under Guam law for fraud, conversion, breach of contract, and restitution and accounting.

---

[1] As part of their motion, Defendants also asked for a stay of discovery pending resolution of this motion. In their motions to quash subpoenas issued to third parties in this action, filed on June 4, 2007, Defendants also requested a stay of discovery. To the extent this may still be an issue, Plaintiff refers the Court to its Opposition filed on June 5, 2007, dealing with the stay of discovery issue.

[2] Additional allegations are included in this Memorandum for the purpose of indicating how Plaintiff could amend the FAC should this Court find the FAC deficient in one or more respects. *See, e.g., Allwaste, Inc. v. Hecht*, 65 F.3d 1523, 1530-31 (9th Cir. 1995) (amendment should have been allowed based on representations made during oral argument on motion to dismiss RICO claims)

1

On June 29, 1999, Pacific Business Solutions, Inc. was organized by Defendant Jesse C. Toves ("J. Toves") owning 2,000 shares, Jesus L. Perez owning 1,500 shares, and Rodney J. Anulao owning 1,500 shares. FAC ¶ 13. In April of 2002 Pacific Business Solutions presented a proposal to MHC to provide payroll services for MHC, FAC ¶ 10, which was accepted with Pacific Business Solutions beginning to provide payroll processes for MHC in June of 2002. FAC ¶ 11. Under this Agreement MHC remitted funds to Pacific Business Solutions, either by way of cashier check or wire transfer, to pay payroll, payroll taxes, including withholding of income taxes, FICA and medicare taxes, and employee contributions with respect to the employees of MHC. FAC ¶ 12.

Later, on February 3, 2004, Premier Business Solutions, Inc. was organized by Jesse C. Toves owning 333 shares, Steffen Niu owning 333 shares, Dave Hicks owning 333 shares, and Peter F. Perez owning 1 share, FAC ¶ 15, and purportedly assumed the payroll management services under the 2002 Agreement with MHC with A. Toves representing to MHC that "Pacific Business Solutions" had changed its name to "Premier Business Solutions in or about October 2006." FAC ¶ 20. In reliance on this representation ,beginning in October 2006, MHC paid invoices for payroll processing services purportedly performed by Premier Business Solutions, which were identical to the services previously provided by Pacific Business Solutions. FAC ¶ 21.

At all times during the period covered by the FAC, J. Toves and Defendant Anna Marie Toves ("A. Toves") (hereinafter J. Toves and A. Toves will at times be referred to collectively as the "Individual Defendants") operated and managed Pacific Business Solutions and Premier Business Solutions. FAC ¶ 17.

From July 2002 to February 2007, MHC remitted funds to Pacific Business Solutions' bank account at Citizens Security Bank and Bank of Guam, to pay payroll, payroll taxes, including withholding of income taxes, FICA and medicare taxes, and employee contributions with respect to

2

the employees of MHC. Funds were also made available through MHC's Bank of Hawaii account by cashier's check, which A. Toves picked up for deposit. FAC ¶ 18. During this time MHC authorized the use and deposit of funds by Pacific Business Solutions only to pay payroll, payroll taxes, including withholding of income taxes, FICA and medicare taxes, and employee contributions with respect to the employees of MHC. FAC ¶ 19. MHC did not at any time authorize Premier Business Solutions to use the payroll funds for any other purpose. FAC ¶19.

Commencing in October of 2004, the third payroll quarter of 2004, the Defendants J. Toves and A. Toves engaged in a pattern and practice to defraud MHC. FAC ¶ 23. The Individual Defendants formed a scheme to defraud MHC of its payroll monies in which MHC would send payroll monies to Pacific Business Solutions for the purpose of the payment of payroll and local and federal taxes and the Individual Defendants would thereupon not pay the required taxes but would instead divert the monies for other purposes. FAC ¶ 24. In furtherance of this scheme J. Toves and A. Toves knowingly and intentionally misrepresented to MHC that the taxes had been paid for the purpose of covering up the diversion of the monies and to induce or cause MHC to continue to remit payroll monies in reliance on the representations that the taxes had been or were being paid. FAC ¶ 25. During this period, MHC timely transferred or made available the requisite funds to Pacific Business Solution prior to the date on which payroll and taxes were due. FAC ¶ 26.

Although funds were timely transferred to Pacific Business Solution to pay the Hyatt employees' FICA and Medicare taxes, the Defendants failed to pay FICA and Medicare payments to the IRS for certain payroll periods, and also failed to timely pay the taxes when due. FAC ¶ 27. The delay caused MHC to incur substantial interest and penalty charges. FAC ¶ 27. Specifically, the Defendants failed to pay the FICA and Medicare taxes due for Hyatt employees on the following dates and in the following amounts:

3

| | Payroll Date | Amount FICA & Medicare Due | FICA & Medicare Due | Date Paid to IRS by PBSI | Interest & Penalty Paid by MHC | Unpaid FICA & Medicare |
|---|---|---|---|---|---|---|
| 1. | | | | 2nd Quarter 2004 | | |
| | 04/12/04 | $42,751.20 | 04/21/04 | 5/7/04 | | |
| | 04/28/04 | $42,559.88 | 05/05/04 | 5/21/04 | | |
| | 05/12/04 | $44,730.74 | 05/19/04 | 6/2/04 | | |
| | 05/26/04 | $42,738.64 | 06/02/04 | 6/18/04 | | |
| | 06/09/04 | $44,352.00 | 06/16/04 | 7/2/04 | Total 2nd Qtr. | |
| | 06/23/04 | $42,541.98 | 06/30/04 | 7/16/04 | $75,420.56 | |
| 2. | | | | 3rd Quarter 2004 | | |
| | 07/07/04 | $42,803.26 | 07/14/04 | 8/3/04 | | |
| | 07/21/04 | $43,872.29 | 07/28/04 | 8/13/04 | | |
| | 08/04/04 | $44,142.17 | 08/11/04 | 8/30/06 | | |
| | 08/18/04 | $42,597.78 | 08/25/04 | 9/10/04 | | |
| | 09/01/04 | $44,997.10 | 09/8/04 | 9/27/04 | | |
| | 09/15/04 | $43,892.58 | 09/22/04 | 10/8/04 | Total 3rd Qtr. | |
| | 09/29/04 | $43,813.06 | 10/06/04 | 11/8/04 | $22,967.46 | |
| 3. | | | | 1st Quarter 2005 | | |
| | 02/16/05 | $47,587.32 | 02/23/05 | Not Paid | | $47,587.32 |
| | 03/16/05 | $46,881.77 | 03/23/05 | Not Paid | | $46,881.77 |
| | 03/30/05 | $47,410.19 | 04/06/05 | Not Paid | | $47,410.19 |
| 4. | | | | 2nd Quarter 2005 | | |
| | 04/13/05 | $46,535.58 | 04/20/05 | 8/29/05 | | |
| | 04/27/05 | $46,790.68 | 05/04/05 | 8/29/05 | | |
| | 05/11/05 | $51,089.68 | 05/18/05 | 8/29/05 | | |
| | 05/25/05 | $48,930.56 | 06/01/05 | 8/29/05 | | |
| | 06/08/05 | $50,263.73 | 06/15/05 | 8/29/05 | Total 2nd Qtr. | |
| | 06/22/05 | $48,750.45 | 06/29/05 | 8/29/05 (partial pmt.) | $267,438.13 | $2,531.93 |
| 5. | | | | 3rd Quarter 2005 | | |
| | 07/06/05 | $48,761.26 | 07/13/05 | 11/4/05 (partial pmt.) | | $301.68 |
| 6. | | | | 4th Quarter 2005 | | |
| | 10/26/05 | $49,934.64 | 11/02/05 | Not Paid | | $49,934.64 |
| | 11/23/05 | $49,948.65 | 11/30/05 | Not Paid | Total 4th Qtr. | $49,948.65 |
| | 12/21/05 | $52,298.80 | 12/28/05 | Not Paid | $68,559.07 | $52,298.80 |
| 7. | | | | 1st Quarter 2006 | | |
| | 01/4/06 | $52,606.68 | 01/11/06 | 2/6/06 | | |
| | 01/18/06 | $56,520.78 | 01/25/06 | 2/6/06 | | |
| | 02/01/06 | $52,318.04 | 02/08/06 | 8/4/06 | | |
| | 02/15/06 | $50,283.56 | 02/22/06 | 8/4/06 | | |
| | 03/01/06 | $57,137.92 | 03/08/06 | 8/4/06 | | |
| | 03/15/06 | $50,160.44 | 03/22/06 | 8/4/06 | Total 1st Qtr. | |
| | 03/29/06 | $56,035.14 | 04/05/06 | 8/4/06 | $53,352.87 | |

| | Payroll Date | Amount FICA & Medicare Due | FICA & Medicare Due | Date Paid to IRS by PBSI | Interest & Penalty Paid by MHC | Unpaid FICA & Medicare |
|---|---|---|---|---|---|---|
| 8. | 2nd Quarter 2006 | | | | | |
| | 04/12/06 | $71,955.40 | 04/19/06 | 8/7/06 | | |
| | 04/26/06 | $48,420.60 | 05/03/06 | 8/7/06 | | |
| | 05/10/06 | $46,621.38 | 05/17/06 | 8/7/06 | | |
| | 05/24/06 | $44,927.94 | 05/31/06 | 8/7/06 | | |
| | 06/07/06 | $44,597.78 | 06/14/06 | 8/9/06 | Total 2nd Qtr. | |
| | 06/21/06 | $43,274.72 | 06/28/06 | 8/9.06 | 31,762.02 | |
| 9. | 3rd Quarter 2006 | | | | | |
| | 08/02/06 | $43,278.22 | 08/09/06 | Not Paid | | 43,278.22 |

FAC ¶ 28.

In furtherance of the scheme to deceive and defraud MHC, Defendant A. Toves sent by Certified Mail through the United States mail to the IRS in Honolulu, Hawaii, 941-SS forms that falsely stated that the FICA and Medicare taxes had been paid, these mailings being for the purpose of completing the scheme and to prevent its detection by MHC. FAC ¶¶ 29-31. Defendant A. Toves sent copies of the 941SS and Certified Mail Receipts to MHC. FAC ¶ 29. On May 2, 2005, Defendant A. Toves, sent by United States mail to the IRS in Honolulu, Hawaii, Form 941-SS which showed that the FICA and Medicare taxes for the 1st Quarter of 2005 had been paid. FAC ¶ 30. A. Toves knew at the time of sending the Form 941-SS that the taxes had not been paid. FAC ¶ 30. This form was mailed in furtherance of the scheme to divert MHC payroll monies and was for the purpose of completing the scheme and preventing its detection by MHC. Defendant A. Toves sent copies of the 941SS and Certified Mail Receipts to MHC. FAC ¶ 30.

On July 30, 2005, Defendant A. Toves, sent by United States mail to the IRS in Honolulu, Hawaii, Form 941-SS which showed that the FICA and Medicare taxes for the 2nd Quarter of 2005 had been paid. FAC ¶ 31. A. Toves knew at the time of sending the Form 941-SS that the taxes had not been paid. *Ibid.* This form was mailed in furtherance of the scheme to divert MHC payroll monies

and was for the purpose of completing the scheme and preventing its detection by MHC. *Ibid.*
Defendant A. Toves sent copies of the 941SS and Certified Mail Receipts to MHC. *Ibid.*

In furtherance of the scheme to deceive and defraud MHC, Defendant A. Toves sent an email
on March 2, 2006, to Richard Reyes, a Hyatt employee, which was through interstate channels,
representing that she had contacted the IRS agent, and that the IRS agreed to suspend collection
activities. FAC ¶ 32. The email was sent with the specific intent to deceive or defraud MHC in
furtherance of the scheme, and to falsely assure MHC that the tax payments had been made and that
it was an error on the IRS' part. FAC ¶ 32.

On May 5, 2006, Defendant A. Toves, sent a letter by facsimile to the IRS agent in Honolulu,
Hawaii, purporting to explain why payments for the 2nd and 3rd Quarters of 2004 were not paid. FAC
¶ 33. A copy of the facsimile letter was provided to MHC by A. Toves with the specific intent to
deceive or defraud MHC in furtherance of the scheme and to falsely assure MHC that the tax
payments had been made and that it was an error on the IRS' part. FAC ¶ 33.

Furthermore, between 2005 and 2007, the Individual Defendants, on a number of occasions,
represented and assured MHC and Hyatt employees that the FICA and Medicare taxes had been paid.
FAC ¶ 34. In October 2006, J. Toves met with Craig Sawers and other MHC representatives, and
represented that all FICA and Medicare taxes prior to 2006 had been paid for Hyatt employees, when
in fact, FICA and Medicare taxes for some of the periods prior to 2006 had not been paid. FAC ¶ 35.
J. Toves knew that some FICA and Medicare taxes prior to 2006 had not been paid at the time the
representations were made. FAC ¶ 35.

MHC relied on the letter to IRS, 941-SS forms prepared and mailed to IRS, emails from A.
Toves, and verbal representations from the Individual Defendants that the FICA and Medicare taxes
had been paid when, in fact, they had not been paid. FAC ¶ 36. The representations made in the

6

letters, 941-SS forms, and emails were made in furtherance of the scheme to divert MHC payroll monies and were for the purpose of completing the scheme and preventing its detection by MHC. MHC relied on said representations in making further payroll payments and in not taking action to pay the unpaid taxes. FAC ¶ 36. MHC justifiably relied on the representations of the Individual Defendants and continued to remit monies to Pacific Business Solutions for the payment of payroll taxes believing that the payroll taxes had been paid. FAC ¶ 37. The monies remitted to Pacific Business Solutions by MHC for the payment of taxes were diverted by the Individual Defendants to other purposes. These diversions were without the consent or knowledge of MHC. FAC ¶ 38.

The Individual Defendants' pattern of fraud with respect to the deliberate failure to pay payroll taxes to the IRS resulted in IRS assessing a total of $340,173.21 in outstanding taxes and $402,891.58 in penalties and interest. FAC ¶ 39

In December 2006, two checks dated December 7, 2006, issued by PBSI to Hyatt employees Ji Sun Oh in the amount of $282.97 and Mi-Ae Lee in the amount of $282.97, were returned for insufficient funds even though MHC had given Pacific Business Solutions sufficient funds to cover the December 7th payroll checks. FAC ¶ 40.

In addition to the foregoing, on May 5, 2006, Defendant A. Toves sent a facsimile to the Internal Revenue Service in Honolulu purporting to explain why payments for the 2nd and 3rd quarters of 2004 were not paid. The statements in the facsimile were false and were known to be false by A. Toves. This was an additional effort to cover up the diversion of the payroll funds and to prevent discovery of the fraud by MHC.

In August of 2006 J. Toves presented to Craig Sawyer of MHC copies of IRS website "EFTPS" electronic funds transfer reports to MHC as evidence that payments of FICA and Medicate taxes for earlier periods had been paid or "settled." Hyatt relied on the IRA EFTPS reports. In fact,

J. Toves had obtained these reports by making electronic transfer payments through Premier Business Solutions accounts which did not have sufficient funds to cover the tax payments. At the time J. Toves processed the payment electronically, the EFTPS report would show the tax period as being "settled." The next day, when Premier Solutions' bank rejected the payment, the EFTPS would reflect "cancelled" instead of settled. J. Toves presented the false reports to Craig Sawer in order to continue to deceive MHC. These transactions constituted interstate wire transactions and were used to continue the concealment of the full amount of the defalcation of the payroll monies.

Finally, there is evidence that the Defendants, J. Toves and A. Toves used the same methods or similar methods in failing to remit payroll taxes for Talofofo Golf Resort in 2005 and Community First Credit Union ("Community First") for which Pacific Business Solutions handled payroll from 2000 to the third quarter of 2006. Between the period of December 2002 through June 2006 for at least eleven quarters, PBSI received FICA and Medicare tax payments from Community First. During this period, PBSI received and failed to pay to the IRS in excess of $100,000 funds held in trust for Community First's taxes.[3] In certain instances, A. Toves signed 941SS on behalf of Community First, under penalty of perjury, confirming that FICA and Medicare Tax payments had been made for a certain quarter, when in fact these payments had been received but were not paid to the IRS on the due date. The 941SS forms were usually sent by USPS certified mail to the IRS. Likewise, PBSI acted as the payroll processor for Pricia, Inc. aka Talofofo Golf Course. Between 2004 and 2005, PBSI received trust funds for payment of the golf course's FICA and Medicare payments. During this period, and at least on six different quarters, PBSI received by failed to pay Talofofo Golf Course's federal payroll tax. The tax and penalties which accrued as a result of PBSI's failure to pay the taxes amounted to over $35,000. PBSI has not paid the $35,000 owing to the Talofofo Golf Course. During

---

[3] We understand that Community First settled its claim with PBSI when PBSI repaid all of the outstanding taxes and penalties in excess of $100,000.

this period, A. Toves prepared 941SS forms for Tolofofo Golf Course and sent through the USPS certified mail to the IRS.

Like MHC, it is apparent that Community First and Talofofo Golf Course trusted and relied on PBSI to process their payroll After the discovery of PBSI's scheme to divert payroll funds and covering up the diversions was a method of doing business for the individual defendants in their operation of Pacific Business Solutions and Premier Business Solutions, in the case of Community First, they demanded payment for all of their losses from PBSI. Talofofo and the Hyatt have yet to recover any of their losses.

## III. ARGUMENT

### A. GOVERNING STANDARDS FOR MOTION TO DISMISS.

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the complaint. *Navarro v. Block,* 250 F.3d 729, 732 (9th Cir.2001). Dismissal of a claim under Rule 12(b)(6) is appropriate only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). In reviewing a motion to dismiss under Rule 12(b)(6), the court must assume the truth of all factual allegations and must construe all inferences from them in the light most favorable to the nonmoving party. *Thompson v. Davis,* 295 F.3d 890, 895 (9th Cir.2002).

### B. SUPPLEMENTAL JURISDICTION OVER CORPORATE DEFENDANTS.

Defendants argue that the Plaintiff could not allege a RICO claim against the corporate defendants, Pacific Business Solutions, Inc., and Premier Business Solutions, Inc., because only the defendant employees can be liable under RICO. Plaintiff agrees that the corporate defendants, as the RICO enterprises in this suit, cannot be sued under RICO. However, the corporate defendants are being sued under Guam law, and this Court has supplemental jurisdiction under 28 U.S.C. § 1337(a)

9

over these parties as well as the Guam law claims. It is clear that a federal court may, in its discretion, exercise supplemental subject matter jurisdiction under 28 U.S.C. § 1337(a) with respect to a party over whom there is no independent basis for federal court jurisdiction, provided that the federal and state claims form but one constitutional case and derive from a common nucleus of operative facts. *See Mendoza v. Zirkle Fruit Co.*, 301 F.3d 1163, 1172-75 (9th Cir. 2002) (a RICO case); *Haywood v. Bedatsky*, No. CV-05-2179-PHX-DGC, 2007 WL 552213, *1 -2 (D.Ariz., February 20, 2007) ("It is well settled in the Ninth Circuit that a district court has power to exercise supplemental subject matter jurisdiction over a party when the federal and state law claims 'derive from a common nucleus of operative facts.' " ) (citation omitted).

In this case the claims against the corporate defendants are based on the handling and diversion of the payroll monies and the failure to make the tax payments. Because they derive from a common nucleus of operative facts with the RICO claims, this Court has supplemental jurisdiction over the corporate party defendants.

"As a general matter, the court should exercise its supplemental jurisdiction where, as here, state law and federal claims arise out of the same facts and constitute a single case or controversy," *Newman v. Checkrite Cal., Inc.*. 912 F.Supp. 1354,1373 (E.D. Cal.1995), and " 'once it is determined that the assertion of supplemental jurisdiction is permissible under section 1367(a) and (b), section 1367(c) provides the only valid basis upon which a district court can decline jurisdiction and remand pendent claims.'" *Ibid.* (quoting *Executive Software of N. America Inc. v. United States Dist. Court for Cent. Dist. of Cal.*, 24 F.3d 1545, 1551 (9th Cir.1994)). Section 1367(c) directs that a district court may decline to exercise supplemental jurisdiction under subsection (a) if "**(1)** the claim raises a novel or complex issue of State law, **(2)** the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, **(3)** the district court has dismissed all claims over

10

which it has original jurisdiction, or **(4)** in exceptional circumstances, there are other compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c). Here, there are no complex issues of Guam law, the Guam law claims do not substantially predominate over the RICO claims, there are no exceptional circumstances for declining jurisdiction, and, as argued below, this Court should not dismiss the underlying RICO claims. For these reasons, this Court should exercise supplemental jurisdiction over the corporate defendants and the Guam law claims.

## C.   PLEADING CIVIL RICO.

The Ninth Circuit has firmly stated that District Courts "should not erect artificial barriers-metaphysical or otherwise-as a means of keeping RICO cases off the federal dockets." *Sun Saving and Loan Ass'n v. Dierdorff,* 825 F. 2d 187, 194 (9th Cir. 1987); *see also Allwaste, Inc. v. Hecht*, 65 F.3d 1523, 1529 (9th Cir. 1995) (same).

A civil RICO complaint must at least allege: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as 'predicate acts') (5) causing injury to plaintiff's 'business or property.' " *Living Designs, Inc. v. E.I. Dupont de Nemours and Co.,* 431 F.3d 353, 361 (9th Cir. 2005).

### 1.   Pattern Of Racketeering Activity.

A RICO Plaintiff must show a series of related acts extending over a period of time, "closed-ended continuity," or past conduct that projects into the future with a threat of repetition, "open-ended continuity." At a minimum, a pattern of racketeering activity requires at least two predicate acts that are related and continuous. *Allwaste, Inc. v. Hecht,* 65 F.3d 1523, 1527 (9th Cir.1995). Continuity can be either open- or closed-ended. Plaintiffs may establish closed-ended continuity by showing the related predicate acts occurred over a substantial period of time. *Ibid.* Although racketeering activities "extending over a few weeks or months" do not satisfy the "substantial period of time" requirement,

11

there is no "bright line rule" regarding the amount of time required to show closed-ended continuity. *Id.* at 1528. Even though the alleged criminal activities do not span a substantial period, a plaintiff may establish open-ended continuity by showing either that the predicate acts include a specific threat of repetition extending indefinitely into the future or that the predicate acts were part of an ongoing entity's regular way of doing business. *Id.* at 1527. Predicate acts that specifically threaten repetition or that become a regular way of doing business satisfy the open-ended continuity requirement. *Id.* at 1528. The fortuitous interruption of criminal acts does not preclude a finding of open-ended continuity. *Id.* at 1529.

Close-ended continuity refers to where a defendant's predicate acts occurred over a substantial period of time. *Allwaste, Inc. v. Hecht*, 65 F.3d 1523, 1527 (9th Cir. 1995). The Ninth Circuit has rejected a bright line rule regarding the minimum period over which predicate acts must occur to constitute closed-ended continuity. *See Allwaste*, 65 F.3 at 1528. (rejecting argument that predicate acts must continue for at least one year). In *Allwaste* the court noted that predicate acts occurring in a period of time "as much as thirteen months" would demonstrate that the criminal activity spanned a "substantial period of time." *Ibid.*; *see also Metcalf v. Death Row Records, Inc.*, 2003 WI 22097336, at *3 (N.D. Cal. Sept. 4, 2003) (citing *Allwaste* and noting that a thirteen month period presumably represents a sufficiently substantial length of time of continuity purposes).

The predicate acts alleged in the FAC, and those which Plaintiff could further allege, as detailed above, predicate acts that would span at least twelve months, which would satisfy the test for closed-ended continuity. *See Allwaste*, 65 F.3d at 1530-31 (error for district court to deny leave to

amend where plaintiff, at hearing, stated it could allege predicate acts that occurred for more than one year, *i.e.* thirteen months).[4]

In contrast to closed-ended continuity, open-ended continuity refers to the threat that a defendant will continue to engage in criminal activity in the future. *H.J. Inc.*, 492 U.S. at 242. A plaintiff establishes open-ended continuity by demonstrating that the defendant's predicate acts either "include a specific threat of repetition extending indefinitely into the future" or constitute the enterprise's "regular way of doing business." *Id.* Predicate acts that were neither isolated nor sporadic pose a threat of continuing activity. *See Sun Savings & Loan Assoc. v. Dierdorff,* 825 F.2d 187, 194 (9th Cir.1987).

> The standard for showing open-ended continuity is extremely low. For example, although *Ikuno v. Yip*, 912 F.2d 306 (9th Cir. 1990), involved the filing of false annual reports only twice in one year, the court concluded continuity was established because "there was no evidence the defendant would have stopped filing false annual reports if the company had not stopped doing-business." *Id.* at 309. In *Allwaste*, an appeal of a 12(b)(6) order, the court similarly held that the defendants' 'willingness to participate in the kickback scheme and their affirmative misrepresentations . . . demonstrate that if they had not been fortuitously interrupted by termination, the predicate acts would have recurred indefinitely.' *Allwaste*, 65 F.3d at 1530.

*Sebastan International, Inc. v. Russolillo*, 186 F.Supp.2d 1055, 1067 ((C.D.Cal. 2000).

In *Dierdorff* the court also found a pattern where the predicate acts "did pose a threat of continuing activity because they covered up a whole series of alleged kickbacks and receipts of favors, occurred over several months, and in no way completed the criminal scheme." *Dierdorff,* 825 F.2d at 194.

---

[4]     Defendants argue that the March 2, 2006, email from A. Toves to Richard Reyes, *see* FAC ¶ 32, was not interstate. However, Plaintiff will show that the email passed through a server outside of Guam and was thus an interstate wire communication. *See United States v. Byars*, No. CRIM.A.06-91-KSF, 2006 WL 2366633 (E.D. Ky. Aug. 14, 2006) (wire fraud where email from Georgetown, Kentucky, to Florence, Kentucky, passed through server in Tennessee and was thus an interstate wire transmission).

The nature of the defendants' scheme and its extension to other payroll services clients was to divert payroll monies and to conceal the diversions and non-payments, presumably hoping, as in a check kiting scheme or an embezzlement to make up the shortages using subsequent payroll remittances. The scheme not only threatened to continue into the future but also became a way of conducting the payroll business. Plaintiff's claims thus satisfy the open-ended continuity requirement under RICO.

Because the RICO scheme was both closed-ended and open-ended, it constitutes a pattern of racketeering activity under RICO.

## 2. Predicate Acts: Wire Fraud And Mail Fraud; Causal Connection To Injury.

With respect to pleading violations of the mail and wire fraud statutes as predicate acts,[5] "[i]n pleading a violation of the mail and wire fraud statutes, Rule 9(b) of the Federal Rules of Civil Procedure must be satisfied." *In re Sumitomo Copper Litigation,* 104 F.Supp.2d 314, 321 (S.D.N.Y. 2000). Rule 9(b) provides in relevant part: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). In cases in which the plaintiff claims that mail and wire fraud were in furtherance of a larger scheme to defraud, the communications themselves need not have contained false or misleading information. *See Schmuck v. United States,* 489 U.S. 705, 715 (1989). "In such cases, a detailed description of the underlying scheme and the connection therewith of the mail and/or wire communications, is sufficient to satisfy

---

[5]     The elements of mail fraud are that "(1) the defendants formed a scheme or artifice to defraud; (2) the defendants used the United States mails or caused a use of the United States mails in furtherance of the scheme; and (3) the defendants did so with the specific intent to deceive or defraud." *Schreiber Distributing Co. v. Serv-Well Furniture Co., Inc.,* 806 F.2d 1393, 1400 (9th Cir. 1986). "Similarly, a wire fraud violations consists of (1) the formation of a scheme or artifice to defraud (2) use of the United States wires or causing a use of the United States wires in furtherance of the scheme; and (3) specific intent to deceive or defraud." *Ibid.* Because "the elements of mail and wire fraud are virtually identical," *Miller v. Yokohama Tire Corp.,* 358 F.3d 616, 620 n.3 (9th Cir. 2004), they can be considered and discussed together.

14

Rule 9(b)." *Sumitomo Copper Litigation,* 104 F.Supp.2d at 321. Under these circumstances, Rule 9(b) only requires the plaintiff to delineate, with adequate particularity, the specific circumstances constituting the overall fraudulent scheme. *See ibid.*

The FAC alleges that interstate communications with the IRS were in furtherance of the fraudulent scheme against MHC for the purpose of evading detection of the scheme to divert monies. As the Ninth Circuit held in *Sun Savings and Loan Ass'n v. Dierdorff*, 825 F.2d 187 (9th Cir. 1987), mailings sent to a third party to evade detection of the fraudulent scheme constituted mail fraud in furtherance of the scheme to defraud. *Dierdorff* involved a RICO claim for "receiving and using kickbacks" that damaged a bank and also involved fraudulent statements to federal and state governmental agencies and regulators. The court held that the mailings to the third parties were part of the defendant's attempts to evade detection and were in furtherance of his alleged scheme to defraud. *Id.* 825 F.2d at196.

*Anza v. Ideal Steel Supply Corp.*, 126 S. Ct. 1991 (2006), does not abrogate *Dierdorff.* The Ninth Circuit has expressly declined to decide whether direct reliance is required. *Poulos v. Caesars World, Inc.,* 379 F.3d 654, 666 (9th Cir. 2004) ("Because it is neither necessary nor prudent to reach the issue of whether reliance is the only way plaintiffs can establish causation in a civil RICO claim predicated on mail fraud, we decline to do so."). However, the Seventh Circuit visited this issue post-*Anza* and, joining a four to two majority of the circuits, held that plaintiffs, as direct victims of a scheme under which was carried out using the mails did not have to be the direct recipients of the fraudulent statements. *Phoenix Bond & Indemnity Co. v. Bridge*, 379 F.3d 928, 932-33 (7th Cir. 2007).

The injury to MHC was direct, as required by *Anza*, with the concealed diversion of monies and the filing of false statements resulting in MHC incurring substantial tax penalties. Unlike *Anza*,

the loss caused by the scheme fell on MHC and not the government. *See, e.g., Phoenix Bond & Indemnity*, 379 F.3d at 932 (filing of false affidavits with government regarding bidding on tax liens allowing multiple bids where otherwise prohibited; injury to plaintiff bidders).

Plaintiff, MHC, can also show that the Defendants engaged in the same type of diversions of payroll monies handled for at least two other businesses involving taxes. PBSI diverted and fraudulently converted funds belonging to Community First and Talofofo Golf course, and thus, the diversion and fraud which most likely involved fraudulent filings was a way of doing business for these defendants.

## 3. Association-In-Fact Enterprise.

Defendant's relying on *Chang v. Chin*, 80 F.3d 1293 (9th Cir. 1996), argue that an association-in-fact enterprise must exhibit some sort of structure for the making of decisions, whether hierarchical or consensual. *Chang*, however, was overruled by *Odum v. Microsoft Corporation*, 486 F.3d 541 (9th Cir. 2007) (en banc), in which the Ninth Circuit held that an association-in-fact enterprise under RICO does not require any particular organizational structure, separate or otherwise. *Odum v. Microsoft Corporation*, 486 F.3d at 551-554. With Pacific and Premier performing the same payroll services, they satisfy the criteria for association-in-fact: common purpose; ongoing organization; and, continuing unit. *See id.*

## D. RICO CONSPIRACY.

The RICO conspiracy statute states that "[i]t shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section." 18 U.S.C. § 1962(d). In *Salinas v. United States*, 522 U.S. 52 (1997), the Supreme Court held that:

> There is no requirement of some overt act or specific act in the statute before us, unlike the general conspiracy provision applicable to federal crimes, which requires that at least one of the conspirators have committed an "act to effect

the object of the conspiracy." § 371. The RICO conspiracy provision, then, is even more comprehensive than the general conspiracy offense in § 371.

.    .    .    .

A conspirator must intend to further an endeavor which, if completed, would satisfy all of the elements of a substantive criminal offense, but it suffices that he adopt the goal of furthering or facilitating the criminal endeavor ... One can be a conspirator by agreeing to facilitate only some of the acts leading to the substantive offense. It is elementary that a conspiracy may exist and be punished whether or not the substantive crime ensues, for the conspiracy is a distinct evil, and so punishable in itself.

522 U.S. at 63-64.

The allegations of conspiracy in paragraphs 64 through 67 are that A. Toves and J. Toves did conspire and agree to conduct and participate the affairs of the corporate enterprises through a pattern of racketeering activity with each defendant agreeing to commit, approve of, or aid and abet the commission of at least two acts of racketeering activity. FAC ¶ 66-67. The October 2006 date was a mistake and should have read May 2005. The nature and purposes of the conspiracy are adequately pled.

## E. BREACH OF CONTRACT.

"There is no particularity requirement in the rules for pleading a breach of contract claim." *Loeffler v. The Ritz-Carlton Hotel Co.*, No. 2:06-CV-0333-ECR-LRL, 2006 WL 1796008, *4 (D. Nev. June 28, 2006). So long as the plaintiff has pleaded all the necessary elements of a breach of contract action, the claim can stand. To maintain the cause of action, the complaint must allege (1) the existence of a valid and binding contract, (2) that Plaintiff has complied with the contract and performed her own obligations under it, (3) fulfillment with all conditions precedent, (4) a breach of the contract, and (5) damages to plaintiff. *Federal Practice and Procedure,* § 1235 at 269-71 (3rd ed.) 5 Charles A. Wright & Arthur P. Miller.

17

MHC has pled an agreement for payroll services, the dates the agreement was proposed by Defendant Pacific Business Solutions, the apparent succession to this agreement by Premier Business Solutions, and the date the parties began performing under it. The agreement, which provided for the payment of payroll taxes from the monies remitted to the Defendants was breached when the taxes were not paid and the monies diverted. This is sufficient to state a claim for breach of contract.

## F. CONVERSION.

The defendants diverted Hyatt's payroll monies to uses and purposes other than the payment of wages and taxes. These monies were provided to the defendants in trust for the payments. In this case there was an identifiable sum of money to be paid to another in trust for the payment of wages and taxes and the defendants failed to make the payments. "Money cannot be the subject of a cause of action for conversion unless there is a specific identifiable sum involved, such as where an agent accepts a sum of money to be paid to another and fails to make payment." *McKell v. Washington Mut., Inc.* , 49 Cal.Rptr.3d 227,255 - 256 (Cal. Ct. App. 2006); *see also Chazen v. Centennial Bank* (1998) 71 Cal.Rptr.2d 462 (Cal. Ct. App. 1998) ( plaintiffs stated a cause of action for conversion where the bank took funds from trust accounts to pay the trustee's personal indebtedness); *PCO, Inc. v. Christensen, Miller, Fink, Jacobs, Glaser, Weil & Shapiro, LLP,* 58 Cal. Rptr. 3d 516, 524-26 (Cal. Ct. App. 2007) ("California cases permitting an action for conversion of money typically involve those who have misappropriated, commingled, or misapplied specific funds held for the benefit of others." ); *Haigler v. Donnelly,* 117 P.2d 331, 335 (Cal. 1941) (claim for conversion stated when agent received stipulated sum of money belonging to plaintiffs and refused to account for it).

MHC alleges that the defendants diverted the monies remitted to them in trust for the payment of payroll and taxes, failing to make the tax payments. As such, MHC has sufficiently pled a claim for conversion of the monies sent to the defendants in trust.

18

## G. FRAUD CLAIMS.

A. Toves and J. Toves, through PBSI entered into contracts with MHC, which provided funds for payment of the companies' taxes. PBSI and the Toves failed to pay the taxes for MHC between 2004 and 2007. A. Toves provided false information, *i.e.* 941SS and ETFS's forms and emails, which reflected that payments had been made, when in fact they had not. MHC on these 941SS and ETFS reports, all the while more funds were being handed over to PBSI, and more taxes not being paid. The transmission to MHC of the 941SS forms occurred at or around the times they were sent. As a result of the Plaintiff's reliance on the misrepresentations, MHC continued to remit payroll monies to the Defendants when taxes had not been paid, lost monies remitted for taxes, and incurred substantial penalties assessed by the IRS which resulted from the misrepresentations regarding the payment of taxes. The representations about the 941SS forms were made by A. Toves around the time they were sent, the email regarding collection activities was sent by A. Toves on March 2, 2006, and the misrepresentations by J. Toves about taxes being paid were made in October 2006 to Craig Sawyers and other Hyatt representatives. The fraud allegations were pled with the requisite particularity, *see Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997) (finding that it was "not fatal to the complaint that it [did] not describe in detail a single specific transaction" because plaintiff had adequately identified other general aspects of alleged fraud, including type of conduct and general time frame), but, if not, Plaintiff asks for leave to amend to assert more specific information.

## H. AMENDMENT OF COMPLAINT.

If this Court finds the FAC deficient, Plaintiff asks that it be given leave to amend. *See Sebastan International, Inc. v. Russolillo*, 186 F. Supp. 2d 1055, 1063 (C.D.Cal. 2000) ("Where plaintiff's complaint should be dismissed for failure to state a claim, the plaintiff should be given 'at least one more chance to amend the complaint under Fed. R. Civ. Proc. 15(a) before dismissing the action with prejudice.'"); *See also Allwaste*, 65 F.3d at 1530-31.

19

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss should be denied, or, in the

alternative, that Plaintiff be given leave to amend.

Respectfully submitted this 27th day of June, 2007.

**CIVILLE & TANG, PLLC**

By: _____

**JOYCE C.H. TANG**
**G. PATRICK CIVILLE**
*Attorneys for Plaintiff*
*Marianas Hospitality Corporation,*
*dba Hyatt Regency Guam*