**CIVILLE & TANG, PLLC**
330 HERNAN CORTEZ AVENUE, SUITE 200
HAGÅTÑA, GUAM 96910
TELEPHONE: (671) 472-8868/69
FACSIMILE: (671) 477-2511

*Attorneys for Plaintiff*
*Marianas Hospitality Corporation,*
*dba Hyatt Regency Guam*



**FILED**
**DISTRICT COURT OF GUAM**

SEP 2 1 2007

**JEANNE G. QUINATA**
**Clerk of Court**

## IN THE UNITED STATES DISTRICT COURT OF GUAM

| | |
|---|---|
| MARIANAS HOSPITALITY CORPORATION, dba HYATT REGENCY GUAM, <br><br> Plaintiff, <br><br> vs <br><br> PREMIER BUSINESS SOLUTIONS, INC., PACIFIC BUSINESS SOLUTIONS, INC., ANNA MARIE TOVES, AND JESSE C. TOVES. <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |

CIVIL CASE NO. 07-00002

**SECOND AMENDED COMPLAINT**

Plaintiff, MARIANAS HOSPITALITY CORPORATION, dba HYATT REGENCY

GUAM, by way of its Second Amended Complaint ("SAC") against the Defendants, alleges

the following.

### *Preliminary Statement*

1.  This action seeks equitable relief, compensatory and punitive damages, treble

damages, costs and attorney's fees for unfair and deceptive conduct and fraudulent conduct by

the Defendants in violation of 18 U.S.C. §1961 and the law of Guam.

Hyatt PBS SAC.v3.1

### Jurisdiction

2.      This action is brought against Defendants Anna Marie Toves and Jesse C. Toves

under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et*

*seq.*, and seeks damages and relief for violations of 18 U.S.C. § 1962. This Court has

jurisdiction over this action by virtue of 18 U.S.C. § 1964(c) which provides that any person

injured in his business or property by reason of a violation of 18 U.S.C. § 1962 of this chapter

may sue therefore in any appropriate United States district court.

3.      This Court has jurisdiction over the other claims against Defendants Anna Marie

Toves, Jesse C. Toves, Premier Business Solutions, Inc. and Pacific Business Solutions, Inc.

arising under Guam law asserted in this Complaint under this Court's supplemental

jurisdictional powers pursuant to  28 U.S.C. § 1367, because the federal and Guam law claims

form part of the same case or controversy under Article III of the United States Constitution.

### Venue

4.      This action properly lies in the District of Guam, pursuant to 29 U.S.C.

§ 1391(b).  The Defendants reside in, are found in, transact business or are doing business in

this District and the unlawful activities were carried out, in whole or in part, within this

District.

### Parties

5.      Plaintiff, Marianas Hospitality Corporation dba Hyatt Regency Guam Hotel

("MHC") is a corporation organized and existing under the laws of the Territory of Guam with

its principal place of business located at Tumon, Guam, is duly licensed to transact business in

the Territory of Guam, and was at all time mentioned herein in the business of managing the

*Hyatt Regency Hotel* in Tumon, Guam. MHI is the successor in interest to International Trading Network, Ltd. ("ITN") and, as of March 2004, had acquired all right, title, interest and claims of ITN relating to the operating of the Hyatt Regency Guam.

6. Defendant Jesse C. Toves ("J. Toves") is an individual and is a resident and a citizen of the Territory of Guam, and at all relevant times, was President and director of Pacific Business Solutions and Premier Business Solutions. On information and belief, J. Toves was at all times mentioned herein a 40% shareholder of Pacific Business Solutions and 33% shareholder of Premier Business Solutions.

7. Defendant Anna Marie Toves ("A. Toves") is an individual and a resident and a citizen of the Territory of Guam and at all relevant times was the manager of Pacific Business Solutions and Premier Business Solutions, who represented and held herself out to be a person with the authority to direct the affairs of both entities.

8. Defendant Pacific Business Solutions, Inc. (hereinafter "Pacific Business Solutions"), is a corporation organized under the laws of Guam, and, on information and belief, has its principal place of business in the Territory of Guam, and at all relevant times, represented itself as a corporation licensed in the Territory of Guam to do business as a payroll agency. It is an Enterprise owned or operated by Defendants J. Toves and A. Toves within the definition contained in RICO, 18 U.S.C. § 1961(4). Its operations affect interstate commerce.

9. Defendant, Premier Business Solutions, Inc. (hereinafter "Premier Business Solutions"), is a corporation organized under the laws of Guam, and, on information and belief, has its principal place of business in the Territory of Guam, and, at all relevant times, represented itself as a corporation licensed in the Territory of Guam to do business as a payroll agency. It is an Enterprise owned or operated by Defendants J. Toves and A. Toves

(collectively referred to as the "Individual Defendants") within the definition contained in

RICO, 18 U.S.C. § 1961(4). Its operations affect interstate commerce.

10. In the alternative, Pacific Business Solutions and Premier Business Solutions

constitute, under the facts of this case, a single enterprise under 18 U.S.C. § 1961(4).

### Facts Common To All Claims For Relief

11. On June 29, 1999, Pacific Business Solutions, Inc. was organized by J. Toves

owning 2,000 shares, Jesus L. Perez owning 1,500 shares, and Rodney J. Anulao owning 1,500

shares.

12. Pacific Business Solutions has never been licensed to perform payroll and tax

payment services. Since at least January 1999, Pacific Business Solutions was, controlled,

managed and operated by the Individual Defendants, and provided payroll services to clients on

Guam.

13. In April of 2002, Pacific Business Solutions presented Hyatt Regency Guam

with a proposal to provide payroll services for Hyatt Regency Guam.

14. Hyatt Regency Guam accepted the proposal and Pacific Business Solutions and

MHC entered into an Agreement ("Agreement") whereby Pacific Business Solutions began

providing payroll processing services to Hyatt Regency Guam in the third quarter of 2002.

15. Under the Agreement Hyatt Regency Guam (initially) and MHC (from March

2004 onward) remitted funds to Pacific Business Solutions, either by way of cashier check or

wire transfer, to pay payroll, payroll taxes, including withholding of income taxes, FICA and

Medicare taxes, and employee contributions with respect to the employees of MHC.

4

16.     On February 3, 2004, Premier Business Solutions, Inc. was organized by Jesse C. Toves owning 333 shares Steffen Niu owning 333 shares, Dave Hicks owning 333 shares, and Peter F. Perez owning 1 share.

17.     Premier Business Solutions obtained a business license to sell computer hardware and software, and also to provide software consulting services. Premier Business Solutions has never been licensed to perform payroll and tax payment services. Premier Business Solutions was at all times mentioned herein, controlled, managed and operated by the Individual Defendants, and provided payroll services to clients on Guam

18.     At all times mentioned herein, the Individual Defendants controlled, operated and managed Pacific Business Solutions and Premier Business Solutions.

19.     From July 2002 to February 2007, MHC remitted funds to Pacific Business Solutions' bank account at Citizens Security Bank and Bank of Guam, to pay payroll, payroll taxes, including withholding of income taxes, FICA and medicare taxes, and employee contributions with respect to the employees of MHC. MHC, and its predecessor in interest International Trading Network, Ltd. ("ITN"), further provided funds through MHC's and ITN's Bank of Hawaii account by cashier's check, which Anna Toves picked up for deposit.

20.     At all times mentioned herein, MHC authorized the use and deposit of funds by Pacific Business Solutions, Premier Business Solutions and the Individual Defendants only to pay payroll, payroll taxes, including withholding of income taxes, FICA and medicare taxes, and employee contributions with respect to the employees of MHC. MHC did not at any time authorize Pacific Business Solutions, Premier Business Solutions and the Individual Defendants to use the payroll funds for any other purpose.

21.     In or about October 2006, A. Toves represented to the Hyatt that Pacific Business Solutions had changed its name to Premier Business Solutions, and that the business remained the same with only the names having changed. This was a false statement in that Premier Business Solutions was in fact a wholly new corporation. A. Toves knew her statement to be a false statement at the time, and she made such false representation for the purpose of inducing MHC to continue doing business with the new entity as it had with the old.

22.     In reliance on the representation of A. Toves, beginning in October 2006 and continuing until approximately February 2007, MHC, following the terms of the Agreement and believing, as a result of the representations of A. Toves, such Agreement to still be in place, paid invoices for payroll processing services purportedly performed by Premier Business Solutions, which were identical to the services previously provided by Pacific Business Solutions.

23.     From July 2002 through February 2007, Pacific Business Solutions and later Premier Business Solutions, under the operation and control of the Individual Defendants, conducted payroll processing for wages and taxes which MHC was liable to pay to its employees and to the Government of Guam and the Internal Revenue Service ("IRS").

24.     Beginning on or about January 2002 and continuing until at least December 2006, the Individual Defendants formed and carried out a scheme ("Scheme") to use Pacific Business Solutions and later Premier Business Solutions as enterprises ("the Enterprises") to defraud clients of the Enterprises of payroll monies belonging to clients of the Enterprises by inducing such to send money to the Enterprises for the purpose of the payment of payroll and local and federal taxes.

6

25.     As part of the Scheme, the Individual Defendants used the Enterprises to obtain

possession of the money belonging to clients of the Enterprises by representing to such clients

that they would hold the clients' funds in trust and would use the clients' funds to pay payroll

and FICA and Medicare taxes on behalf of the clients and the clients' employees.   Further as

part of the Scheme the Individual Defendants, without the consent or knowledge of the clients

of the Enterprises, used and diverted client funds for the Individual Defendants' own purposes

and as a result  paid taxes to IRS late or failed to pay such taxes at all.

26.     As an integral part of the Scheme, in order to avoid detection, the Individual

Defendants prepared IRS tax forms falsely claiming that taxes had been paid and sent such

forms to the IRS either by U.S. mail or interstate wire transmission and then provided clients

with copies of such fraudulently filed forms to show proof of payment.   As a further part of the

Scheme, in order to avoid detection, the Individual Defendants sent letters to IRS by interstate

facsimile or by U.S. mail falsely claiming that tax payments had been made on behalf of clients

of the Enterprises, and attributing any confusion to the attribution by IRS of payments to the

wrong account.   The Individual Defendants then provided copies of such fraudulent

communications to clients of the Enterprises, including MHC, to demonstrate proof of

payment.

27.     In furtherance of the Scheme, the Individual Defendants would also utilize the

IRS Electronic Funds Transfer Payment System, whereby they purportedly sent payments of

clients' tax obligations by interstate electronic transfer in order to obtain an electronic

verification of payment from the IRS.  The Individual Defendants would then present the

electronic verification of payment to clients of the Enterprises for the purpose of inducing the

clients into believing that the appropriate taxes had been paid, and to prevent the clients from discovering that such taxes had not been paid.

28.     The Individual Defendants intentionally hid and concealed from clients of the Enterprises the fact that many such payments were made against accounts which lacked sufficient funds thereby causing the IRS to issue electronic cancellations of payment notices, which the Individual Defendants would not show to the client, or the Individual Defendants upon receipt of the electronic verification of payment promptly stopped payment on the payment without telling the client this fact, thereby falsely causing the client to believe that payment had been made.

29.     The full roster of clients defrauded by the Individual Defendants in the course of the Scheme is not known, but is known to have included MHC, Community First (Guam) and Federal Credit Union ("Community First"), and Talofofo Golf Resort, now known as Onward Golf Resort ("TGR").

30.     Upon information and belief beginning in or about January 2002, the second quarter of the year 2000, the exact date and circumstances which are not known to MHC, the Individual Defendants, as part of the Scheme, utilized the Enterprises to divert to their own use monies received from clients of the Enterprises, and to fail to timely pay or pay at all the clients' tax obligations, and to concoct deliberate and increasingly elaborate false stories, supported by fraudulent mail and wire transmissions to deceive clients into thinking that their tax obligations have been paid and in furtherance of the Scheme and intent to prevent detection of the Scheme.

31.     Commencing on April 2004, the second payroll quarter of 2004, and continuing until February 2007, the Defendants J. Toves and A. Toves engaged in a pattern and practice of

illegal conduct, as part of the Scheme, with the specific intention of defrauding MHC of its payroll monies which MHC would send to Pacific Business Solutions and later Premier Business Solutions for the purpose of the payment of MHC's payroll and local and federal taxes under the Agreement.

32.     During the time period April 2004 through February 2007, the Individual Defendants knowingly and intentionally misrepresented to MHC that FICA and medicare taxes for MHC and its employees had been paid, and using a variety of artifices, including fraudulent mail and wire transmission, for the purpose of covering up the theft and diversion of the monies, and to induce or cause MHC to continue to remit payroll monies in reliance on the representations that the taxes had been or were being paid.

33.     At all times mentioned herein, MHC timely transferred or made available the requisite funds to Pacific Business Solution and later Premier Business Solutions prior to the date on which payroll and taxes were due.

34.     Although funds were timely transferred to Pacific Business Solution and later Premier Business Solutions to pay the Hyatt employees' FICA and Medicare taxes, the Defendants completely failed to pay FICA and Medicare payments to the IRS for certain payroll periods, and also failed to timely pay the taxes when due for other periods because the Individual Defendants were using payments received from MHC for their own use and purposes.

35.     The Defendants failed to pay the FICA and Medicare taxes due for Hyatt employees on the following dates and in the following amounts:

|  | Payroll Date | Amount FICA & Medicare Due | FICA & Medicare Due | Date Paid to IRS by PBSI | Interest & Penalty Paid by MHC | Unpaid FICA & Medicare |
|---|---|---|---|---|---|---|
| 1. | 2nd Quarter 2004 | | | | | |
|  | 4/12/04 | $42,751.20 | 4/21/04 | 5/7/04 | | |
|  | 4/28/04 | $42,559.88 | 5/5/04 | 5/21/04 | | |
|  | 5/12/04 | $44,730.74 | 5/19/04 | 6/2/04 | | |
|  | 5/26/04 | $42,738.64 | 6/2/04 | 6/18/04 | | |
|  | 6/09/04 | $44,352.00 | 6/16/04 | 7/2/04 | Total 2nd Qtr. $75,420.56 | |
|  | 6/23/04 | $42,541.98 | 6/30/04 | 7/16/04 | | |
| 2. | 3rd Quarter 2004 | | | | | |
|  | 7/7/04 | $42,803.26 | 7/14/04 | 8/3/04 | | |
|  | 7/21/04 | $43,872.29 | 7/28/04 | 8/13/04 | | |
|  | 8/4/04 | $44,142.11 | 8/11/04 | 8/30/06 | | |
|  | 8/18/04 | $42,597.78 | 8/25/04 | 9/10/04 | | |
|  | 9/1/04 | $44,997.10 | 9/8/04 | 9/27/04 | | |
|  | 9/15/04 | $43,892.58 | 9/22/04 | 10/8/04 | Total 3rd Qtr. $22,967.46 | |
|  | 9/29/04 | $43,813.06 | 10/6/04 | 11/8/04 | | |
| 3. | 1st Quarter 2005 | | | | | |
|  | 2/16/05 | $47,587.32 | 2/23/05 | Not Paid | | $47,587.32 |
|  | 3/16/05 | $46,881.77 | 3/23/05 | Not Paid | | $46,881.77 |
|  | 3/30/05 | $47,410.19 | 4/6/05 | Not Paid | | $47,410.19 |
|  | Payroll Date | Amount FICA & Medicare Due | FICA & Medicare Due | Date Paid to IRS by PBSI | Interest & Penalty Paid by MHC | Unpaid FICA & Medicare |
| 4. | 2nd Quarter 2005 | | | | | |
|  | 4/13/05 | $46,535.58 | 4/20/05 | 8/29/05 | | |
|  | 4/27/05 | $46,790.68 | 5/4/05 | 8/29/05 | | |
|  | 5/11/05 | $51,089.68 | 5/18/05 | 8/29/05 | | |
|  | 5/25/05 | $48,930.56 | 6/1/05 | 8/29/05 | | |
|  | 6/8/05 | $50,263.73 | 6/15/05 | 8/29/05 | Total 2nd Qtr. $267,438.13 | |
|  | 6/22/05 | $48,750.45 | 6/29/05 | 8/29/05 (partial pmt.) | | $2,531.93 |
| 5. | 3rd Quarter 2005 | | | | | |
|  | 7/6/05 | $48,761.26 | 7/13/05 | 11/4/05 (partial pmt.) | | $301.68 |
| 6. | 4th Quarter 2005 | | | | | |
|  | 10/26/05 | $49,934.64 | 11/2/05 | Not Paid | | $49,934.64 |
|  | 11/23/05 | $49,948.65 | 11/30/05 | Not Paid | Total 4th Qtr. $68,559.07 | $49,948.65 |
|  | 12/21/05 | $52,298.80 | 12/28/05 | Not Paid | | $52,298.80 |
| 7. | 1st Quarter 2006 | | | | | |
|  | 1/4/06 | $52,606.68 | 1/11/06 | 2/6/06 | | |
|  | 1/18/06 | $56,520.78 | 1/25/06 | 2/6/06 | | |

| | | | | | | |
|---|---|---|---|---|---|---|
| | 2/1/06 | $52,318.04 | 2/8/06 | 8/4/06 | | |
| | 2/15/06 | $50,283.56 | 2/22/06 | 8/4/06 | | |
| | 3/1/06 | $57,137.92 | 3/8/06 | 8/4/06 | | |
| | 3/15/06 | $50,160.44 | 3/22/06 | 8/4/06 | Total 1st Qtr. | |
| | 3/29/06 | $56,035.14 | 4/5/06 | 8/4/06 | $53,352.87 | |
| 8. | **2nd Quarter 2006** | | | | | |
| | 4/12/06 | $71,955.40 | 4/19/06 | 8/7/06 | | |
| | 4/26/06 | $48,420.60 | 5/3/06 | 8/7/06 | | |
| | 5/10/06 | $46,621.38 | 5/17/06 | 8/7/06 | | |
| | 5/24/06 | $44,927.94 | 5/31/06 | 8/7/06 | | |
| | 6/7/06 | $44,597.78 | 6/14/06 | 8/9/06 | Total 2nd Qtr. | |
| | 6/21/06 | $43,274.72 | 6/28/06 | 8/9.06 | 31,762.02 | |
| 9. | **3rd Quarter 2006** | | | | | |
| | 8/2/06 | $43,278.22 | 8/9/06 | Not Paid | | 43,278.22 |

36.     The failure to pay and the delay in payment directly resulted in MHC being forced to pay $340,173.21 in outstanding taxes even though it had previously transferred that amount of money to Pacific Business Solutions and later Premier Business Solutions, and it directly resulted in the imposition by IRS of and $402,891.58 in penalties and interest charges.

37.     As a direct and proximate result of the Individual Defendants' fraudulent actions through the Enterprises, as set forth above, MHC paid the IRS $340,173.21 for unpaid taxes. MHC had previously remitted to the Enterprises sufficient funds to pay this tax liability. As a further direct and proximate result of the Individual Defendants' fraudulent actions through the Enterprises, MHC paid $402,891.58 to the IRS in penalties and interest on the taxes which the Individual Defendants through the Enterprises had paid late or failed to pay.

## FIRST CLAIM FOR RELIEF

## CONDUCT AND PARTICIPATION IN A RICO ENTERPRISE THROUGH A PATTERN OF RACKETEERING ACTIVITY PURSUANT TO 18 U.S.C. §§ 1961(5) & 1962(c).

38.     Plaintiff re-alleges, repeats and incorporates by reference the allegations in Paragraphs 1 through 37 of the SAC as if all were fully set forth herein.

39.     Pacific Business Solutions and Premier Business Solutions are enterprises with the meaning of 18 U.S.C. §1961(4).

40.     At all times relevant to the SAC the Individual Defendants jointly and severally operated, directed and controlled the activities of the enterprises, Pacific Business Solutions and Premier Business Solutions.

41.     As an inherent and integral part of the Scheme the Individual Defendants engaged in a series of acts, "racketeering activity" under 18 U.S.C. §1961(1), constituting mail fraud or wire fraud as those terms are defined in 48 U.S.C. §§ 1343 (wire fraud) § 1341 (mail fraud) ("Predicate Acts") and as set forth with particularity below.

## PREDICATE ACTS

42.     In furtherance of the Scheme to deceive and defraud clients of Pacific Business Solutions and Premier Business Solutions, on or about April 30, 2004, Defendant A. Toves sent by U.S. mail, a Form 941-SS signed by A. Toves under oath as in her capacity as the attorney-in-fact for MHC, and also acting in her capacity as a manager of the Enterprises, falsely stating that she had paid FICA and Medicare taxes on behalf of MHC and its employees for the 1st Quarter of 2004. Despite the fact that defendant A. Toves signed the Form 941-SS under

penalty of perjury, she knew at the time the Form 941-SS was mailed that the taxes had not been paid and that her statement to the contrary was false. A. Toves and J. Toves subsequently provided the Form 941-SS to MHC with the intention of deceiving MHC into believing that the taxes referenced in the Form 941-SS had been paid. The Form 941 –SS and subsequent statements by the Individual Defendants were intended to be and were relied upon by MHC as proof of payment of MHC's tax liability, and were made with the further intention of preventing detection of the Scheme by MHC. The mailing of the 941-SS constituted mail fraud.

43.     In furtherance of the Scheme to deceive and defraud clients of Pacific Business Solutions and Premier Business Solutions, on or about July 30, 2004, Defendant A. Toves sent by U.S. mail, a Form 941-SS signed by A. Toves under oath as in her capacity as the attorney-in-fact for MHC, and also acting in her capacity as a manager of the Enterprises, falsely stating that she had paid FICA and Medicare taxes on behalf of MHC and its employees for the 2nd Quarter of 2004. Despite the fact that defendant A. Toves signed the Form 941-SS under penalty of perjury, she knew at the time the Form 941-SS was mailed that the taxes had not been paid and that her statement to the contrary was false. A. Toves and J. Toves subsequently provided the Form 941-SS to MHC with the intention of deceiving MHC into believing that the taxes referenced in the Form 941-SS had been paid or timely paid. The Form 941 –SS and subsequent statements by the Individual Defendants were intended to be and were relied upon by MHC as proof of payment of MHC's tax liability, and were made with the further intention of preventing detection of the Scheme by MHC. The mailing of the 941-SS constituted mail fraud.

44.     In furtherance of the Scheme to deceive and defraud clients of Pacific Business Solutions and Premier Business Solutions, on or about November 1, 2004, Defendant A. Toves sent by U.S. mail, a Form 941-SS signed by A. Toves under oath as in her capacity as the attorney-in-fact for MHC, and also acting in her capacity as a manager of the Enterprises, falsely stating that she had paid FICA and Medicare taxes on behalf of MHC and its employees for the 3rd Quarter of 2004. Despite the fact that defendant A. Toves signed the Form 941-SS under penalty of perjury, she knew at the time the Form 941-SS was mailed that the taxes had not been paid and that her statement to the contrary was false. A. Toves and J. Toves subsequently provided the Form 941-SS to MHC with the intention of deceiving MHC into believing that the taxes referenced in the Form 941-SS had been paid or timely paid. The Form 941 –SS and subsequent statements by the Individual Defendants were intended to be and were relied upon by MHC as proof of payment of MHC's tax liability, and were made with the further intention of preventing detection of the Scheme by MHC. The mailing of the 941-SS constituted mail fraud.

45.     In furtherance of the Scheme to deceive and defraud clients of Pacific Business Solutions and Premier Business Solutions, on or about January 25, 2004, Defendant A. Toves sent by U.S. mail, a Form 941-SS signed by A. Toves under oath as in her capacity as the attorney-in-fact for MHC, and also acting in her capacity as a manager of the Enterprises, falsely stating that she had paid FICA and Medicare taxes on behalf of MHC and its employees for the 4th Quarter of 2004. Despite the fact that defendant A. Toves signed the Form 941-SS under penalty of perjury, she knew at the time the Form 941-SS was mailed that the taxes had not been paid and that her statement to the contrary was false. A. Toves and J. Toves subsequently provided the Form 941-SS to MHC with the intention of deceiving MHC into

believing that the taxes referenced in the Form 941-SS had been paid or timely paid. The Form 941 –SS and subsequent statements by the Individual Defendants were intended to be and were relied upon by MHC as proof of payment of MHC's tax liability, and were made with the further intention of preventing detection of the Scheme by MHC. The mailing of the 941-SS constituted mail fraud.

46.    In furtherance of the Scheme to deceive and defraud clients of Pacific Business Solutions and Premier Business Solutions, on or about May 2, 2005, Defendant A. Toves sent by U.S. mail, a Form 941-SS signed by A. Toves under oath as in her capacity as the attorney-in-fact for MHC, and also acting in her capacity as a manager of the Enterprises, falsely stating that she had paid FICA and Medicare taxes on behalf of MHC and its employees for the 1st Quarter of 2005. Despite the fact that defendant A. Toves signed the Form 941-SS under penalty of perjury, she knew at the time the Form 941-SS was mailed that the taxes had not been paid and that her statement to the contrary was false. A. Toves and J. Toves subsequently provided the Form 941-SS to MHC with the intention of deceiving MHC into believing that the taxes referenced in the Form 941-SS had been paid or timely paid. The Form 941 –SS and subsequent statements by the Individual Defendants were intended to be and were relied upon by MHC as proof of payment of MHC's tax liability, and were made with the further intention of preventing detection of the Scheme by MHC. The mailing of the 941-SS constituted mail fraud.

47.    In furtherance of the Scheme to deceive and defraud clients of Pacific Business Solutions and Premier Business Solutions, on or about July 29, 2005, Defendant A. Toves sent by U.S. mail, a Form 941-SS signed by A. Toves under oath as in her capacity as the attorney-in-fact for MHC, and also acting in her capacity as a manager of the Enterprises, falsely stating

that she had paid FICA and Medicare taxes on behalf of MHC and its employees for the 2nd

Quarter of 2005. Despite the fact that defendant A. Toves signed the Form 941-SS under

penalty of perjury, she knew at the time the Form 941-SS was mailed that the taxes had not

been paid and that her statement to the contrary was false. A. Toves and J. Toves subsequently

provided the Form 941-SS to MHC with the intention of deceiving MHC into believing that the

taxes referenced in the Form 941-SS had been paid or timely paid. The Form 941 –SS and

subsequent statements by the Individual Defendants were intended to be and were relied upon

by MHC as proof of payment of MHC's tax liability, and were made with the further intention

of preventing detection of the Scheme by MHC. The mailing of the 941-SS constituted mail

fraud.

48.     In furtherance of the Scheme to deceive and defraud clients of Pacific Business

Solutions and Premier Business Solutions, on or about October 29, 2005, Defendant A. Toves

sent by U.S. mail, a Form 941-SS signed by A. Toves under oath as in her capacity as the

attorney-in-fact for MHC, and also acting in her capacity as a manager of the Enterprises,

falsely stating that she had paid FICA and Medicare taxes on behalf of MHC and its employees

for the 3rd Quarter of 2005. Despite the fact that defendant A. Toves signed the Form 941-SS

under penalty of perjury, she knew at the time the Form 941-SS was mailed that the taxes had

not been paid and that her statement to the contrary was false. A. Toves and J. Toves

subsequently provided the Form 941-SS to MHC with the intention of deceiving MHC into

believing that the taxes referenced in the Form 941-SS had been paid or timely paid. The Form

941 –SS and subsequent statements by the Individual Defendants were intended to be and were

relied upon by MHC as proof of payment of MHC's tax liability, and were made with the

further intention of preventing detection of the Scheme by MHC. The mailing of the 941-SS constituted mail fraud.

49.     In furtherance of the scheme to deceive and defraud MHC, Defendant A. Toves sent an email on March 2, 2006, to Richard Reyes, a Hyatt employee representing that she had contacted an IRS agent and explained to the IRS agent that appropriate taxes for MHC had been paid and that IRS's claims to the contrary were the result of confusion over the change of accounts from Pacific Business Solutions to Premier Business Solutions. A. Toves further represented in the email that the IRS agreed to suspend collection activities against MHC. This e-mail by A. Toves was false and deceptive in that A. Toves knew at the time she sent the e-mail, but intentionally did not inform MHC that the Individual Defendants through the Enterprises had either not timely paid or had not paid at all taxes during the period being investigated by IRS. This was an intentional omission of a material fact. Her intentional omissions of material information in her email to Reyes was made in furtherance of the Scheme, was intended to be and was relied upon by MHC as evidence that MHC's taxes had been timely paid when in fact they had not, and was intended to prevent detection of the Scheme, and to permit the Scheme to continue. The email to Reyes was transmitted via a server located outside of Guam, and was therefore, an interstate communication and an act constituting wire fraud.

50.     In furtherance of the scheme to deceive and defraud MHC, Defendant A. Toves sent an email on March 10, 2006, to Richard Reyes, a Hyatt employee representing that she had left a voicemail for an IRS agent regarding an Intent to Levy for 2004 issued by IRS against MHC, and stating that she was working with an IRS agent out of the Hawaii office. This e-mail by A. Toves was false and deceptive in that A. Toves knew at the time she sent the e-mail,

but intentionally did not inform MHC that the Individual Defendants through the Enterprises had either not timely paid or had not paid at all taxes during the period being investigated by IRS. This was an intentional omission of a material fact. Her intentional omissions of material information in her email to Reyes was made in furtherance of the Scheme, was intended to be and was relied upon by MHC as evidence that MHC's taxes had been timely paid when in fact they had not, and was intended to prevent detection of the Scheme, and to permit the Scheme to continue. The email to Reyes was transmitted via a server located outside of Guam, and was therefore, an interstate communication and an act constituting wire fraud.

      51.      In furtherance of the Scheme to deceive and defraud MHC, Defendant A. Toves sent an email on May 11, 2006, to Richard Reyes, a Hyatt employee representing that she was working with an IRS agent to "clear up any matters we have pending for tax years 2004 & 2005". This e-mail by A. Toves was false and deceptive in that A. Toves knew at the time she sent the e-mail, but intentionally did not inform MHC that the Individual Defendants through the Enterprises had either not timely paid or had not paid at all taxes during the period being investigated by IRS. This was an intentional omission of a material fact. Her intentional omissions of material information in her email to Reyes was made in furtherance of the Scheme, was intended to be and was relied upon by MHC as evidence that MHC's taxes had been timely paid when in fact they had not, and was intended to prevent detection of the Scheme, and to permit the Scheme to continue. The email to Reyes was transmitted via a server located outside of Guam, and was therefore, an interstate communication and an act constituting wire fraud.

52.     In furtherance of the Scheme to deceive and defraud MHC, Defendant A. Toves sent an email on November 21, 2005, to Richard Reyes, a Hyatt employee representing that the IRS CAWRS unit was still working on the case and that she had been advised by IRS to follow up with their office that same week, and promising to keep Reyes posted. This e-mail by A. Toves was false and deceptive in that A. Toves knew at the time she sent the e-mail, but intentionally did not inform MHC that the Individual Defendants through the Enterprises had either not timely paid or had not paid at all taxes during the period being investigated by IRS. This was an intentional omission of a material fact. Her intentional omissions of material information in her email to Reyes was made in furtherance of the Scheme, was intended to be and was relied upon by MHC as evidence that MHC's taxes had been timely paid when in fact they had not, and was intended to prevent detection of the Scheme, and to permit the Scheme to continue. The email to Reyes was transmitted via a server located outside of Guam, and was therefore, an interstate communication and an act constituting wire fraud.

53.     In furtherance of the Scheme to deceive and defraud MHC, Defendant A. Toves sent an email on August 26, 2005, to Richard Reyes, a Hyatt employee representing that she would follow up on a direct inquiry from Reyes demanding to know what was happening with the tax issues. She stated that she would call Reyes later that afternoon regarding the details concerning the current tax issues.   A. Toves did not contact Reyes that day or anytime reasonably thereafter and did not provide true details of the current tax issues. This e-mail by A. Toves was false and deceptive in that A. Toves knew at the time she sent the e-mail, but intentionally did not inform MHC that the Individual Defendants through the Enterprises had either not timely paid or had not paid at all taxes during the period being investigated by IRS. This was an intentional omission of a material fact. Her intentional omissions of material

information in her email to Reyes was made in furtherance of the Scheme, was intended to be and was relied upon by MHC as evidence that MHC's taxes had been timely paid when in fact they had not, and was intended to prevent detection of the Scheme, and to permit the Scheme to continue. The email to Reyes was transmitted via a server located outside of Guam, and was therefore, an interstate communication and an act constituting wire fraud.

54.     On or about May 5, 2006, Defendant A. Toves, sent a letter by facsimile to the IRS agent in Honolulu, Hawaii, falsely claiming that MHC's FICA and Medicare taxes for the 2nd and 3rd Quarters of 2004 had been timely paid, and falsely asserting that IRS's records were in error as the result of a confusion over account numbers. The representations in the facsimile to the IRS were false, to wit, the taxes had not been paid and there had been no confusion of accounts by IRS, and were part of not only the Scheme to defraud MHC but also the larger Scheme and pattern and practice of defrauding clients of Pacific Business Solutions and Premier Business Solutions. This was an intentional omission of a material fact. Her intentional omissions of material information in her fax to the IRS and was provided to the MHC was made in furtherance of the Scheme, was intended to be and was relied upon by MHC as evidence that MHC's taxes had been timely paid when in fact they had not, and was intended to prevent detection of the Scheme, and to permit the Scheme to continue. The fax to IRS in Hawaii was an interstate communication and an act constituting wire fraud.

55.     In furtherance of the Scheme to deceive and defraud MHC and avoid detection, as more fully set forth above, Defendant J. Toves, acting through the Enterprises, in or about August or September 2006, on one or more occasions sent electronic communications, via interstate transmissions, from Guam to the Internal Revenue Service in Honolulu, Hawaii, utilizing the IRS online Electronic Funds Transfer Payment System ("EFTPS").

56.     In these EFTPS communications, the Individual Defendants represented that they were sending payroll tax payments to IRS on MHC's behalf. By doing this the Individual Defendants were able to obtain online electronic verification of payment confirmations from IRS showing that payment of taxes had been paid to IRS. The Individual Defendants thereupon showed the electronic verification of payment confirmations to MHC for the purpose of deceiving MHC into believing that MHC's tax obligations for the period covered by the purported payment had been paid.

57.     What MHC did not know, and what the Individual Defendants intentionally did not tell MHC is that, with respect to such purported payments, the Individual Defendants either (a) immediately cancelled the payment transaction after receiving an electronic verification of payment, (b) paid with an electronic payment which lacked sufficient funds and which resulted in a subsequent automatic rejection of payment by IRS on MHC's account for such payment; and/or (c) made the electronic payment after the due date for such payment with money from a source other than MHC, and only after the Individual Defendants had diverted and used MHC's timely remittance of money for their own purposes.

58.     These EFTPS transactions by Defendant J. Toves was false and deceptive in that J. Toves knew at the time he processed the EFTPS transactions that funds he did not intend to pay MHC's tax liability, and that he intended to use the EFTPS verification of payment receipt to deceive MHC into believing that payments of taxes for previous periods had been paid. J. Toves intended his fraudulent acts as described herein to be relied upon by MHC as evidence that MHC's taxes had been timely paid when in fact they had not. J. Toves further intended his actions to prevent detection of the Scheme, and to permit the Scheme to continue. The EFTPS

transactions occurred over the internet and were transmitted via servers and to a location outside of Guam, and constituted acts of wire fraud.

59.     In furtherance of the Scheme to deceive and defraud MHC and avoid detection, as more fully set forth above, A. Toves and J. Toves, acting through Premier Business Solutions, on multiple occasions sent electronic communications, via interstate transmissions, from Guam to the Internal Revenue Service in Honolulu, Hawaii, utilizing the IRS online EFTPS. In these EFTPS communications, the Individual Defendants represented that they were sending payroll tax payments to IRS on MHC's behalf.

By doing this the Individual Defendants were able to obtain online electronic verification of payment confirmations from IRS showing that payment of taxes had been paid to IRS. The Individual Defendants thereupon showed the electronic verification of payment confirmations to MHC for the purpose of deceiving MHC into believing that MHC's tax obligations for the period covered by the purported payment had been paid.

60.     What MHC did not know, and what the Individual Defendants intentionally did not tell MHC is that, with respect to such purported electronic payments, the Individual Defendants either (a) immediately cancelled the payment transaction after receiving an electronic verification of payment, (b) paid with an electronic payment which lacked sufficient funds and which resulted in a subsequent automatic rejection of payment by IRS on MHC's account for such payment; and/or (c) made the electronic payment after the due date for such payment with money from a source other than MHC, and only after the Individual Defendants had diverted and used MHC's timely remittance of money for their own purposes.

61.     During this time the fraudulent diversion of monies and the non-payment of taxes through racketeering activity was the Enterprises' regular way of doing business as alleged below.

62.     In furtherance of the Scheme to deceive and defraud clients of Pacific Business Solutions and Premier Business Solutions, on or about October 11, 2006, Defendant A. Toves sent an e-mail to Joseph Tydingco, Jr. at Community First, in which she advised Community First that she had been talking to IRS regarding IRS' inquiry into unpaid taxes by Community First. Defendant A. Toves only advised Tydingco that she had asked for an explanation of IRS calculations. This e-mail by A. Toves was false and deceptive in that A. Toves knew at the time she sent the e-mail that the Individual Defendants through the Enterprises had either not timely paid or had not paid at all taxes during the period being investigated by IRS. A. Toves' omissions of this material information in her email to Tydingco was made in furtherance of the Scheme, was intended to be and was relied upon by Tydingco, as evidence that Community First's taxes had been timely paid when in fact they had not, and was intended to prevent detection of the Scheme, and to permit the Scheme to continue. The email to Tydingco was transmitted via a server located outside of Guam, and was therefore, an interstate communication and an act constituting wire fraud.

63.     In furtherance of the Scheme to deceive and defraud clients of Pacific Business Solutions and Premier Business Solutions, on or about October 17, 2006, Defendant A. Toves sent an e-mail to Joseph Tydingco, Jr. at Community First, in which she advised Community First in which she denied IRS' representations to Tydingco that she had not been in contact with the IRS for over a month regarding the Community First payroll tax liabilities, and in which she stated that she had contracted IRS numerous times and promised to send Tydingco

Hyatt PBS SAC.v3.1

an email after each call stating the date, time and description of the matters discussed. This e-mail by A. Toves was false and deceptive in that A. Toves knew at the time she sent the e-mail that the Individual Defendants through the Enterprises had either not timely paid or had not paid at all taxes during the period being investigated by IRS. This was an intentional omission of a material fact. Her intentional omissions of material information in her email to Tydingco was made in furtherance of the Scheme, was intended to be and was relied upon by Tydingco, as evidence that Community First's taxes had been timely paid when in fact they had not, and was intended to prevent detection of the Scheme, and to permit the Scheme to continue. The email to Tydingco was transmitted via a server located outside of Guam, and was therefore, an interstate communication and an act constituting wire fraud.

      64.     In furtherance of the Scheme to deceive and defraud clients of Pacific Business Solutions and Premier Business Solutions, on or about October 19, 2006, Defendant A. Toves sent an e-mail to Joseph Tydingco, Jr. at Community First, in which she advised Tydingco that IRS was still citing no action having been taken on the outstanding balances.    This e-mail by A. Toves was false and deceptive in that A. Toves knew at the time she sent the e-mail, but intentionally did not inform Tydingco, that the Individual Defendants through the Enterprises had either not timely paid or had not paid at all taxes during the period being investigated by IRS. This was an intentional omission of a material fact. Her intentional omissions of material information in her email to Tydingco was made in furtherance of the Scheme, was intended to be and was relied upon by Tydingco, as evidence that Community First's taxes had been timely paid when in fact they had not, and was intended to prevent detection of the Scheme, and to permit the Scheme to continue. The email to Tydingco was transmitted via a

server located outside of Guam, and was therefore, an interstate communication and an act constituting wire fraud.

65. In furtherance of the Scheme to deceive and defraud clients of Pacific Business Solutions and Premier Business Solutions, on or about July 29, 2005, Defendant A. Toves sent by U.S. mail, a Form 941-SS signed by A. Toves under oath as in her capacity as the attorney-in-fact for Talofofo Golf Resort ("TGR"), and also acting in her capacity as a manager of the Enterprises, falsely stating that she had paid FICA and Medicare taxes on behalf of TGR and its employees for the 2nd Quarter of 2005. Despite the fact that defendant A. Toves signed the Form 941-SS under penalty of perjury, she knew at the time the Form 941-SS was mailed that the taxes had not been paid and that her statement to the contrary was false. A. Toves and J. Toves subsequently provided the Form 941-SS to TGR with the intention of deceiving TGR into believing that the taxes referenced in the Form 941-SS had been paid. The Form 941 –SS and subsequent statements by the Individual Defendants were intended to be and were relied upon by TGR as proof of payment of TGR's tax liability, and were made with the further intention of preventing detection of the Scheme by TGR. The mailing of the 941-SS constituted mail fraud.

66. The Predicate Acts, which constitute criminal conduct, as set forth above, demonstrate a pattern of continuous criminal activity occurring over a substantial period of time and constitute close-ended continuity within the meaning of 18 U.S.C. § 1962.

### OTHER FRAUDULENT ACTS

67. Between March 2004 and February 2007, the Individual Defendants, repeatedly represented and assured MHC and Hyatt employees that the FICA and Medicare taxes had been

paid, and that IRS' collection letters and notice of intent to levy issued in August 2006, were based on IRS' failure to properly attribute payments made by the Individual Defendants on MHC's behalf. These repeated representations, and each of them, were false in that the Individual Defendants knew at the time they made those representations that MHC's taxes had not been timely paid, or had not been paid at all, and that the collection letters and notice of levy by IRS were not the result of confusion of an improper attribution by IRS. All such representations by the Individual Defendants were part of the Scheme, and were intended to be and were relied upon by MHC and were intended to and did deceive MHC into believing that the appropriate taxes had been timely paid.

68.     In October 2006, J. Toves met with Craig Sawers and other Hyatt representatives, and represented that all FICA and Medicare taxes prior to 2006 had been paid for Hyatt employees, when in fact, FICA and Medicare taxes for some of the periods prior to 2006 had not been paid. J. Toves knew that some FICA and Medicare taxes prior to 2006 had not been paid at the time the representations were made. J. Toves' representations were part of the Scheme, and were intended to be and were relied upon by MHC and were intended to and did deceive MHC into believing that the appropriate taxes had been timely paid.

69.     As a direct and proximate result of the false, deceitful and fraudulent representations, including fraudulent wire and U.S. mail communications, as more fully set forth above, MHC believed for a long period of time that its taxes had been paid by the Enterprises.

70.     The representations made by the Individual Defendants in the letters, 941-SS Forms, emails and EFPTS were made in furtherance of the Scheme to divert MHC payroll monies and were for the purpose of completing the Scheme and preventing its detection by

MHC. MHC relied on said representations in making further payroll payments and in not taking action to pay the unpaid taxes.

71. MHC justifiably relied on the representations of the Individual Defendants and continued to remit monies to the Enterprises for the payment of payroll taxes believing that the payroll taxes had been paid. If MHC had known the taxes had not been paid, it would not have made further payments, it would have paid the taxes, and it would have avoided penalties.

72. Upon information and belief, the monies remitted to the Enterprises by MHC for the payment of taxes were diverted by the Individual Defendants to other purposes. These diversions were without the consent or knowledge of MHC.

## INJURY

73. As a direct and proximate result of the Predicate Acts as set forth above and, the other false, misleading and fraudulent actions of the Individual Defendants, MHC was damaged and injured in an amount exceeding $740,000, as shall be established at trial.

74. The Individual Defendants' pattern of racketeering activities and other fraudulent conduct, actively and fraudulently concealing the diversion of funds and the non-payment of taxes, as described above, resulted in the assessment by IRS, against MHC in the amount of $340,173.21 for unpaid taxes, and an assessment of $402,891.58 in penalties and interest.

75. The Individual Defendants used the United States mails or the interstate or international wires or caused such use, in furtherance of this Scheme.

76. The Individual Defendants acted with specific intent to deceive or defraud MHC.

77.     Pacific Business Solutions, Premier Business Solutions and the Individual Defendants received payroll funds from MHC, in trust, and the Individual Defendants represented that the Enterprises would pay for, among other things, MHC's employees' taxes, FICA and Medicare, and payroll.

78.     The Individual Defendants did not disclose to MHC that they did not pay MHC employees' FICA and Medicare taxes as alleged in this Complaint and, in fact, the Individual Defendants affirmatively misrepresented, through the mails and by wire, as alleged above, that the employees' FICA and Medicare taxes had been paid.

79.     The Individual Defendants used the funds provided by MHC for MHC's payroll and payroll taxes for the Enterprises' and/or the Individual Defendants use, without MHC's knowledge or consent.

80.     Through the Enterprise, Pacific Business Solutions and Premier Business Solutions, and in furtherance of the Scheme the Individual Defendants provided false and misleading statements to the IRS and MHC regarding the payment of payroll withholding, FICA and Medicare taxes, and put other documents in furtherance of the Scheme in the US Mail, and thereby committed the crime of Mail Fraud, as defined under 18 U.S.C. § 1341.

81.     Through the enterprise, and in furtherance of the Scheme, the Individual Defendants provided intentionally false assurances to MHC via email and fax, and thereby committed the crime of Wire Fraud, as defined under 18 U.S.C. § 1343.

82.     MHC, in suffering direct injury by the Predicate Acts and fraudulent behavior of the Individual Defendants as set forth above, justifiably relied on the representations of the Individual Defendants and continued to remit monies to the Enterprises for the payment of payroll taxes believing that the payroll taxes had been paid.

83.     The Individual Defendants, and each of them thereby violated 18 U.S.C. §1341
and 18 U.S.C. §1343, respectively.

84.     The Individual Defendants participated, either directly or indirectly, in the
conduct of the affairs of the RICO enterprises, Pacific Business Solutions and Premier Business
Solutions, through a pattern of racketeering activity in violation of 18 U.S.C. §§ 1961(4), (5),
(9) and 1962(c).

85.     Since October 2004, J. Toves and A. Toves committed two or more of the RICO
predicate acts set forth above as defined by 18 U.S.C. §§ 1961(1)(A) and (B), and did so in
violation of the RICO law 18 U.S.C. § 1962(c).

86.     As alleged above, the Individual Defendants have engaged in, either directly or
indirectly, or aided and abetted in a pattern of acts of (a) mail fraud, in violation of 18 U.S.C.
§1341, and (b) wire fraud, in violation of 18 U.S.C. § 1343, all of which constitute
"racketeering activity" as that term is defined in 18 U.S.C. §1961(1).

87.     Each such act of racketeering activity had a similar purpose, which involved the
same or similar participants and methods of commission, and had similar results and impact on
the same victim, namely Plaintiff, and the conspiracy began in April 2004 and continued
through February 2007. These acts constitute a "pattern of racketeering activity" as that term is
defined in 18 U.S.C. §1961(5).

88.     Since April 2004, the Individual Defendants committed two or more of the
RICO predicate acts set forth above as defined by 18 U.S.C § 1961(1)(A) and (B) and did so in
violation of the RICO law 18 U.S.C. § 1962(c).

89.     Plaintiff has made a demand upon the Individual Defendants and the Enterprises
for reimbursement of the funds remitted to the Enterprises for payment of MHC's FICA and

Medicare taxes and unemployment contributions where such payment was not made on behalf of MHC.

90.    J. Toves admitted in a letter dated November 16, 2006, to the IRS, that between July 2002 through August 2006, the Defendants "failed to timely deposit MHC's FICA taxes and to timely file MHC's Forms 941SS even though [they] had control of the funds and sole responsibility for making the deposit at the time the FICA taxes were due. . . . [They] admitted [their] failures only when [they] were confronted by the management of MHC and have agreed to repay MHC for the taxes that they had to double pay as a result of [their] actions."

91.    The enterprise that existed for the purpose of 18 U.S.C. §1961 *et seq.* was Pacific Business Solutions and Premier Business Solutions.

92.    In violation of 18 U.S.C. § 1962(c) and (d), Individual Defendants conspired to deprive and did deprive MHC of substantial proceeds through the above-described pattern of racketeering activity and conspired to use or invest and used or invested such proceeds in the establishment or operation of that enterprise and participated in the affairs of that enterprise through a pattern of racketeering activity.

93.    The foregoing enterprise was engaged in activities which affect interstate commerce and the Individual Defendants were enriched by the proceeds of multiple acts of racketeering activity as defined in 18 U.S.C. §1961.

94.    Plaintiff has suffered injury to its property by reason of the Individual Defendants' multiple violations of 18 U.S.C. §1961.

95.    RICO's civil remedies provision, 18 U.S.C. § 1964(c) provides that any person injured in his business or property by reason of a violation of § 1962 shall recover threefold the damages he sustains and the cost of the suit including reasonable attorney's fees.

## SECOND CLAIM FOR RELIEF

## CONSPIRACY IN A RICO ENTERPRISE THROUGH A PATTERN OF RACKETEERING ACTIVITY: 18 U.S.C. §§ 1861(5) and 1962(d)

96.     Plaintiff re-alleges, repeats and incorporates by reference the allegations in

Paragraphs 1 through 95 of the SAC as if fully set forth herein.

97.     Title 18 U.S.C. § 1962(d) makes it unlawful "for any person to conspire to

violate any of the provisions of subsection (a), (b), or (c) of this section."

98.     From on or about January 2002,  and continuing at least until in or around

February 2007, defendants A. Toves and J. Toves did conspire and agree with each other to use

Pacific Business Solutions and later Premier Business Solutions as enterprises to obtain

possession of the money belonging to clients of  Pacific Business Solutions and later Premier

Business Solutions by falsely representing to such clients that they would hold such funds in

trust and would use the client's funds to pay payroll and FICA and Medicare taxes on behalf of

the client and the client's employees.   Further as part of the conspiracy,  A. Toves and J. Toves

agreed that they would  use and divert client funds for the their own purposes,  with the

foreseeable result they paid taxes to IRS late or failed to pay such taxes at all, and that they

would use the mails and wires to conceal or cover up the diversion of funds and non-payment

of taxes.

99.     A. Toves and J. Toves did conspire and agree with each other to conduct and

participate, directly and indirectly, in the conduct of the affairs and activities of the Enterprises,

Pacific Business Solutions and Premier Business Solutions  through a pattern of racketeering

activity, in violation of 18 U.S.C. §§ 1962(c) and 1962(d), by each defendant agreeing to

commit, approve of, or aid and abet the commission of at least two of the acts of racketeering activity described with particularity in the Predicate Acts set forth above.

100.    The object of the conspiracy was to divert payroll funds received from clients of Pacific Business Solutions and Premier Business Solutions, such as and including MHC, for purposes other than the payment of taxes and to conceal or cover up the diversion of the payroll funds and thereby to continue to receive payroll monies from such clients including MHC.

101.    Through the enterprises, the Individual Defendants, conspiring together, diverted the payroll monies as alleged above and MHC was damaged as set forth above as a result of the RICO predicate acts detailed above and committed pursuant to the conspiracy.

## THIRD CLAIM FOR RELIEF

## BREACH OF CONTRACT

102.    Plaintiff re-alleges, repeats and incorporates by reference the allegations in Paragraphs 1 through 37 of the SAC as if all were fully set forth herein.

103.    Plaintiff has and had performed all conditions precedent of the Agreement with Pacific Business Solutions and Premier Business Solutions.

104.    Under the Agreement, Pacific Business Solutions and Premier Business Solutions contractually agreed and were contractually bound to pay all payroll funds, remitted to them by MHC, to MHC's employees and to pay therefrom, taxes to the Government of Guam and the United States Internal Revenue Service.

105.    Under the Agreement, Pacific Business Solutions and Premier Business Solutions and the Individual Defendants stood in a fiduciary relationship to MHC and to the employees of MHC, receiving payroll monies from MHC to be held in trust and to be paid out to MHC's employees and to the governmental taxing authorities, including the IRS.

32

106.   Pacific Business Solutions and Premier Business Solutions breached the Agreement by failing to pay payroll amounts to MHC's employees and by failing to withhold and pay taxes to the Internal Revenue Service as alleged above.

107.   As a result of Pacific Business Solutions and Premier Business Solutions' breach of the Agreement, MHC was required to and did in fact pay to the IRS unpaid taxes in the amount of $340,173.21, despite the fact that MHC had previously paid this amount to Pacific Business Solutions and Premier Business Solutions for such taxes. As an additional result of Pacific Business Solutions and Premier Business Solutions breach of the Agreement, MHC was further required to pay and did pay to IRS penalties and interest in the amount of $402,891.58.

108.   As a result of Pacific Business Solutions and Premier Business Solutions breach of the Agreement, MHC incurred damages in the approximate amount of $340,173.21, plus penalties and interest in the amount of $402,891.58, due to PBSI' illegal and wrongful detention of payroll funds remitted to PBSI by MHC and due to MHC's employees and to the Internal Revenue Service.

109.   As a result of Pacific Business Solutions and Premier Business Solutions' breach, MHC was forced to and did incur additional consequential damages, in an amount to be shown at trial, in the form of loss of employee time and additional expenses to investigate and update the status of payroll account files and to contact various governmental agencies to make the due and correct payments that Defendant failed to make.

## FOURTH CLAIM FOR RELIEF

### CONVERSION

110. Plaintiff re-alleges, repeats and incorporates by reference the allegations in Paragraphs 1 through 109 of the SAC as if all were fully set forth herein.

111. As alleged above and upon information and belief, Pacific Business Solutions and Premier Business Solutions and the Individual Defendants, obtained the payroll monies from MHC to be held and administered in trust and to be paid to MHC's employees and to the governmental taxing authorities, including the IRS.

112. Pacific Business Solutions and Premier Business Solutions and the Individual defendants intentionally, knowingly, maliciously, fraudulently and wrongfully, without the knowledge or consent of MHC converted MHC's monies, as alleged above, to their own use.

113. As a result of Defendants' conversion of the payroll monies, MHC has incurred damages in the approximate amount of $340,173.21 in unpaid taxes, plus penalties and interest in the amount of $402,891.58.

114. This conversion of the payroll funds was done fraudulently, willfully, intentionally and with malice. MHC is entitled to recover exemplary damages against the Defendants jointly and severally.

115. As a result of Pacific Business Solutions and Premier Business Solutions and the Individual Defendants wrongful conversion, MHC was forced to and did incur the loss of employee time and additional expenses to investigate and update the status of payroll account files and to contact various governmental agencies to make the due and correct payments that Defendant failed to make.

116.    As a further result of Defendants' wrongful conversion, MHC was forced to and did incur attorneys' fees and costs, in an amount to be shown at trial, in attempts to negotiate settlement of this matter and to bring this action.

## FIFTH CLAIM FOR RELIEF

### FRAUD

117.    Plaintiff re-alleges, repeats and incorporates by reference the allegations in Paragraphs 1 through 116 of the SAC as if fully set forth herein.

118.    The Scheme conceived and implemented by the Individual Defendants had as it purpose the acquisition and conversion by the Individual Defendants of money belonging to MHC, through the use of deceit, misrepresentation, false statements, false documents and other deceptions, and by the commission by the Individual Defendants of acts of Wire Fraud and Mail Fraud.

119.    The full extent of Defendants' fraudulent conduct is not fully known to MHC. Among the fraudulent acts are each of the Predicate Acts set forth above involving or relating to MHC's account with Pacific Business Solutions and Premier Business Solutions.

120.    The Predicate Acts, and the representations made by the Individual Defendants in committing such acts involving or relating to MHC's account with Pacific Business Solutions and Premier Business Solutions, as set forth with particularity above, were committed by the A. Toves and J. Toves jointly or singly, as part of the conspiracy between the J. Toves and A. Toves. A. Toves and J. Toves committed such fraudulent acts with full knowledge of the falsity of their representations, and with the specific intent to deceive MHC, to induce MHC to rely on such false representations and to acquire MHC's money by false pretenses.

121. MHC had no knowledge of the falsity of the representations set forth in the description of the Predicate Acts, and reasonably relied on the representations of A. Toves and J. Toves.

122. In reliance on the false representations by J. Toves and A. Toves as described with particularity above, MHC suffered damages in that it was forced to pay to IRS $340,173.21 in FICA and Medicare taxes, which Defendants had failed to pay on behalf of MHC and its employees, despite the fact that MHC had previously remitted the funds necessary to pay the taxes to the Defendants. MHC suffered further damage in that it was assessed penalties and interest on the unpaid taxes in the amount of $402,891.58.

123. Pacific Business Solutions and Premier Business Solutions are vicariously liable for the fraudulent misrepresentations of the Individual Defendants.

124. Defendants' actions demonstrated oppression, fraud or malice and were devoid of just cause or excuse and/or in reckless disregard for the rights and well-being of MHC. MHC is, therefore, entitled to exemplary damages from the Defendants, jointly and severally, in an amount to be proven at trial.

## SIXTH CLAIM FOR RELIEF

### ACCOUNTING AND RESTITUTION

125. Plaintiff re-alleges, repeats and incorporates by reference the allegations in Paragraphs 1 through 124 of the SAC as though fully set forth herein.

126. Pacific Business Solutions and Premier Business Solutions and the Individual Defendants exercised dominion and control over money belonging to MHC and entrusted to the Defendants for payment according to the Agreement. Pacific Business Solutions and Premier Business Solutions and the Individual Defendants owed a duty to account to MHC for the

payroll funds remitted to Pacific Business Solutions and Premier Business Solutions money paid to them by MHC for payroll administration, including the payment of MHC employees and taxes.

127.    As fiduciaries handling funds in trust for MHC, Pacific Business Solutions and Premier Business Solutions and the Individual Defendants were required to provide MHC with accountings of the payroll funds remitted to it by MHC.

128.    MHC has repeatedly demanded an accounting.  Notwithstanding these demands, Pacific Business Solutions and Premier Business Solutions and the Individual Defendants have refused and failed to provide a full and complete accounting of such funds.

### *Prayers for Relief*

### FIRST CLAIM FOR RELIEF

### CONDUCT AND PARTICIPATION IN A RICO ENTERPRISE THROUGH A PATTERN OF RACKETEERING ACTIVITY: 18 U.S.C. §§ 1961(5), 1962(c)

**WHEREFORE**, pursuant to 18 U.S.C. § 1964, Plaintiff requests judgment against Defendants as follows:

A.    That the Court find the Individual Defendants, jointly and severally,  conducted and/or participated, directly or indirectly, in the affairs of a RICO enterprise, Pacific Business Solutions/Premier Business Solutions, through a pattern of racketeering activity in violation of the RICO laws at 18 U.S.C. §§ 1961(5) ("pattern" defined) and 1962(c).

B.    That the Individual Defendants, jointly and severally,  be required to account for all gains, profits, and advantages derived from their several acts of racketeering activity in violation of 18 U.S.C. § 1962(c) and from all other violation(s) of applicable State and federal law(s).

C. That judgment be entered for Plaintiff and against the Individual Defendants, jointly and severally, for Plaintiff's actual damages, and for any gains, profits, or advantages attributable to all violations of 18 U.S.C. § 1962(c), according to proof at trial.

D. That the Individual Defendants, jointly and severally, pay to Plaintiff treble (triple) damages, under authority of 18 U.S.C. § 1964(c), for any gains, profits, or advantages attributable to all violations of 18 U.S.C. § 1962(c), according to proof at trial.

E. That the Individual Defendants, jointly and severally, pay to Plaintiff all damages sustained by Plaintiff in consequence of Defendants' several violations of 18 U.S.C. § 1962(c), according to proof at trial.

F. That the Individual Defendants, jointly and severally, pay to Plaintiff the costs of the lawsuit incurred herein including, but not limited to, all necessary research, all non-judicial enforcement and all reasonable counsel's fees.

G. That all damages caused by the Individual Defendants, jointly and severally, and all gains, profits, and advantages derived by the Individual Defendants, jointly and severally, from the several acts of racketeering in violation of 18 U.S.C. § 1962(c) and from all other violation(s) of applicable State and federal law(s), be deemed to be held in constructive trust, for the benefit of Plaintiff, its successors and assigns.

H. That Plaintiff have such other and further relief as this Court deems just and proper, under the circumstances of this action.

## SECOND CLAIM FOR RELIEF

### CONSPIRACY IN A RICO ENTERPRISE THROUGH A PATTERN OF RACKETEERING ACTIVITY: 18 U.S.C. §§ 1861(5) and 1962(d)

**WHEREFORE**, pursuant to 18 U.S.C. § 1964, Plaintiffs request judgment against A. Toves and J. Toves as follows:

A.      That the Court find that Individual Defendants, jointly and severally, conducted and/or participated, directly or indirectly, in the affairs of a RICO enterprise, Pacific Business Solutions, through a pattern of racketeering activity in violation of the RICO laws at 18 U.S.C. §§ 1961(5) ("pattern" defined) and 1962(c).

B.      That Individual Defendants, jointly and severally, be required to account for all gains, profits, and advantages derived from their several acts of racketeering activity in violation of 18 U.S.C. § 1962(c) and from all other violation(s) of applicable State and federal law(s).

C.      That judgment be entered for Plaintiff and against the Individual Defendants, jointly and severally, for Plaintiff's actual damages, and for any gains, profits, or advantages attributable to all violations of 18 U.S.C. § 1962(c), according to proof at trial.

D.      That the Individual Defendants, jointly and severally, pay to Plaintiff treble (triple) damages, under authority of 18 U.S.C. § 1964(c), for any gains, profits, or advantages attributable to all violations of 18 U.S.C. § 1962(c), according to proof at trial.

E.      That the Individual Defendants, jointly and severally, pay to Plaintiff all damages sustained by Plaintiff in consequence of the Individual Defendants' several violations of 18 U.S.C. § 1962(c), according to proof at trial.

Hyatt PBS SAC.v3.1

F.     That the Individual Defendants, jointly and severally, pay to Plaintiff the costs of the lawsuit incurred herein including, but not limited to, all necessary research, all non-judicial enforcement and all reasonable counsel's fees.

G.     That all damages caused by the Individual Defendants, jointly and severally, and all gains, profits, and advantages derived by Defendants, jointly and severally, from the several acts of racketeering in violation of 18 U.S.C. § 1962(c) and from all other violation(s) of applicable State and federal law(s), be deemed to be held in constructive trust, for the benefit of Plaintiff, its successors and assigns.

H.     That Plaintiff have such other and further relief as this Court deems just and proper, under the circumstances of this action.

### THIRD CLAIM FOR RELIEF

BREACH OF CONTRACT

**WHEREFORE,** on the Third Claim for Relief for Breach of Contract, Plaintiff requests judgment against Defendant Pacific Business Solutions, Inc. and Defendant Premier Business Solutions as follows:

A.     That judgment be entered against Defendants Pacific Business Solutions, Inc. and Defendant Premier Business Solutions in favor of Plaintiff in an amount to be proved at trial;

B.     That Plaintiff be awarded costs of this action; and

C.     That Plaintiff have such other and further relief as this Court deems just and proper.

### FOURTH CLAIM FOR RELIEF

CONVERSION

**WHEREFORE,** on the Fourth Claim for Relief for Conversion Plaintiff requests judgment against Defendants J. Toves, A. Toves, Pacific Business Solutions, Inc. and Defendant Premier Business Solutions as follows:

      A.      That judgment be entered, jointly and severally, against Defendants J. Toves, A. Toves, Pacific Business Solutions, Inc. and Defendant Premier Business Solutions in favor of Plaintiff in an amount to be proved at trial;

      B.      That Plaintiff be awarded costs of this action; and

      C.      That Plaintiff have such other and further relief as this Court deems just and proper.

## FIFTH CLAIM FOR RELIEF

### FRAUD

**WHEREFORE,** on the Fifth Claim for Relief for Fraud Plaintiff requests judgment against Defendants J. Toves, A. Toves, Pacific Business Solutions, Inc. and Defendant Premier Business Solutions as follows:

      A.      That judgment be entered, jointly and severally,  against Defendants J. Toves, A. Toves, Pacific Business Solutions, Inc. and Defendant Premier Business Solutions in favor of Plaintiff in an amount to be proved at trial;

      B.      That Plaintiff be awarded exemplary damages against Defendants J. Toves, A. Toves, Pacific Business Solutions, Inc. and Premier Business Solutions;

      C.      That Plaintiff be awarded costs of this action; and

      D.      That Plaintiff have such other and further relief as this Court deems just and proper.

Hyatt PBS SAC.v3.1

## SIXTH CLAIM FOR RELIEF

## ACCOUNTING AND RESTITUTION

**WHEREFORE,** on the Sixth Claim for Relief, for Accounting and Restitution, Plaintiff requests judgment against Defendants J. Toves, A. Toves, Pacific Business Solutions, Inc. and Defendant Premier Business Solutions as follows:

A.     That the Defendants be ordered to provide an accounting to Plaintiff of the administration and allocation of all monies provided to Defendants for purposes of payroll administration for the period from February, 2004 to February 2007, and that such accounting shall include the employees' names, Plaintiff account numbers, the amount of money received for each payroll period and the date on which it was received, the amount of money paid to each employee for each payroll period and the date of payment, the amount of money paid for withholding, FICA and Medicare for each employee for each payroll period and the date of the payment, and the amount of money remaining after all payments for the payroll period were paid out to the employee or as taxes;

B.     That the Defendants be ordered to pay to Plaintiff by way of restitution, all payroll monies received by PBSI and not paid to MHC employees or withholding or payroll taxes for the period from February, 2004 to February 2007;

C.     For attorney's fees and costs of suit incurred in this action; and

D.     For such other and further relief as the court deems just and proper.

**DATED** at Hagåtña, Guam, on September 21, 2007.

**CIVILLE & TANG, PLLC**

By: _____
**G. PATRICK CIVILLE**
*Attorneys for Plaintiff*
*Marianas Hospitality Corporation,*
*dba Hyatt Regency Guam*
