1   **CIVILLE & TANG, PLLC**
    330 HERNAN CORTEZ AVENUE, SUITE 200
2   HAGÅTÑA, GUAM 96910
    TELEPHONE: (671) 472-8868/69
3   FACSIMILE: (671) 477-2511

4   *Attorneys for Plaintiff*
5   *Marianas Hospitality Corporation,*
    *dba Hyatt Regency Guam*
6

7

8

9           **IN THE UNITED STATES DISTRICT COURT OF GUAM**

10

11  MARIANAS HOSPITALITY CORPORATION, )    CIVIL CASE NO.CV07-00002
    dba HYATT REGENCY GUAM,            )
12                                     )
13              Plaintiff,             )
                                       )
14                                     )    **PLAINTIFF'S OPPOSITION TO**
         vs.                           )    **MOTION TO DISMISS FOR LACK**
15                                     )    **OF SUBJECT MATTER**
    PREMIER BUSINESS SOLUTIONS, INC.,  )    **JURISDICTION AND FOR FAILURE**
16  PACIFIC BUSINESS SOLUTIONS, INC.,  )    **TO STATE A CLAIM UNDER**
    ANNA MARIE TOVES, AND JESSE C.     )    **FEDERAL RULE OF CIVIL**
17  TOVES,                             )    **PROCEDURE 12(B)(6)**
                                       )
18              Defendants.            )
                                       )
19  _____)

20

21

22

23

24

25

26

27

28                    ORIGINAL

FILED
DISTRICT COURT OF GUAM
JAN 1 1 2008
JEANNE G. QUINATA
Clerk of Court

# TABLE OF CONTENTS

Page(s)

I. INTRODUCTION ................................................ 1

II. PROCEDURAL BACKGROUND ..................................... 1

III. ARGUMENT .................................................. 2

    A. Standards Governing Motion to Dismiss ................................. 2

    B. This Court has Jurisdiction Over the Claims and Parties ..................... 2

    C. The SAC States a Claim for Relief Under 18 U.S.C. § 1962(c) ................ 4

        1. Elements to Support A Civil RICO Claim Under § 1962(c) .............. 4

        2. The SAC Alleges a Pattern of Racketeering ........................... 4

        3. The SAC Alleges that Plaintiff was Proximately Injured in Its Business and Property by the Predicate Acts of Racketeering Under 18 U.S.C. 1962(c) ............................... 9

            a) Proximate Causation - Allegations to Show a Direct Injury to MHC ................................................ 9

            b) Predicate Acts Resulted in the Plaintiff's Injury ................. 11

            c) Reliance on Use of Mail is Sufficiently Alleged in the SAC and is Otherwise Not Required ........................... 12

    D. Plaintiff Alleged Facts Sufficient to State a Claim for Conspiracy in a RICO Enterprise Through a Pattern of Racketeering ..................... 15

    E. Plaintiff Alleges a Cause of Action for Breach of Contract .................... 17

    F. Plaintiff Alleges a Cause of Action for Conversion ......................... 18

    G. The Plaintiffs Sufficiently Alleged Fraud With Particularity .................. 19

IV. CONCLUSION ................................................ 20

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Allwaste, Inc. v. Hecht,*
65 F.3d 1523 (9th Cir.1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4-5, 15

*Anza v. Ideal Steel Supply Corp.,* -- U.S. --,
126 S. Ct. 1991 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 9

*Bell Atl. Corp. v. Twombly,* 127 S.Ct. 1955 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 9-13

*Cement-Lock v. Gas Technology Institute,*
No. 05 C 0018, 2006 WL 3147700, * 12 (N.D. Ill. Nov. 1, 2006) . . . . . . . . . . . . . . . . . . . . 11

*Chazen v. Centennial Bank,*
71 Cal.Rptr.2d 462 (Cal. Ct. App. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Cooper v. Pickett,*
137 F.3d 616 (9th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Executive Software of N. America Inc. v. United States Dist. Court for
Cent. Dist. of Cal.,* 24 F.3d 1545 (9th Cir.1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Giuliano v. Everything Yogurt, Inc.,*
819 F. Supp. 240, (E.D.N.Y., 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Haigler v. Donnelly,*
117 P.2d 331 (Cal. 1941) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Haywood v. Bedatsky,* No. CV-05-2179-PHX-DGC,
2007 WL 552213, *1 -2 (D.Ariz., February 20, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*H.J. Inc. v. Northwestern Bell Telephone Co.,*
492 U.S. at 229 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5-6

*Holmes v. Sec. Investor Prot. Corp.,*
503 U.S. 258, 112 S.Ct. 1311, 117 L.Ed.2d 532 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . 12-13

*Howard v. America Online, Inc.,*
208 F.3d 741 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*In re Sumitomo Copper Litigation,*
104 F.Supp.2d 314 (S.D.N.Y. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Living Designs, Inc. v. E.I. Dupont de Nemours and Co.,*
431 F.3d 353 (9th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4-5, 12-13

*Lortz v. Connell,*
273 Cal. App.2d 286, 78 Cal. Rptr. 6, 8 (Cal. App. 1969) . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Marshall & Ilsley Trust Co. v. Pate,*
819 F.2d 806 (7th Cir.1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

| | Page(s) |
|---|---|

*McKell v. Washington Mut., Inc.* ,
142 Cal .App. 4th 1457, 49 Cal. Rptr. 3d 227 (Cal. Ct. App. 2006) . . . . . . . . . . . . . . . . . . 18

*Mendoza v. Zirkle Fruit Co.*,
301 F.3d 1163 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Metcalf v. Death Row Records, Inc.*,
No. C-03-1250 SC, 2003 Wl 22097336, at *3 (N.D. Cal. Sept. 4, 2003) . . . . . . . . . . . . . . . 4

*Miller v. Yokohama Tire Corp.*,
358 F.3d 616 (9th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 17

*Morrow v. Black* , 742 F. Supp. 1199 (E.D.N.Y. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Navarro v. Block*, 250 F.3d 729 (9th Cir.2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Newman v. Checkrite Cal., Inc.*.
912 F.Supp. 1354 Cal.1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Oki Semiconductor Co. v. Wells Fargo Bank, Nat. Ass'n*,
298 F.3d 768 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Pennsylvania Assigned Risk Plan v. Pflaumer*,
Civ. A. No. 93-4575, 1994 WL 24691, *3 (E.D. Pa. Jan. 26, 1994) . . . . . . . . . . . . . . . . . 16

*PCO, Inc. v. Christensen, Miller, Fink, Jacobs, Glaser, Weil & Shapiro, LLP*,
58 Cal. Rptr. 3d 516 (Cal. Ct. App. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Phoenix Bond & Indemnity Co. v. Bridge*,
477 F.3d 928 (7th Cir. 2007), *cert. granted by Bridge v. Phoenix Bond & Indem. Co.*,
2008 WL 54347, 76 USLW 3073 (U.S. Jan 04, 2008) (NO. 07-210) . . . . . . . . . . . . . . . . . 13

*Salinas v. United States*, 522 U.S. 52 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Schreiber Distributing Co. v. Serv-Well Furniture Co., Inc.*,
806 F.2d 1393 (9th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Sebastan International, Inc. v. Russolillo*,
186 F. Supp. 2d 1055 (C.D. Cal. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Sumitomo Copper Litigation*,
104 F. Supp. 2d 314 (S.D.N.Y. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Sun Savings and Loan Ass'n v. Dierdorff* ,
825 F.2d 187 (9th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 7, 15

*Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Systems Management, Inc. v. Loiselle*,
303 F.3d 100 (1st Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Syverson v. IBM Corp.*, 472 F.3d 1072 (9th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

|  | Page(s) |
|---|---|

*Terminate Control Corp. v. Horowitz,*
  28 F.3d 1335 (2nd Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Thompson v. Davis,*
  295 F.3d 890 (9th Cir.2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Town of Kearny v. Hudson Meadows Urban Renewal Corp.,*
  829 F.2d 1263 (3rd Cir.1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Trans Pacific Export Co. v. Oka Towers Corp.,*
  2000 Guam 3, ¶ 23 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*United States v. Byars,*
  No. CRIM.A.06-91-KSF, 2006 WL 2366633 (E.D. Ky. Aug. 14, 2006) . . . . . . . . . . . . . . . 8

*United States v. Rastelli,*
  870 F.2d 822 (2nd Cir.1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*United States v. Sampson,*
  371 U.S. 75, 83 S.Ct. 173, 9 L.Ed.2d 136 (1962) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

**Statutes**

18 U.S.C. § 1343 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

18 U.S.C. § 1961 *et seq.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

18 U.S.C. §§ 1961(5) and 1962 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

18 U.S.C. §§ 1961(5) and 1962(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

18 U.S.C. § 1962 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

18 U.S.C. § 1962(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 4, 9, 14

18 U.S.C. § 1962(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15-16

28 U.S.C. § 1337(a) and (b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2-3

28 U.S.C. § 1367(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

**Rules**

Rule 8(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Rule 9(b), FRCP . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 17, 19

Rule 12(b)(6), FRCP . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 5, 8

**Other Authority**

*Federal Practice and Procedure,* § 1235 at 269-71 (3rd ed.),
  5 Charles A. Wright & Arthur P. Miller . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

# I. INTRODUCTION

This is an action arising out of the diversion of payroll monies remitted to the defendants and held in trust by them for the payment of wages and taxes. In its Second Amended Complaint, the Plaintiff, Marianas Hospitality Corporation, d/b/a/ Hyatt Regency Guam ("MHC" or "Hyatt") alleges causes of action under the Racketeer Influenced and Corrupt Organization Act ("RICO") and Guam law. The Defendants filed a motion to dismiss the Second Amended Complaint. This memorandum is submitted in opposition to the Defendants' motion.

# II. PROCEDURAL BACKGROUND

Plaintiff MHC filed a First Amended Complaint ("FAC") in this matter on March 16, 2007, alleging causes of action under Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*, and seeking damages and relief for violations of 18 U.S.C. § 1962. In the FAC, MHC also alleged claims under Guam law for fraud, conversion, breach of contract, and restitution and accounting. The Defendants filed a motion to dismiss the FAC, which the court granted on September 18, 2007. The Court permitted MHC to file a second amended complaint.

MHC filed its Second Amended Complaint ("SAC") on September 21, 2007. In the SAC, Plaintiff MHC alleges the following claims for relief: (1) federal claim against Defendants Anne Marie Toves ("A. Toves") and Jesse C. Toves ("J. Toves") (collectively "Individual Defendants"), for Conduct and Participation in a RICO Enterprise Through a Pattern of Racketeering Activity in violation of RICO, 18 U.S.C. §§ 1961(5) and 1962(c), SAC ¶¶ 38-95; (2) federal claim against the Individual Defendants for Conspiracy in a RICO Enterprise Through a Pattern of Racketeering Activity, in violation of RICO, 18 U.S.C. §§ 1961(5) and 1962(d); SAC ¶¶ 96-101; (3) Guam law claim for Breach of Contract against Defendants Pacific Business Solutions, Inc. and Premier Business Solutions, Inc. (collectively "Corporate Defendants"), SAC ¶¶ 102-109; (4) Guam law claim for Conversion against the Individual Defendants and the Corporate Defendants, SAC ¶¶ 110-116; (5) Guam law claim for Fraud against the Individual Defendants and the Corporate Defendants, SAC ¶¶ 117-124; and (6) Guam law claim for Accounting and Restitution against the Individual Defendants and the Corporate Defendants, SAC ¶¶ 125-128.

On October 11, 2007, the Defendants filed a motion to dismiss MHC's SAC ("Motion to

1 │ Dismiss") arguing that the SAC should be dismissed for lack of subject matter jurisdiction and for
2 │ failure to state a claim for relief under Rule 12(b)(6) of the Federal Rules of Civil Procedure
3 │ ("FRCP"). For the reasons that follow, the Defendants' Motion to Dismiss should be denied. The
4 │ SAC properly alleges claims for relief and this court has jurisdiction over the claims and parties in
5 │ this case.

6 │ ### III. ARGUMENT

7 │ **A.    Standards Governing Motion to Dismiss.**

8 │ A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the complaint. *Navarro v.*
9 │ *Block,* 250 F.3d 729, 732 (9th Cir.2001). The minimum pleading requirement is set by Rule 8(a),
10 │ requiring a complaint to include "a short and plain statement of the claim showing that the pleader
11 │ is entitled to relief" in order to "give the defendant fair notice of what the plaintiff's claim is and the
12 │ grounds upon which it rests." *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 512 (2002); *see also*
13 │ *Erickson v. Pardus,* 127 S. Ct. 2197, 2200 (2007) (per curiam). While a complaint "does not need
14 │ detailed factual allegations," the "[f]actual allegations must be enough to raise a right to relief above
15 │ the speculative level." *Bell Atl. Corp. v. Twombly,* 127 S. Ct. 1955, 1964-65 (2007). A complaint
16 │ must allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 1974. When
17 │ considering a motion to dismiss under Rule 12(b)(6), the plaintiff's complaint is liberally construed
18 │ and all well-pleaded facts are taken as true. *Syverson v. IBM Corp.,* 472 F.3d 1072, 1075 (9th
19 │ Cir.2007). Under the standards for reviewing the SAC, the Plaintiff MHC has sufficiently stated
20 │ claims upon which relief can be granted.

21 │ **B.    This Court has Jurisdiction Over the Claims and Parties**.

22 │ In their Motion to Dismiss, the Defendants argue that the Court lacks jurisdiction over the
23 │ Corporate Defendants. This argument should be rejected.

24 │ The Court clearly has subject matter jurisdiction over the two federal claims brought under
25 │ RICO against the Individual Defendants. In addition to the federal RICO claims, the SAC alleges
26 │ claims under Guam law against the Individual and Corporate Defendants for breach of contract,
27 │ conversion, fraud, and accounting and restitution. This Court has supplemental jurisdiction under 28
28 │ U.S.C. § 1337(a) over the parties as well as the Guam law claims. A federal court may, in its

1   discretion, exercise supplemental subject matter jurisdiction under 28 U.S.C. § 1337(a) with respect
2   to a party over whom there is no independent basis for federal court jurisdiction, provided that the
3   federal and state claims form but one constitutional case and derive from a common nucleus of
4   operative facts. *See Mendoza v. Zirkle Fruit Co.*, 301 F.3d 1163, 1172-75 (9th Cir. 2002) (a RICO
5   case); *Haywood v. Bedatsky*, No. CV-05-2179-PHX-DGC, 2007 WL 552213, *1 -2 (D. Ariz., Feb.
6   20, 2007) ("It is well settled in the Ninth Circuit that a district court has power to exercise
7   supplemental subject matter jurisdiction over a party when the federal and state law claims 'derive
8   from a common nucleus of operative facts.' " ) (citation omitted). In this case, the claims against the
9   corporate defendants are based on the handling and diversion of the payroll monies and the failure
10   to make the tax payments. Because they derive from a common nucleus of operative facts with the
11   RICO claims, this Court has supplemental jurisdiction over the corporate party defendants.

12       "As a general matter, the court should exercise its supplemental jurisdiction where, as here,
13   state law and federal claims arise out of the same facts and constitute a single case or controversy,"
14   *Newman v. Checkrite Cal., Inc.*. 912 F.Supp. 1354,1373 (E.D. Cal.1995), and, "'once it is determined
15   that the assertion of supplemental jurisdiction is permissible under section 1367(a) and (b), section
16   1367(c) provides the only valid basis upon which a district court can decline jurisdiction and remand
17   pendant claims.'" *Id.* (quoting *Executive Software of N. America Inc. v. United States Dist. Court for
18   Cent. Dist. of Cal.,* 24 F.3d 1545, 1551 (9th Cir.1994)). Section 1367(c) directs that a district court
19   may decline to exercise supplemental jurisdiction under subsection (a) if "**(1)** the claim raises a novel
20   or complex issue of State law, **(2)** the claim substantially predominates over the claim or claims over
21   which the district court has original jurisdiction, **(3)** the district court has dismissed all claims over
22   which it has original jurisdiction, or **(4)** in exceptional circumstances, there are other compelling
23   reasons for declining jurisdiction." 28 U.S.C. § 1367(c). Here, there are no complex issues of Guam
24   law, the Guam law claims do not substantially predominate over the RICO claims, there are no
25   exceptional circumstances for declining jurisdiction, and, as argued below, this Court should not
26   dismiss the underlying RICO claims. For these reasons, this Court should exercise supplemental
27   jurisdiction over the corporate defendants and the Guam law claims.

28

**C.** **The SAC States a Claim for Relief Under 18 U.S.C. § 1962(c).**

**1.** **Elements to Support A Civil RICO Claim Under § 1962(c).**

A civil RICO complaint must at least allege: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as 'predicate acts') (5) causing injury to plaintiff's 'business or property.' " *Living Designs, Inc. v. E.I. Dupont de Nemours and Co.*, 431 F.3d 353, 361 (9th Cir. 2005).

**2.** **The SAC Alleges a Pattern of Racketeering.**

In the Motion to Dismiss, the Defendants argue that the SAC fails to allege that the Defendants engaged in a "pattern of racketeering," in that the SAC does not properly allege either an open-ended or closed-ended pattern of racketeering. This argument should be rejected. The SAC sufficiently alleges both an open-ended and close-ended pattern of racketeering.

At a minimum, a pattern of racketeering activity requires at least two predicate acts that are related and continuous. *Allwaste, Inc. v. Hecht*, 65 F.3d 1523, 1527 (9th Cir.1995). Continuity can be either "open-ended" or "closed-ended." *Id.* Plaintiffs may establish closed-ended continuity by showing the related predicate acts occurred over a substantial period of time. *Id.* Although racketeering activities "extending over a few weeks or months" do not satisfy the "substantial period of time" requirement, the Ninth Circuit has rejected a bright-line rule regarding the minimum period over which predicate acts must occur to constitute closed-ended continuity. *Id.* at 1528 (rejecting argument that predicate acts must continue for at least one year). In *Allwaste*, the court noted that predicate acts occurring in a period of time "as much as thirteen months" would demonstrate that the criminal activity spanned a "substantial period of time." *Id.*; *see also Metcalf v. Death Row Records, Inc.*, 2003 WI 22097336, at *3 (N.D. Cal. Sept. 4, 2003) (citing *Allwaste* and noting that a thirteen month period presumably represents a sufficiently substantial length of time of continuity purposes).

The SAC contains allegations that show 19 separate predicate acts of mail and wire fraud spanning 31 months, from April of 2004 to October of 2006. SAC, ¶ 42-65. The SAC alleges related predicate acts occurring over a substantial period of time, and therefore satisfies the test for closed-ended continuity. *See Allwaste, Inc.*, 65 F.3d at 1527.

The SAC also alleges facts supporting open-ended continuity. Even if the alleged criminal

1 activities do not span a substantial period, a plaintiff may alternatively establish "open-ended"

2 continuity. *Id.* at 1527-28. In contrast to closed-ended continuity, open-ended continuity refers to

3 the threat that a defendant will continue to engage in criminal activity in the future. *Id.* at 1528; *see*

4 *also H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 242 (1989). A plaintiff establishes

5 open-ended continuity by demonstrating that the defendant's predicate acts either "include a specific

6 threat of repetition extending indefinitely into the future" or constitute the enterprise's "regular way

7 of doing business." *H.J. Inc.*, 492 U.S. at 242. Predicate acts that were neither isolated nor sporadic

8 pose a threat of continuing activity. *See Sun Savings & Loan Assoc. v. Dierdorff,* 825 F.2d 187, 194

9 (9th Cir.1987) (finding a pattern where the predicate acts "did pose a threat of continuing activity

10 because they covered up a whole series of alleged kickbacks and receipts of favors, occurred over

11 several months, and in no way completed the criminal scheme."). The fortuitous interruption of

12 criminal acts does not preclude a finding of open-ended continuity. *Allwaste, Inc.*, 65 F.3d at 1529;

13 *see also Sebastan International, Inc. v. Russolillo,* 186 F. Supp. 2d 1055, 1067 (C.D. Cal. 2000) ("In

14 *Allwaste,* an appeal of a 12(b)(6) order, the court similarly held that the defendants' 'willingness to

15 participate in the kickback scheme and their affirmative misrepresentations . . . demonstrate that if

16 they had not been fortuitously interrupted by termination, the predicate acts would have recurred

17 indefinitely.'") (citing *Allwaste,* 65 F.3d at 1530). "The standard for showing open-ended continuity

18 is extremely low." *Sebastan International, Inc.*, 186 F. Supp. 2d at 1067 (C.D. Cal. 2000).

19        In the SAC, the Plaintiff alleges that the Individual Defendants used the Corporate Defendants

20 Pacific Business Solutions, Inc. and Premier Business Solutions, Inc., i.e., the "Enterprise",[1] to

21 conduct racketeering acts over the course spanning several years, from 2004 through 2006, in order

22

---

23     [1]    The law is clear that a group of corporations may constitute an association in fact

24 enterprise. *See United States v. Blinder,* 10 F.3d 1468, 1473 (9th Cir. 1993) ("If a corporation can form part of an "associated in fact" enterprise, a fortiori, a group of corporations should be able to

25 constitute the entire enterprise. . . . Thus, although we have not addressed previously whether a group or union consisting solely of corporations or other legal entities can constitute an "associated in fact"

26 enterprise, we now hold that it does."); *see also Living Designs, Inc. v. E.I. Dupont de Nemours and*

27 *Co.,* 431 F.3d 353, 361(9th Cir. 2005) (holding that DuPont and certain law firms can together constitute an associated in fact RICO enterprise, citing *Blinder* as "[h]olding that 'a group or union

28 consisting solely of corporations or other legal entities can constitute an 'association in fact enterprise.'").

1   to defraud MHC and other clients of the Corporate Defendants. FAC, ¶¶ 42-66. The nature of the

2   Defendants' scheme and its extension to other payroll services clients was to divert payroll monies

3   and to conceal the diversions and non-payments, presumably hoping, as in a check kiting scheme or

4   an embezzlement to make up the shortages using subsequent payroll remittances. As alleged in ¶¶

5   61 through 66, the Individual Defendants not only used the Enterprise to engage in a pattern of

6   racketeering activity to defraud MHC, but used the Enterprise to defraud other clients of the

7   Corporate Defendants. The SAC sufficiently alleges that the scheme of fraudulently diverting monies

8   and non-payment of taxes through racketeering activities not only threatened to continue into the

9   future, but was the Enterprise's regular way of doing business. *See H.J., Inc.* 492 U.S. at 242.

10  Plaintiff's allegations in the SAC thus satisfy the open-ended continuity requirement under RICO.

11  Because the Plaintiffs have shown that the scheme was both closed-ended and open-ended, the

12  Plaintiff has established a pattern of racketeering activity required to support its RICO claim.

13          In arguing that the SAC does not state facts to support the element of a "pattern of

14  racketeering," the Defendants further appear to contend that the allegations of mail and wire fraud are

15  not predicate acts of wire fraud under 18 U.S.C. § 1343 or mail fraud because "neither mailings nor

16  wires were used to transmit the communications," Mtn. to Dismiss, p. 5, and therefore these

17  allegations are not part of the pattern of racketeering activity. *Id.* This argument is clearly in error.

18          An analysis of the sufficiency of mail fraud and wire fraud claims may be treated together

19  because "the elements of mail and wire fraud are virtually identical." *Miller v. Yokohama Tire*

20  *Corp.,*358 F.3d 616, 620 n.3 (9th Cir. 2004). To establish a claim for mail fraud, the plaintiff must

21  show that "(1) the defendants formed a scheme or artifice to defraud; (2) the defendants used the

22  United States mails or caused a use of the United States mails in furtherance of the scheme; and (3)

23  the defendants did so with the specific intent to deceive or defraud." *Schreiber Distributing Co. v.*

24  *Serv-Well Furniture Co., Inc.,* 806 F.2d 1393, 1400 (9th Cir. 1986). "Similarly, a wire fraud

25  violations consists of (1) the formation of a scheme or artifice to defraud (2) use of the United States

26  wires or causing a use of the United States wires in furtherance of the scheme; and (3) specific intent

27  to deceive or defraud." *Id.*

28          "[I]n pleading a violation of the mail and wire fraud statutes, Rule 9(b) of the Federal Rules

1  of Civil Procedure must be satisfied." *In re Sumitomo Copper Litigation,* 104 F.Supp.2d 314, 321

2  (S.D.N.Y. 2000). "[A] detailed description of the underlying scheme and the connection therewith

3  of the mail and/or wire communications, is sufficient to satisfy Rule 9(b)." *Id.* As explained by the

4  Ninth Circuit:

5      Title 18 U.S.C. § 1341 requires that the mailings alleged in a mail fraud complaint
        have been made for the purpose of executing the fraudulent scheme. . . . This does not
6      mean that the mailings need be an essential part of the scheme. . . . . Likewise, this
        does not mean that the mailings need occur concurrently with the fraudulent acts. . .
7      . The requirement that the mailings be "in furtherance" of the scheme "is satisfied if
        the completion of the scheme or the prevention of its detection is in some way
8      dependent upon the mailings."

9  *Sun Sav. and Loan Ass'n v. Dierdorff,* 825 F.2d 187, 196 (9th Cir. 1987) (quoting *United States v.*

10  *Sampson,* 371 U.S. 75, 80, 83 S.Ct. 173, 175, 9 L.Ed.2d 136 (1962)) (additional citations omitted).

11      The SAC alleges that interstate communications with the IRS were in furtherance of the

12  fraudulent scheme against MHC for the purpose of evading detection of the scheme to divert monies.

13  As the Ninth Circuit held in *Sun Savings and Loan Ass'n v. Dierdorff*, 825 F.2d 187 (9th Cir. 1987),

14  mailings sent to a third party to evade detection of the fraudulent scheme constituted mail fraud in

15  furtherance of the scheme to defraud. *Dierdorff* involved a RICO claim for "receiving and using

16  kickbacks" that damaged a bank and also involved fraudulent statements to federal and state

17  governmental agencies and regulators. The court held that the mailings to the third parties were part

18  of the defendant's attempts to evade detection and were *in furtherance of* his alleged scheme to

19  defraud. *Id.* at 196 ("While the letters were all sent to third parties rather than to Sun, the effect of

20  the mailings was to prevent the development of any suspicion about the Danzer account and thus keep

21  Sun ignorant of Dierdorff's activities. Thus, the mailings as alleged were in furtherance of Dierdorff's

22  alleged scheme to defraud. We therefore reject appellee's argument that the district court's dismissal

23  is justified by appellant's failure properly to allege mail fraud.").[2]

24      In paragraphs 42 though 48 of the SAC, MHC alleges that on numerous occasions, Defendant

25  A. Toves sent by U.S. mail a Form 944-SS falsely stating that she paid FICA and Medicare taxes on

26  behalf of MHC and its employees. As alleged in the SAC, these mailings constituted mail fraud.

27  _____

28      [2]  *Anza v. Ideal Steel Supply Corp.,* 126 S. Ct. 1991 (2006), discussed *infra,* does not
    abrogate *Dierdorff.*

1 Additionally, in paragraphs 49 though 65 of the SAC, MHC alleges that on separate occasions related
2 to the overall scheme, A. Toves and/or J. Toves sent emails, electronic transmissions utilizing the IRS
3 online EFTPS, and at least one fax, to the IRS, MHC and/or other clients of the Corporate
4 Defendants, falsely stating that they paid FICA and Medicare taxes on behalf of MHC and its
5 employees, and/or making false statement to cover up their scheme to defraud. In these paragraphs,
6 MHC alleges that the emails were transmitted via servers located outside of Guam, the electronic
7 transmissions utilizing the IRS online EFTPS were sent electronically from Guam to the IRS in
8 Hawaii, and the fax was transmitted from Guam to Hawaii.[3] The SAC alleges facts showing that
9 these communications constituted interstate transmissions. *See United States v. Byars*, No.
10 CRIM.A.06-91-KSF, 2006 WL 2366633 (E.D. Ky. Aug. 14, 2006) (wire fraud where email from
11 Georgetown, Kentucky, to Florence, Kentucky, passed through server in Tennessee and was thus an
12 interstate wire transmission).

13      Under the RICO claims, the SAC alleges that the Individual Defendants' pattern of
14 racketeering activity, including various acts of mail and wire fraud, and the Defendants actions in
15 misrepresenting their failure to remit the withholdings, caused MHC to be unaware of the non-
16 payment of the tax and FICA withholdings, resulting in the assessment of substantial penalties by the
17 IRS against MHC, which MHC paid in full. By alleging facts that show that the mailings and wire
18 transmissions were made *in furtherance of the scheme to defraud*, the SAC alleges sufficiently alleges
19 predicate acts supporting MHC's RICO claim. *See Dierdorff*, 825 F.2d at 196 (holding that the
20 complaint stated a claim for fraud claim where the "complaint adequately alleges that . . . [the]
21 mailings were in furtherance of the fraudulent scheme.").

22      In reviewing a motion to dismiss under FRCP 12(b)(6), the Plaintiff is not required to prove
23 its case; rather, the plaintiff is only required to allege facts sufficient to state a claim for relief, and
24 those facts must be accepted as true by the Court. *See Baker v. Family Credit Counseling Corp.*, 440
25 F. Supp. 2d 392, 403 (E.D. Pa. 2006) (holding in a RICO case that "[a]t the motion to dismiss stage
26 of litigation, plaintiffs need not 'establish' anything; they need simply to allege a cause of action.").

27

28      [3] MHC did not have to be the recipient of these communications to state a RICO claim is discussed *infra*.

1    The plaintiffs sufficiently stated interstate communications, and that the mail and wire
2    communications were made in furtherance of the scheme, as required for the mail and wire fraud
3    predicate acts.

4
5    3.    **The SAC Alleges that Plaintiff was Proximately Injured in Its Business and Property by the Predicate Acts of Racketeering Under 18 U.S.C. 1962(c).**

6    a)    **Proximate Causation - Allegations to Show a Direct Injury to MHC.**

7    The Defendant further argues that the first RICO claim must be dismissed because MHC has
8    not alleged that it was proximately injured in its business and property by the Defendants' predicate
9    acts of racketeering. With regard to this argument, the Defendants appear to assert two contentions,
10   both of which are discussed below and which should be rejected: (1) that it was the IRS, and not
11   MHC, that was injured by the predicate acts of racketeering, and therefore Plaintiff was only
12   remotely, and not proximately injured, by the mail fraud and wire fraud; and (2) the Individual
13   Defendants' predicate acts of concealing the fact that they failed to pay the tax withholdings occurred
14   after the alleged injury to Plaintiff and thus the predicate acts cannot be the source of the cause of
15   MHC's injury.

16   Defendants' first contention, that the Individual Defendants' predicate acts proximately
17   injured the IRS, and not the Plaintiff, is premised on the argument that the Individual Defendants'
18   failure to pay the taxes resulted in no direct injury to the Plaintiff. In support of this argument, the
19   Defendants cite *Anza v. Ideal Steel Supply Corp.*, -- U.S. --, 126 S. Ct. 1991 (2006). In *Anza*, the
20   plaintiff, Ideal Steel Supply Corporation, and the defendant, National Steel Supply, Inc., were
21   competitors in the business of selling steel mill products and related supplies and services. *Anza*, 126
22   S. Ct. at 1994. Ideal alleged that National adopted a practice of not charging New York State sales
23   tax to cash-paying customers, and that National submitted fraudulent tax returns to the New York
24   State Department of Taxation in an effort to conceal their scheme. *Id.* Ideal alleged that the object
25   of the scheme was to give National a competitive advantage over Ideal. Ideal sued National's owners,
26   Joseph and Vincent Anza, under RICO § 1962(c). *Id.* at 1995. "The RICO violation alleged by Ideal
27   [w]as that the Anzas conducted National's affairs through a pattern of mail fraud and wire fraud."
28   *Id.* at 1997. The Supreme Court held that the "direct victim of this conduct was the State of New

1  York, not Ideal." *Id.* Ideal also argued that "it suffered it's own harms when the Anzas failed to
2  charge its own customers for the applicable sales tax." *Id.* The Court rejected this argument, stating
3  that the cause of Ideal's alleged harms "is a set of actions (offering lower prices) entirely distinct from
4  the alleged RICO violation (defrauding the State)." *Id.* The Court held that the "attenuation between
5  the plaintiff's harms and the claimed RICO violation" revealed an "absence of proximate causation."
6  *Id.*

7       *Anza* is clearly distinguishable from the case at bar. Here, as alleged in the SAC, the
8  Individual Defendants sent, by interstate mails and wires, communications to the IRS and the
9  Corporate Defendants' clients, as part of a scheme to conceal their acts of taking possession of their
10 clients' funds, including MHC's funds, and using the funds for purposes other than the payment of
11 taxes. With regard to MHC, as a result, MHC was kept unaware of the outstanding tax obligations
12 to the IRS, which further resulted not only in the injury of having its property converted, but by the
13 direct imposition of penalties assessed by the IRS in the amount of $402,891.58.

14      In *Anza*, the defendant's misreporting of sales taxes and the failure to pay sales taxes resulted
15 in an direct injury to the state taxing authority (by way of loss tax revenue), while the plaintiff's claim
16 of injury by the defendant's ability to gain a competitive advantage as a result of the fraud was not
17 direct but was attenuated. *Anza*, 126 S. Ct. at 1997. Unlike in *Anza*, in this case the Defendants'
18 scheme was designed to divert Hyatt's tax monies and to conceal the diversion from the Hyatt so that
19 the Hyatt would continue to make payments to the defendants, which resulted in the direct imposition
20 of penalties assessed by the IRS in the amount of $402,891.58. The concealment directly injured the
21 Hyatt when its tax monies were not remitted to the IRS, it was without knowledge of the diversion,
22 and it suffered direct and substantial penalties because the non-payment of the taxes was concealed.
23 Moreover, the decision in *Anza* was supported by (1) the difficulty inherent in determining what
24 portion of the Plaintiff's damages were attributable to the alleged pattern of fraud, *id.*, a problem
25 which does not exist in this case where the Hyatt had to pay the taxes and penalties, and (2) that the
26 risk that the alleged misdeeds would go unpunished was reduced by the likelihood that the victim of
27 the scheme, the State, would vindicate the law by pursuing its own claims against the defendant. *Id.*
28 at 1998. The Hyatt, in this case, however, was the party punished by and incurring penalties to the

10

1  IRS because of the defendants' diversion of the tax monies. *Cf. Cement-Lock v. Gas Technology*
2  *Institute*, No. 05 C 0018, 2006 WL 3147700, * 12 (N.D. Ill. Nov. 1, 2006) (distinguishing *Anza* and
3  holding that unlike in *Anza* where the plaintiff had no claim (direct or indirect) to the sales-tax
4  proceeds that the defendant improperly withheld, in its case "Plaintiffs have alleged concrete,
5  compensable damages flowing directly from Defendants' alleged scheme" of diverting state grant
6  monies).

7          MHC did not simply lose business or otherwise suffer harm as an attenuated consequence of
8  the actions of a third party in failing to pay taxes; rather, here, the Individual Defendants failed to use
9  MHC's money, entrusted to the Individual Defendants for the payment of the taxes on behalf of
10  MHC's employees, engaged in fraudulent acts to cover up their non-payment, which resulted in
11  MHC's injury - namely, the imposition and payment of penalties of over $400,000 assessed by the
12  IRS for the failure to pay the required tax withholdings. Therefore, as alleged in the SAC, the
13  Individual Defendants' racketeering activities were the direct and proximate cause of MCH's injury.

14          **b)      Predicate Acts Resulted in the Plaintiff's Injury.**

15          The Plaintiff's second contention with regard to causation, that the Individual Defendants'
16  predicate acts of concealing the fact that they failed to pay the tax withholdings occurred after the
17  alleged injury to Plaintiff and thus the predicate acts cannot be the source or the cause of MHC's
18  injury, should likewise be rejected. The Defendants clearly misconstrue the SAC. The Defendants
19  seem to think that the only injury suffered by MHC was the conversion of MHC's funds. The SAC
20  clearly alleges that the conversion of funds was but one injury suffered by MHC, for which MHC
21  seeks recovery in its complaint. However, as explained above, under the RICO claims, the SAC
22  alleges that the Individual Defendants' pattern of racketeering activity, including various acts of mail
23  and wire fraud, and the Defendants' actions in misrepresenting their failure to remit the withholdings,
24  caused MHC to be unaware of the non-payment of the tax withholdings, resulting in the assessment
25  of a substantial amount of penalties by the IRS against MHC, which MHC paid in full.

26          As alleged in the SAC, the fraud was *not* "complete when the money was taken" as argued
27  by the Defendants, Mtn. to Dismiss at p. 9. The fraud was complete when Plaintiff suffered
28  substantial injury in being assessed and having to pay penalties to the IRS based on the Individual

1    Defendants' concealment of their failure to remit the tax payments.  The SAC alleges that the
2    mailings and wire communications were in furtherance of the fraudulent scheme.  As alleged in the
3    SAC, had the Individual Plaintiffs not committed the predicate acts, which consisted not only of
4    misrepresentations to the IRS though the mails and wires, but also through the misrepresentations to
5    the MHC via email communications in furtherance of their fraudulent scheme to cover up their illegal
6    acts, MHC would have been aware of the outstanding tax and FICA withholding obligations, and
7    would not have been assessed penalties for non-payment by the IRS.  SAC, ¶ 71.  Clearly, the SAC
8    alleges the predicate acts of mail fraud and wire fraud with sufficient particularity, and sufficiently
9    alleges that the predicate acts of mail fraud and wire fraud caused MHC a direct and substantial
10   injury, supporting MHC's first claim under RICO.

11
12                 c)    **Reliance on Use of Mail is Sufficiently Alleged in the SAC and is
                          Otherwise Not Required.**

13          In contending that the predicate acts injured the IRS and not MHC, the Defendants' argument
14   implicates the issue of the sufficiency of allegations to assert a RICO claim based on predicate acts
15   of mail and wire fraud, and specifically whether the plaintiff must allege that it relied on the predicate
16   acts of mail and wire fraud in order to state a RICO claim based on these predicate acts.

17          The Supreme Court in *Anza*, *supra*, did not address the question of whether a RICO claim
18   predicated on mail fraud requires a showing that the plaintiff relied on the defendant's
19   misrepresentations.  The Court concluded it need not address that question because the RICO claim
20   failed for lack of proximate cause under *Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 112 S.Ct.
21   1311, 117 L.Ed.2d 532 (1992), where the relationship between the plaintiff-competitor's market-share
22   disadvantage (the asserted injury) and the defendant's non-payment of State sales tax (the asserted
23   fraud on the State, which reduced defendant's product costs) was too indirect, speculative and
24   attenuated. *See Anza*, 126 S. Ct. at 1998 ("Because Ideal has not satisfied the proximate-cause
25   requirement articulated in *Holmes*, we have no occasion to address the substantial question whether
26   a showing of reliance is required.").

27          The Ninth Circuit has expressly declined to decide whether direct reliance on the defendants'
28   misrepresentations is required.  In *Living Designs, Inc. v. E.I. Dupont de Nemours and Co.*, 431 F.3d

1 353 (9th Cir. 2005), the court stated:

2      Under 18 U.S.C. § 1964(c), civil RICO plaintiffs must demonstrate causation,
       specifically that they were injured "by reason of" the alleged racketeering activity of
3      the defendant. 18 U.S.C. § 1964(c). "It is well settled that, to maintain a civil RICO
       claim predicated on mail [or wire] fraud, a plaintiff must show that the defendants'
4      alleged misconduct proximately caused the injury." *Poulos v. Caesars World, Inc.,*
       379 F.3d 654, 664 (9th Cir.2004) (*citing Holmes v. Sec. Investor Prot. Corp.*, 503 U.S.
5      258, 268, 112 S.Ct. 1311, 117 L.Ed.2d 532 (1992)). Although, in some cases,
       "reliance may be a milepost on the road to causation," *id.* (quoting *Blackie v. Barrack,*
6      524 F.2d 891, 906 n. 22 (9th Cir.1975)), we have in the past declined to announce a
       black-letter rule that reliance is the only way plaintiffs can establish causation in a
7      civil RICO claim predicated on mail or wire fraud. *Id.* at 666.

8  *Living Designs, Inc.,* 431 F.3d at 362-63.

9        However, the Seventh Circuit in *Phoenix Bond & Indemnity Co. v. Bridge*, 477 F.3d 928, 932-

10 33 (7th Cir. 2007), *cert. granted by Bridge v. Phoenix Bond & Indem. Co.*, 2008 WL 54347, 76

11 USLW 3073 (U.S. Jan 04, 2008) (NO. 07-210)[4], visited this issue post-*Anza* and, joining a four to two

12 majority of the circuits, held that plaintiffs, as direct victims of a scheme under which was carried out

13 using the mails, did not have to be the direct recipients of the fraudulent statements. *Phoenix Bond*,

14 477 F.3d at 932-33. Specifically, the *Phoenix* court explained:

15      The mail fraud statute, 18 U.S.C. § 1341, defines a fraudulent *scheme,* rather than a
        particular false statement, as the crime. It is illegal to obtain money by a scheme that
16      entails fraud, if use of the mail is integral to the scheme. That's why it is unnecessary
        to show that the false statement was made to the victim. A scheme that injures D by
17      making false statements through the mail to E is mail fraud, and actionable by D
        through RICO if the injury is not derivative of someone else's.
18

19 *Id.,* 477 F.3d at 932; *see also Systems Management, Inc. v. Loiselle*, 303 F.3d 100, 104 (1st Cir. 2002)

20 (holding that RICO "does not require 'reliance' by anyone, and that "under a literal reading of RICO -

21 the presumptive choice in interpretation - - nothing more than the criminal violation and resulting

22 harm is required"). Although the Supreme Court has granted certiorari review of the *Phoenix*

23 decision, under the present state of the law, the majority of Circuits have rejected a reliance

24 requirement. *See Phoenix Bond*, 477 F.3d at 932-33. Under the reasoning of *Phoenix*, which is the

25 majority rule, the SAC sufficiently alleges proximate causation to state a claim for relief under RICO.

26 _____

27      [4] The Supreme Court granted certiorari review on January 4, 2008, on the limited question of
28 "Whether reliance is a required element of a RICO claim predicated on mail fraud and, if it is,
   whether that reliance must be by the plaintiff." *Id.*

1  The SAC alleges numerous acts of the use of the mails and wires containing misrepresentations, sent
2  to both the IRS as well as MHC and other clients of the Corporate Defendants, *see* SAC, ¶¶ 42-66,
3  as part of a scheme which injured MHC in that MHC was assessed and paid penalties for by the IRS.
4  The first claim in the SAC for violation of and damages under 18 U.S.C. § 1962(c), as supported by
5  the facts alleged in support thereof, is therefore actionable under RICO and sufficiently states a cause
6  of action under 18 U.S.C. § 1962(c). The Defendants' argument for dismissal of the first claim in the
7  SAC should be rejected.

8      Moreover, even assuming reliance is required, the SAC adequately alleges reliance on
9  predicate acts of wire fraud. While a RICO plaintiff may use numerous predicate acts targeting other
10  victims to show evidence of a "pattern" of racketeering, the plaintiff need only be injured by a single
11  predicate act committed in furtherance of the scheme. *See Giuliano v. Everything Yogurt, Inc.,* 819
12  F. Supp. 240, 243 n.3 (E.D.N.Y., 1993); *see also Marshall & Ilsley Trust Co. v. Pate,* 819 F.2d 806,
13  809 & n. 6 (7th Cir.1987) (injury sustained by plaintiff through one predicate act sufficient to confer
14  standing); *Town of Kearny v. Hudson Meadows Urban Renewal Corp.,* 829 F.2d 1263, 1268 (3d
15  Cir.1987) (plaintiff has standing to sue under § 1962(c) notwithstanding that act of bribery did not
16  injure the plaintiff); *see also Terminate Control Corp. v. Horowitz.* 28 F.3d 1335, 1347 (2nd Cir.
17  1994) (stating that the holdings in *Marshall & Ilsely* and *Kearny* to the effect that the pattern of
18  racketeering activity may be based upon predicate acts directed against nonplaintiffs as long as one
19  act injures the plaintiff so as to create standing for the plaintiff "appears to be a correct reading of §
20  1964(c)," but finding it unnecessary to decide the issue).

21      Paragraphs 49-53 of the SAC alleges that on March 2, 2006, March 10, 2006, November 21,
22  2005, and August 26, 2005, Defendant A. Toves sent emails to a Hyatt employee making false
23  representations in furtherance of the scheme to use the Enterprise (i.e., the Corporate Defendants) to
24  defraud the MHC of payroll and tax monies entrusted to the Corporate Defendants for such payments.
25  The SAC alleges that these emails traveled through servers outside of Guam, and were therefore
26  interstate communications constituting wire fraud. The SAC alleges that MHC relied on these emails,
27  and was injured thereby in having incurred liability for the tax payments to the IRS and penalties of
28  over $400,000 assessed against MHC by the IRS. Therefore, the SAC adequately alleges that the

1     MHC in fact relied upon the misrepresentations forming the basis of the predicate acts of wire fraud,

2     and the injury caused to MHC by the Individual Defendant's commission of the predicate acts was

3     the proximate cause of the MHC's injury thus stating a cause of action under RICO.

4         The Ninth Circuit has firmly stated that District Courts "should not erect artificial barriers-

5     metaphysical or otherwise-as a means of keeping RICO cases off the federal dockets." *Sun Saving*

6     *and Loan Ass'n v. Dierdorff,* 825 F. 2d 187, 194 (9th Cir. 1987); *see also Allwaste, Inc. v. Hecht,* 65

7     F.3d 1523, 1529 (9th Cir. 1995). For the reasons set forth above, the FAC sufficiently states MHC's

8     first claim under RICO.

9

10     **D.**     **Plaintiff Alleged Facts Sufficient to State a Claim for Conspiracy in a RICO Enterprise Through a Pattern of Racketeering.**

11         The Defendants argue that the second claim in the SAC should be dismissed because MHC

12     fails to allege facts to support the existence of any conspiracy between any individuals or the acts they

13     agreed upon. This argument should likewise be rejected.

14         The RICO conspiracy statute states that "[i]t shall be unlawful for any person to conspire to

15     violate any of the provisions of subsection (a), (b), or (c) of this section." 18 U.S.C. § 1962(d). "It

16     is the mere agreement to violate RICO that § 1962(d) forbids; it is not necessary to prove any

17     substantive RICO violations ever occurred as a result of the conspiracy. " *Oki Semiconductor Co.*

18     *v. Wells Fargo Bank, Nat. Ass'n,* 298 F.3d 768, 774-75 (9th Cir. 2002). "To establish a violation of

19     section 1962(d) [conspiracy], Plaintiffs must allege either an agreement that is a substantive violation

20     of RICO or that the defendants agreed to commit, or participated in, a violation of two predicate

21     offenses." *Howard v. America Online, Inc.,* 208 F.3d 741, 751 (9th Cir.2000). "[W]hile a defendant

22     need not actually commit two predicate acts, a defendant must agree either to commit or to aid and

23     abet in the commission of two predicate acts himself." *Morrow v. Black* , 742 F. Supp. 1199, 1208

24     (E.D.N.Y. 1990) *(citing United States v. Rastelli,* 870 F.2d 822, 832 (2d Cir.1989)). "One can be a

25     conspirator by agreeing to facilitate only some of the acts leading to the substantive offense." *Salinas*

26     *v. United States,* 522 U.S. 52, 65 (1997). Moreover, "[t]he illegal agreement need not be express as

27     long as its existence can be inferred from the words, actions, or interdependence of activities and

28     persons involved." *Oki Semiconductor Co.,* 298 F.3d at 775.

1    The allegations of conspiracy are that A. Toves and J. Toves did conspire and agree to conduct
2    and participate the affairs of the Enterprise enterprises through a pattern of racketeering activity with
3    each defendant agreeing to commit, approve of, or aid and abet the commission of at least two acts
4    of racketeering activity. SAC ¶¶ 96-101. The nature and purposes of the conspiracy are adequately
5    pled.

6    The Defendants point out that MHC has failed to plead the exact consistent dates of the
7    conspiracy. First, as discussed above, a conspiracy can be shown circumstantially though inference
8    from the facts alleged. The SAC alleges at ¶ 98 that the conspiracy began in 2002. This is supported
9    by the remaining allegations in the SAC. In approaching MHC to provide payroll processing services
10   in 2002, and then using the Corporate Defendants to commit illegal acts resulting in the diversion,
11   conversion, and misuse of property of at least three, and possibly more, clients of the Corporate
12   Defendants, it can be inferred that the Individual Defendants formed an agreement to use the
13   Enterprise, in a pattern of racketeering activity. Even assuming this reading of the SAC is rejected,
14   the allegations in ¶¶ 85 and 87 coupled with the remaining allegations in SAC relevant to the
15   conspiracy claim, clearly and sufficiently allege that at lease as of 2004, when the Individual
16   Defendants endeavored to commit the predicate acts, the Individual Defendants conspired and agreed
17   to conduct and participate the affairs of the Enterprise through a pattern of racketeering activity with
18   each defendant agreeing to commit, approve of, or aid and abet the commission of at least two acts
19   of racketeering activity.

20   Second, the allegations supporting the RICO conspiracy claim may nonetheless survive a
21   motion to dismiss because MHC is not required to alleged the exact date, time or place that the
22   conspiracy agreement was struck. *See Pennsylvania Assigned Risk Plan v. Pflaumer,* Civ. A. No.
23   93-4575, 1994 WL 24691, *3 (E.D. Pa. Jan. 26, 1994) (refusing to dismiss a RICO conspiracy claim
24   and holding that "[t]he court will not dismiss Count III of the complaint simply because plaintiffs
25   have not alleged the exact date, time or place that the conspiracy defendants' allegedly struck their
26   agreement. This is the type of information which may, or may not, be obtained during discovery.
27   Accordingly, defendants' motion to dismiss plaintiffs' claim under section 1962(d) is denied.").

28   As a final matter, Plaintiff notes the error in the Defendants' argument that in ¶ 120 of the

1    SAC, MHC alleges that either J. Toves or A. Toves acted "singly" as part of a conspiracy. Mtn. to

2    Dismiss at p. 11. The Defendants fail quote the entirety of ¶ 120, which clearly alleges that the

3    individual related *predicate acts* that were "committed by A. Toves and J. Toves joint or singly," but

4    that these predicate acts were committed as part of a "conspiracy between J. Toves and A. Toves."

5    SAC, ¶ 120. Paragraph 120 alleges a conspiracy between *both* Individual Defendants.

6    **E. Plaintiff Alleges a Cause of Action for Breach of Contract.**

7         Defendants argue that MHC's third claim for breach of contract must be dismissed because

8    it does not state who the claim is against[5] or the specifics of the breach. This argument fails.

9         To maintain the cause of action for breach of contract, the complaint must allege (1) the

10   existence of a valid and binding contract, (2) that Plaintiff has complied with the contract and

11   performed her own obligations under it, (3) fulfillment with all conditions precedent, (4) a breach of

12   the contract, and (5) damages to plaintiff. *Federal Practice and Procedure,* § 1235 at 269-71 (3rd ed.)

13   5 Charles A. Wright & Arthur P. Miller; *see also Lortz v. Connell,* 273 Cal. App.2d 286, 290, 78 Cal.

14   Rptr. 6, 8 (Cal. App. 1969) (stating that the elements for breach of contract are the existence of a

15   contract, performance or excuse of non-performance by the plaintiff, breach by the defendant, and

16   resulting damages).

17        MHC has pled that MHC entered into an Agreement with Defendant Pacific Business

18   Solutions, and the apparent succession to this agreement by Premier Business Solutions, including

19   the dates the agreement was proposed by Defendant Pacific Business Solutions, SAC, ¶¶ 14-15, the

20   apparent succession to this agreement by Premier Business Solutions, SAC, ¶¶ 21, and the date the

21   parties began performing under it. SAC, ¶ 14, 22. The SAC also alleges that pursuant to the

22   Agreement, the Hyatt paid for and the Corporate Defendants agreed to provide a service of paying

23   payroll taxes from the monies remitted to the Defendants by MHC, SAC, ¶¶ 14-23, and that the

24   Corporate Defendants breached its Agreement when the Corporate Defendants failed to pay the taxes

25   and instead diverted the monies, SAC, ¶¶ 24-37. This is sufficient to state a claim for breach of

26   contract. *See* SAC, ¶¶ 102-109.

27

28        [5] The Prayer for Relief in the SAC clearly requests a judgment against the Corporate
     Defendants for breach of contract. *See* SAC, p. 40.

17

**F. Plaintiff Alleges a Cause of Action for Conversion.**

The Defendants argue that MHC's conversion claim should be dismissed because it fails to allege facts that Plaintiff exercised dominion and control over MHC's property or converted them to Defendants' own use. Contrary to what the Defendants appear to suggest, a plaintiff need not prove its case through the complaint. *See Baker v. Family Credit Counseling Corp.,* 440 F. Supp. 2d 392, 403 (E.D. Pa. 2006) ("[A]t the motion to dismiss stage of litigation, plaintiffs need not 'establish' anything; they need simply to allege a cause of action."). Rather, in testing the sufficiency of the complaint, the court views the allegations as true to determine whether those allegations adequately state a claim for relief. *See Thompson v. Davis,* 295 F.3d 890, 895 (9th Cir.2002).

"A cause of action for conversion requires allegations of plaintiff's ownership or right to possession of property; defendant's wrongful act toward or disposition of the property, interfering with plaintiff's possession; and damage to plaintiff." *McKell v. Washington Mut., Inc.,* 49 Cal. Rptr. 3d 227, 255 (Cal. Ct. App. 2006). Money can be the subject of a cause of action for conversion if "there is a specific identifiable sum involved, such as where an agent accepts a sum of money to be paid to another and fails to make payment." *Id.* at 255-56; *see also Chazen v. Centennial Bank* (1998) 71 Cal. Rptr. 2d 462 (Cal. Ct. App. 1998) (holding that the plaintiffs stated a cause of action for conversion where the bank took funds from trust accounts to pay the trustee's personal indebtedness); *PCO, Inc. v. Christensen, Miller, Fink, Jacobs, Glaser, Weil & Shapiro, LLP,* 58 Cal. Rptr. 3d 516, 524-26 (Cal. Ct. App. 2007) ("California cases permitting an action for conversion of money typically involve those who have misappropriated, commingled, or misapplied specific funds held for the benefit of others." ); *Haigler v. Donnelly,* 117 P.2d 331, 335 (Cal. 1941) (holding that a claim for conversion was stated when agent received stipulated sum of money belonging to plaintiffs and refused to account for it).

MHC alleges that the defendants diverted Hyatt's payroll monies to uses and purposes other than the payment of wages and taxes, i.e., to its own use. SAC, ¶ 25. These monies were provided to the defendants in trust for the payments. SAC, ¶¶ 19-20, 25, 77. In this case, the SAC alleges that there was an identifiable sum of money to be paid to another in trust for the payment of wages and taxes and the defendants failed to make the payments. SAC, ¶¶ 25, 35, 79. The SAC alleges that

1  these funds were not given back to MHC upon request. SAC, ¶ 89. MHC alleges that it was damaged

2  by Defendants' actions. SAC, ¶¶ 36-37. As such, MHC has sufficiently pled a claim for conversion

3  of the monies sent to the Defendants in trust. *See* SAC, ¶¶ 110-116.

4  **G. The Plaintiffs Sufficiently Alleged Fraud With Particularity.**

5         The Defendants argue that MHC's fraud claim should be dismissed because the SAC fails to

6  allege fraud with particularity as required under FRCP 9(b).

7         "The elements of fraud include: 1) a misrepresentation; 2) knowledge of falsity (or scienter);

8  3) intent to defraud to induce reliance; 4) justifiable reliance; 5) resulting damages." *Trans Pacific*

9  *Export Co. v. Oka Towers Corp.,* 2000 Guam 3, ¶ 23 (citations omitted).

10        In support of its argument, Defendants argue that the SAC does not state a claim for fraud

11  because MHC fails to allege that at the time the Defendants promised that they would provide payroll

12  services, the Defendants had no intention of keeping their promise.  Again, the Defendants

13  misconstrue the SAC. As comprehensively alleged in the SAC at ¶¶ 42-94, the Defendants made

14  repeated representations to MHC that the taxes were being paid.   These were knowing

15  misrepresentations of facts. MHC further alleges that in reliance on these misrepresentations, MHC

16  did not make payments to the IRS and was damaged in having to pay the outstanding taxes as well

17  as over $400,000 in penalties. SAC, ¶¶ 73-94.

18        The SAC alleges who made the misrepresentations, the substance of the misrepresentations,

19  the time and place of the misrepresentations, and the manner in which the misrepresentations were

20  made. SAC at ¶¶ 42-94. A. Toves and J. Toves, through the Corporate Defendants entered into

21  contracts with MHC, which provided funds for payment of the company's taxes. SAC, ¶¶ 13-22, 33.

22  The Corporate Defendants and the Toveses failed to pay the taxes for MHC between 2004 and 2007.

23  SAC, ¶¶ 34-35. A. Toves provided false information, *i.e.* 941SS and ETFS's forms and emails,

24  which reflected that payments had been made, when in fact they had not. SAC, ¶¶ 42-61. MHC

25  relied on these 941SS and ETFS reports, and handed more funds over to the Corporate Defendants,

26  resulting in more taxes not being paid. SAC, ¶ 70-71. As a result of the Plaintiff's reliance on the

27  misrepresentations, MHC continued to remit payroll monies to the Defendants when taxes had not

28  been paid, lost monies remitted for taxes, and incurred substantial penalties assessed by the IRS.

SAC, ¶¶ 33-34, 36-37, 67, 71, 73-74. The representations about the 941SS forms were made to MHC by A. Toves around the time they were sent, SAC, ¶¶ 42-48, the emails regarding collection activities were sent by A. Toves on March 2, 2006, March 10, 2006, May 11, 2006, November 21, 2005, and August 26, 2005, SAC, ¶¶ 49-53, and the misrepresentations by J. Toves about taxes being paid were made in October 2006 to Craig Sawyers and other Hyatt representatives, SAC, ¶ 68. The fraud allegations were pled with the requisite particularity. *See Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997) (finding that it was "not fatal to the complaint that it [did] not describe in detail a single specific transaction" because plaintiff had adequately identified other general aspects of alleged fraud, including type of conduct and general time frame).

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss should be denied.

Respectfully submitted this 11th day of January, 2008.

CIVILLE & TANG, PLLC

By:

JOYCE C.H. TANG
G. PATRICK CIVILLE
*Attorneys for Plaintiff*
*Marianas Hospitality Corporation,*
*dba Hyatt Regency Guam*