TEKER TORRES & TEKER, P.C.
SUITE 2A, 130 ASPINALL AVENUE
HAGÅTÑA, GUAM 96910
TELEPHONE: (671) 477-9891-4
FACSIMILE: (671) 472-2601

*Attorneys for Defendants*



FILED
DISTRICT COURT OF GUAM

MAR 1 8 2008

JEANNE G. QUINATA
Clerk of Court

# IN THE DISTRICT COURT OF GUAM

| | |
|---|---|
| MARIANAS HOSPITALITY CORPORATION dba HYATT REGENCY GUAM,<br><br>    Plaintiff,<br><br>v.<br><br>PREMIER BUSINESS SOLUTIONS, INC., *et al.*,<br><br>    Defendants. | CIVIL CASE NO. CV-07-00002<br><br>MOTION FOR STAY PENDING RESOLUTIONS OF ISSUES BY THE UNITED STATES SUPREME COURT; REPLY TO PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION FOR FAILURE TO STATE A CLAIM UNDER F.R.C.P. 12(B)(6) |

## INTRODUCTION

As we will show below after three attempts to plead a cause of action under the Racketeer Influence and Corrupt Organization Act ("RICO"), the Plaintiff's case must be dismissed with prejudice. When stripped of its invectives, conclusions, conjectures, and innuendoes, Plaintiff's second amended complaint ("SAC") is nothing more than an ill-conceived attempt to turn a breach of contract action into an elaborate criminal enterprise allegedly mastermind by two evil geniuses

- a husband and wife trying to run a small business in the island of Guam to support their children.

Although the SAC alleges a massive conspiracy by this couple to defraud the Hyatt Regency Guam (the "Hyatt"), in fact, the Plaintiff's own allegations belie all of its conclusions. If the Court will look at the chart on pages 10 and 11 of the SAC, it will see that between 2004 and 2006 forty (40) payments were to be made to the Internal Revenue Service ("IRS"). Out of those forty (40) payments, all but seven, according to the SAC, were made. Two payments of approximately Forty-Nine Thousand Dollars ($49,000) in June and July of 2005 are designated partial payments, because, according to the SAC, the Toves failed to remit Three Hundred One Dollars and Sixty-Eight Cents ($301.68) to the IRS in July of 2005 and Two Thousand Five Hundred Thirty-One Dollars and Ninety-Three Cents ($2,531.93) in June of 2005. Thus, according to the Plaintiff's own chart, the Toves made eighty-five percent (85%) of all required payments. This is hardly an elaborate scheme to defraud the Hyatt.

Over the years, the courts have been extremely troubled by plaintiffs attempting to turn garden-variety commercial disputes into federal racketeering cases. As a result, the courts have created detailed and complex rules to judge whether a racketeering case has been adequately stated. As we will show below, the Plaintiff's SAC fails each of these tests. First, Plaintiff has failed to plead this case with particularity. Second, the predicate acts of racketeering are, in fact, not predicates. Third, the predicate acts did not injure the Plaintiff. Fourth, the Plaintiff has failed to plead either a "closed-ended" or an "open-ended" pattern of racketeering. Fifth, Plaintiff has failed to allege supplemental party jurisdiction with respect to Defendants, Premier Business Solutions, Inc. and Pacific Business Solutions, Inc.

///

TEKER TORRES & TEKER, P.C.
SUITE 2A, 130 ASPINALL AVENUE
HAGÅTÑA, GUAM 96910
TELEPHONE: (671) 477-9891-4

# POINT I

# ARGUMENT

## I. PLAINTIFF ATTEMPTS TO MISLEAD THE COURT AS TO ITS PLEADING OBLIGATION

On page 2, section A, of the Plaintiff's Opposition to Motion for Lack of Subject Matter Jurisdiction and Failure to State a Claim under the Federal Rule of Civil Procedure ("Fed. R. of Civ. P.") 12(b)(6) ("Plaintiff's Opposition"), Plaintiff informs the Court that under Fed. R. of Civ. P. 8(a), they need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." However, it is Hornbook law that a RICO case must be pled with particularity under Fed. R. of Civ. P. 9(b) ("in all averments of fraud... the circumstances constituting fraud... shall be stated with particularity.") *Schreiber Distrib. Co. v. Serv-Well Furniture Co., 806 F.2d 1393*, 1400 (9th Cir. 1986). The pleader must state the time, place, and specific content of the false representations, as well as the identities of the parties of the misrepresentations. *Id.* at 1401; *see also*, *Moore v. Kay Port Package Express, Inc.*, 885 F.2d 531, 541 (9th Cir. 1989).

After three attempts at pleading a cause of action with particularity, Plaintiff's SAC, when stripped of all its conclusions and invectives, suffers the same lack of particularity as its prior complaints. For example, Plaintiff once again admits in its opposition that it has pled an inconsistent conspiracy claim. Plaintiffs admit that on page 16, lines 6-8, of Plaintiff's Opposition that the SAC has once again failed to plead consistent dates for its conspiracy claim. In paragraph 98 of the SAC, they allege that the conspiracy began in 2002. But, this allegation is clearly incorrect, and unsupported by any fact in the complaint. All the court need do is look at the chart on pages 10-11. There is simply no allegation that any payments due to the IRS were not made

between 2002 and 2004. In paragraphs 85 and 87 the plaintiffs suggest that the conspiracy began in 2004. But, again the facts belie this claim since the chart shows that payments were made throughout the year 2004. People generally do not enter into a conspiracy to steal people's money and convert it to their own use and purposes, and then pay it to the IRS on behalf of the plaintiff.

The timing of the conspiracy is an essential allegation of the complaint and must be alleged with particularity. As the Supreme Court held in ***Wharf (Holdings), Ltd. v. United Int'l. Holdings, Inc.***, 532 U.S. 588 (2001), a plaintiff can commit fraud by entering into a contract where it has no intention to honor the agreement. However, Plaintiff's SAC indicates that that was not the case here. In fact, what the SAC's chart shows is that the Toves had every intention to honor this contract. They made eighty-five percent (85%) of all payments to the IRS on behalf of the Hyatt. According to the complaint seven payments were not made and two payments were deficient in relatively minor amounts. Thus, Plaintiff's chart and its factual allegations simply do not support an agreement on the part of the Toves to steal the Hyatt's money. If anything, it supports what the Defendants have been sayings all along - that this is a simple breach of contract action for failure to honor the terms of the contract. If the Plaintiff believes that the Defendants entered into a fraudulent agreement, Plaintiff should inform the Defendants when that agreement was made and what the object of the agreement was.

As the Supreme Court recently noted in ***Bell Atlantic v. Twombley***, 127 S. Ct. 1955 (2007), a complaint requires more than labels and conclusions and formulaic pleading of the elements of a cause of action. To be entitled to remain in federal court, a complaint must make factual allegations which raise a right to relief above the speculative level. While the Fed.R.Civ.P. eliminate the cumbersome requirements that a claimant set out in detail facts on which the plaintiff bases his claim, a plaintiff is still required to show an entitlement to relief. Without some factual

allegations in the complaint, Plaintiff cannot even meet the reduced pleading requirements of Rule 8(a); let alone the heightened pleading standard of F.R.Civ.P. 9(b). In the present complaint, there is simply insufficient facts to raise even a reasonable expectation that discovery will reveal evidence of a grand conspiracy. This is so because the hard facts contained on pages 10-11 of the SAC belie that allegation. The fact that these defendants made 85% of all the payments required undercuts any claim of conspiracy to steal the Hyatt's monies and divert it to the defendant's own use and purposes. The Complaint in this case is nothing more than conclusion, inference, and innuendo heaped, one on top of the other. When one places the facts in context by looking at the chart on pages 10 and 11, one sees that there is no conspiracy to engage in racketeering.

## II. FAILURE TO ALLEGE PREDICATE ACTS OF RACKETEERING WITH PARTICULARITY

Another example of the Plaintiff's sloppy and inadequate pleading are the allegations regarding "interstate wire fraud predicate acts." Plaintiff alleges e-mails which traveled between one point in Guam to another point in Guam constitute acts of wire fraud. When defendants pointed out to the Plaintiff that in order to allege wire fraud, they must show that the communication traveled in interstate commerce, Plaintiff countered by citing a case out of Kentucky in which the plaintiff was able to show that an e-mail transmission had traveled from one point in Kentucky through a server outside the state of Kentucky to another point within the state of Kentucky. Unfortunately, for the Plaintiff in this case, after more than a year and three attempts to plead a cause of action, it still fails to plead how an e-mail traveled from one point in Guam to another point in Guam through a server located off island. Plaintiff's allegation that the e-mails traveled through a server outside the island of Guam is a mere conclusion. Conclusions are insufficient to allege a cause of action. The Plaintiff must allege facts. The facts simply do

not exist. Plaintiff has had ample opportunity to determine how e-mails travel from one point in Guam to another point in Guam, and to include those factual allegations in its complaint. It has failed to do so.

### III. OTHER PLEADING INCONSISTENCIES

Despite Plaintiff's inability to allege a conspiracy, or to allege predicate acts of wire fraud, there are still other inconsistencies in the SAC. For example, in paragraph 42 of the plaintiff's SAC, the plaintiff alleges that on April 30, 2004, defendant, Anna Toves, sent by U.S. mail a Form 941-SS claiming she had paid the first-quarter FICA and Medicare taxes. Plaintiff's claim this was a lie. But, look at the chart on page 10, there is no allegation that the first-quarter taxes were never paid. In fact, the chart begins with the second quarter of 2004 and it shows that all of the payments for the second quarter of 2004 were, in fact, made; although some were made a few days late. We cannot tell why the payments were made, but the court can take judicial notice of the fact that Guam is some 3,820 miles from Hawaii (*see Wiki.Answer.Com* [Q] How many miles is - it from Hawaii - to - Guam), and that the mails are often delayed when traveling to and from the island. F. R. Evid. 201.

In paragraph 43 of the Plaintiff's SAC, again Plaintiff alleges that Defendant, Anna Toves sent a form 941-SS by U.S. mails on July 30, 2004, stating that she had paid FICA and Medicare taxes on behalf of Plaintiff and its employees for the second quarter of 2004. Again, all the Court has to do is look at Plaintiff's chart to realize that on July 30, 2004, Plaintiff's second-quarter taxes had been paid. Consequently, like paragraph 41, paragraph 43 cannot constitute a predicate act, because the statements contained in the mailing were true according to the allegation of the Plaintiff's own Complaint.

///

In paragraph 44 of the Plaintiff's SAC, Plaintiff alleges that on November 1, 2004, Defendant, Anna Toves, sent by the U.S. mails a Form 941-SS stating that taxes for the third quarter of 2004 had not been paid. However, when you look at plaintiff's chart, the payments had, in fact, been made by November 8, 2004. This hardly shows that a false statement was made utilizing the mails to execute a scheme to defraud. It shows that the payments were, in fact, made contrary to the allegations of the complaint, although made a few days late. Again, the Court can take judicial notice that Guam is over 3,820 miles from Hawaii and, that the mails often do not arrive in a timely manner. One cannot support a RICO complaint by alleging delays in payments sent to Hawaii. Clearly, Congress did not intend to burden federal judges with such issues or to label business owners racketeers simply because the United States Post Office often does not deliver the mail in a timely manner.

Paragraph 45 has a similar problem as it alleges that on January 25, 2005 the Defendant Anna Toves sent a Form 941-SS via U.S. mails claiming that the fourth-quarter payments for 2004 had been paid. One need only look at the Plaintiff's chart to see that the fourth-quarter taxes had clearly been paid by January 25, 2005. Therefore, the claim doesn't show a predicate act of racketeering.

In paragraph 47 of Plaintiff's SAC, Plaintiff alleges that on July 29, 2005 Defendant, Anna Toves, sent a Form 941-SS via U.S. mail claiming that the second-quarter taxes for 2005 had been paid. Again, a review of the chart reveals that, in fact, the second-quarter taxes were paid by that date. Although according to the Plaintiff, they were paid a few days late and, that the last payment was deficient by some Two Thousand Five Hundred Dollars ($2,500).

In paragraph 48 of Plaintiff's SAC, Plaintiff claims that on October 29, 2005, Defendant, Anna Toves, sent a Form 941-SS via U.S. mail claiming that the third-quarter taxes for 2005 had

been paid, and, in fact, those taxes were paid, although according to the complaint, the payment was deficient by some $301.68.

Thus, after a review of paragraphs 43 through 48, the plaintiff is left with only one alleged predicate act of mail fraud; that contained in paragraph 46 of the plaintiff's SAC.

In paragraph 54 of Plaintiff's SAC, it alleges that on May 5, 2006, Defendant, Anna Toves, sent a letter by facsimile to IRS agent in Honolulu, Hawaii, falsely claiming that FICA and Medicare taxes for the second and third quarter had been timely paid, and falsely asserting that IRS records were in error as a result of confusion over account numbers. Plaintiff then alleges that the facsimile was false because the taxes "had not been paid." Again, if one looks at the chart on page 10, you will see that the taxes for the second and third quarter of 2004 had, in fact, been made to the IRS. Consequently, when Plaintiff alleged that the taxes "had not been paid" in paragraph 54, it is the SAC which makes the false representation and, <u>not</u> Defendant, Anna Toves.

In paragraphs 49 through 53, Plaintiff's SAC alleges the transmission of lulling e-mails. But, as noted above these e-mails are not alleged to have traveled in interstate commerce. In fact, they are alleged to have traveled from one point in Guam to another point in Guam. In paragraph 54 of the Complaint, Plaintiff alleges that on May 5, 2006, Anna Toves sent a letter by facsimile to Hawaii stating that the second- and third-quarter of 2004 had been paid. It is alleged that this representation was false, because "the taxes had not been paid." As Plaintiff's own chart indicates on page 10, those taxes were, in fact, paid.

In paragraphs 62 to 66 of the Plaintiff's SAC, Plaintiff alleges that both *Talofofo Golf Resort* ("Talofofo") and *Community First Bank* ("Community First") were also victims of the Toves' racketeering scheme. However, those paragraphs are devoid of any factual allegations

specifying the time, date, and place that the Toves' or Pacific Business Solutions, Inc. and Premier Business Solutions, Inc. entered into an agreement to provide services to *Talofofo* or *Community First*. It lacks any allegations as to when the payments were due to the IRS; that they were not made; or, that they were made late. The allegations merely contain assertions that Anna Toves sent e-mails to Joseph Tydingco, which Plaintiff asserts were false. But, we are not put on notice as why they were false. An adequate pleading would require that the Plaintiff specify the time, place, and date taxes were due for both of these entities and an assertion that the taxes were not paid.

## POINT II

### PLAINTIFF FAILED TO PLEAD EITHER AN OPEN-ENDED OR CLOSED-ENDED PATTERN OF RACKETEERING

In order to plead a pattern of racketeering, one must allege either an "open-ended" or a "closed-ended" pattern of racketeering. *H.J., Inc. v. Northwest Bell Tel.*, 492 U.S. 229 (1989). Out of 40 alleged payments due to the IRS, only seven were not made - six in 2005 and, one in 2006.

"Closed-ended" continuity exists when there is a series of related predicate acts extended over a substantial period of time. *H.J., Inc.*, 492 U.S. at 242. "Closed-ended" continuity generally means the scheme has been in existence for at least one year. *Grimmett v. Browne*, 75 F.3d 506, 512 (9th Cir. 1996); *Religious Text Center v. Wollersheim*, 971 F.2d 364, 367 (9th Cir. 1992). According to the Defendants, Plaintiff has alleged a pattern of racketeering activity, which involved six non-payments to the IRS between February, 2005, and December, 2005 — a period of ten months - less than one year. Therefore, there is no "closed-ended" pattern alleged. While there is an additional non-payment alleged in August of 2006, that item clearly

cannot be counted, since the Defendants are alleged to have made all payments in the first and second quarters of 2006 and, missed only one payment in the third-quarter of 2006. That act is clearly the type of isolated and sporadic activity to which the racketeering statute does not apply according to the Supreme Court in *H.J. v. Northwest Bell*, *supra*. Indeed, in *Turner v. Cook*, 362 F.3d 1219 (9th Cir. 2004), this Circuit held that mailings occurring over a two-month period, with the exception of certain other isolated, sporadic communications did not constitute a pattern. Here we have predicate acts (assuming without conceding that they are predicates which they are not) extending over less than one year, with one isolated sporadic further act many months later. As the Circuit noted in *Turner*, this is not a pattern of racketeering.

An "open-ended" pattern of racketeering requires "past conduct that by its nature projects into the future with a threat of repetition" or constitutes the enterprises "regular way of doing business." *H.J., Inc.*, 492 U.S. at 241-42; *see also Alwaste, Inc. v. Hecht*, 65 F.3d 1523, 1528 (9th Cir. 1995). Here there is no "open-ended" pattern of racketeering alleged. Indeed, if one looks at the patterns of payments, most of the payments - 85% - were made. Therefore, there was no threat that defendants non-payment of taxes would extend into the future. In fact, the chart belies any threat of future repetition or, that non-payment was a regular way of business. Indeed, it shows that the non-payments were isolated and sporadic activity, which do not fall under RICO.

## POINT III

## PLAINTIFFS FAIL TO SHOW SUPPLEMENTAL PARTY JURISDICTION

Plaintiff correctly points out that supplemental party jurisdiction can be maintained if Plaintiff's allegations arise out of the same "nucleus of facts." *See Mendoza v. Zerco Fruit Co.*, 301 F.3d 1163, 1173-75 (9th Cir. 2002). Unfortunately, for the Plaintiff, the state law claims against Premier Business Solutions, Inc. and Pacific Business Solutions, Inc. do not arise out of

the same "nucleus of operative facts" as do the racketeering claims alleged against the Toves.

Under 18 U.S.C. § 1962(c), a defendant cannot be both the defendant and the enterprise. In *Kirschner v. King*, 533 U.S. 158 (2001), the Supreme Court made it clear that a RICO action requires two distinct entities, a person and an enterprise whose affairs the person conducts through a pattern of racketeering. The defendant cannot simultaneously be both the "person" and the "enterprise" under § 1962(c). Under § 1962(c), it is the defendant who conducts the affairs of the corporation through acts of racketeering. The enterprise is viewed as the innocent victim of the defendant's racketeering activity. It is the defendant who is conducting the affairs of an innocent enterprise through acts of racketeering. It is for this reason that the defendant and the enterprise cannot be the same.

However, in this case under the Plaintiff's common-law theories, Premier Business Solutions and Pacific Business Solutions, Inc. are not innocent victims of the Toves' racketeering activities, but Premiere Business Solutions and Pacific Business Solutions are themselves the perpetrators of the state law offenses. Consequently, the common law allegations of the Complaint with respect to Premiere Business Solutions and Pacific Business Solutions, are directly contradictory to the RICO allegation.

As a result of such contradictory pleading, supplemental party jurisdiction cannot be maintained since the claims don't arise out of the same "nucleus of operative facts." In one case under the RICO statute, the corporations are viewed as innocent victims, while under the territorial claims, the corporations are viewed as the perpetrators of the crime.

///

///

///

TEKER TORRES & TEKER, P.C.
SUITE 2A, 130 ASPINALL AVENUE
HAGÅTÑA, GUAM 96910
TELEPHONE: (671) 477-9891-4

# POINT IV

## PLAINTIFFS HAVE FAILED TO ALLEGE THAT THEIR INJURY WAS PROXIMATELY CAUSED BY THE PREDICATE ACTS OF RACKETEERING

As explained in the Defendants' motion to dismiss, the Supreme Court has made clear that predicate acts of racketeering must be the proximate cause of the Plaintiff's injury. *Anza v. Ideal Steele Supply Corp.*, 126 S. Ct. 1991 (2006). As we made clear in our opening brief, if the Plaintiff was injured at all, it was as a result of the conversion of the monies and not as a result of the Forms 941-SS, which were mailed or faxed to the IRS. Nor, was the Plaintiff injured as a result of the so-called lulling e-mails that were sent to them.

Although all agree that the predicate acts of racketeering must be the proximate cause of the Plaintiff's injury, there is a controversy in the circuits as to whether the Plaintiff must plead and prove direct reliance on the Defendants' misrepresentations. To date, the Ninth Circuit has expressly declined to decide the issue. *Living Design, Inc. v. E.I. Dupont Dumoors & Co.*, 431 F.3d 353 (9th Cir. 2005). However, the Supreme Court recently granted *certiorari* in *Phoenix Bond & Indem. Co. v. Bridge*, 477 F.3d 928, 932-33 (7th Cir. 2007), *cert. granted* (2008) WL 54347 (2008) and will hear oral argument in April, 2008 with a decision expected before the end of the term. In that case, the Seventh Circuit held that the plaintiff was a direct victim of a scheme carried out using the mail, and did not have to be a direct recipient of the fraudulent statements. However, because the Supreme Court has granted *certiorari* to review that issue, this Court should stay these proceedings pending resolution of this key issue by the Supreme Court, which is expected shortly.

///

///

TEKER TORRES & TEKER, P.C.
SUITE 2A, 130 ASPINALL AVENUE
HAGÅTÑA, GUAM 96910
TELEPHONE: (671) 477-9891-4

# POINT V

## CAN CORPORATION CONSTITUTE AN ASSOCIATION-IN-FACT ENTERPRISE?

Furthermore, there is another issue in this case which requires a stay and remand. The Court will recall that in our briefs filed in support of the original motion to dismiss, we noted that the Supreme Court had originally agreed to review the decision in *Williams v. Mohawk Indus., Inc.*, 411 F.3d 1252 (7th Cir. 2005), to determine whether a corporation could be a member of an "association-in-fact enterprise." In the present case, two corporations are alleged to be members of an "association-in-fact enterprise." The Court subsequently dismissed the appeal after having heard oral argument. However, this issue is still an open question. Defendants believe that the Supreme Court will again address this issue in the near future in an appropriate case. Therefore, it would make sense for the court to stay all proceedings in this matter until this issue is resolved.

## CONCLUSION

For all of the foregoing reasons, the SAC should be dismissed.

*Respectfully submitted* this 14th day of March, 2008.

TEKER TORRES & TEKER, P.C.

By _____
JOSEPH C. RAZZANO, ESQ.
*Attorneys for Defendants*

JCR:cs
PLDGS:PREMIER BUSINESS SOLUTIONS:027

-13-

 Ads by Google    Guam Cars    Guam Resorts    Guam Housing    Guam Lodging

# How many miles is it from Hawaii to Guam?

In: Distances and Travel Times

## Answer

The total distance from Hawaii to Guam is 3,820 miles.

This is equivalent to 6,148 kilometers or 3,320 nautical miles.

Guam
Know Before You Go. Read Reviews from Real Travelers.
www.TripAdvisor.com

orlando travel
Orlando Hotels for $9.99/Night Travel by May 15th Stay for Free!
www.DiscountOrlandoVacation.info

Hawaii Travel
Access to articles, photos, maps, and guides on The New York Times
travel.nytimes.com

Ads by Google

**Related Links**

Distance from Hawaii to Guam

 Improve Answer | Discuss Question | Watch Question

First answer by Blueaudio. Last edit by Blueaudio. Contributor trust: 30 [recommend contributor]. Question popularity: 10 [recommend question]

Research your answer:

 Search

Can you answer other questions about trip planning?

| Treated lumber | Electricians in Guam |
|---|---|
| Treated lumber and redwood from Mendocino Forest Products | Licensed Electrical Contractor Quality Service! Call 671-687-6931 |
| www.mfp.com | www.kindoelectric.com |

Ads by Google

Answers.com > WikiAnswers > Categories > Travel and Geography > Distances and Travel Times > How many miles is it from Hawaii to Guam?